BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ 005425)
ELAINE A. RYAN (AZ 012870)
PATRICIA N. SYVERSON
  (CA 203111; AZ 020191)
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012-3311
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

PISCITELLI LAW FIRM
FRANK E. PISCITELLI, JR.
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/931-7000
frank@piscitellilaw.com

Attorneys for Plaintiffs

[Additional Counsel Appear on Signature Page.]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY DENNIS and JON KOZ, On Behalf of Themselves and All Other Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>KELLOGG COMPANY, a Delaware Corporation,<br><br>        Defendant. | Case No.:  3:09-CV-01786-IEG(WMC)<br><br>CLASS ACTION<br><br>PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Courtroom: 1, 4th Floor<br>Judge:     Honorable Irma E. Gonzalez<br>Date Filed: August 17, 2009<br>Trial Date: TBD |

BLOOD HURST & O'REARDON, LLP

TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................ 1

II.     HISTORY OF THE LITIGATION.............................................................. 3

III.    SETTLEMENT TERMS............................................................................. 3

        A.      The Proposed Settlement Relief........................................................ 3

                1.      Cash Refunds ........................................................................ 4

                2.      Charitable Food Donations ................................................... 5

                3.      Injunctive Relief................................................................... 5

                4.      Notice and Administration Costs and Attorneys' Fees And
                        Expenses................................................................................ 6

        B.      The Proposed Class Notice Program................................................. 6

IV.     THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR
        PRELIMINARY APPROVAL .................................................................... 7

        A.      The Standard Used to Decide Whether to Preliminarily Approve a Class
                Action Settlement.............................................................................. 7

                1.      The Proposed Settlement Resulted from Serious, Informed and
                        Non-Collusive Arm's-Length Negotiations............................ 8

                2.      The Proposed Settlement Is Fair to Both Plaintiffs and Class
                        Members................................................................................. 9

                3.      The Terms of the Settlement Compel Preliminary Approval ............... 10

V.      THE CLASS SHOULD BE CONDITIONALLY CERTIFIED .................................... 12

        A.      The Settlement Class Satisfies the Requirements of Federal Rule of
                Civil Procedure 23(a)........................................................................ 12

                1.      Numerosity............................................................................ 13

                2.      Commonality.......................................................................... 13

                3.      Typicality .............................................................................. 13

                4.      Adequacy of Representation .................................................. 14

        B.      The Settlement Class Should Be Preliminarily Approved Under Federal
                Rule of Civil Procedure 23(b)(3) ...................................................... 15

                1.      Common Questions Predominate Over Individual Issues .................... 15

00020997

BLOOD HURST & O'REARDON, LLP

2.    A Class Action is the Superior Method to Settle This Controversy ........................................................................... 16

VI.   THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND CLASS NOTICE SHOULD BE APPROVED ............................................................. 17

VII.  THE PROPOSED SCHEDULE OF EVENTS ............................................................. 19

VIII. CONCLUSION ............................................................................................................ 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP

00020997

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adams v. Inter-Con Sec. Sys., Inc.*,
  No. C-06-5428 MHP, 2007 WL 3225466
  (N.D. Cal. Oct. 30, 2007) ................................................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................... 12, 15, 17

*Chavez v. WIS Holding Corp.*,
  No. 07-cv-1932, 2010, U.S. Dist. LEXIS 56138
  (S.D. Cal. June 7, 2010) ................................................................................................. 10

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................ 7, 11, 17

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) ........................................................................................................ 17

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ........................................................................................................ 17

*Gen. Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) ........................................................................................................ 16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................. *passim*

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .......................................................................................... 14

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) .......................................................................................... 13

*In re Compact Disc. Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003) ........................................................................................ 18

*In re Employee Benefit Plans Secs. Litig.*,
  No. 3-92-708, 1993 WL 330595
  (D. Minn. June 2, 1993) .................................................................................................... 8

*In re Emulex Corp. Sec. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) ................................................................................... 15

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) .......................................................................................... 13

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*In re Indep. Energy Holdings PLC*,
No. 00 Civ. 6689(SAS), 2003 WL 22244676
(S.D.N.Y. Sept. 29, 2003) ........................................................................... 9

*In re Mercury Interactive Corp. Sec. Litig.*,
No. 08-17372, __ F.3d __, 2010 WL 3239460 ........................................ 18

*In re Pacific Enter. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .......................................................................... 7

*In re Toys "R" Us Antitrust Litig*
191 F.R.D. 347 (E.D.N.Y. 2000) ............................................................... 11

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................. 9

*Keilholtz v. Lennox Health Prods., Inc.*,
No. C08-00836CV, ___ F.R.D. ___, 2010 WL 668067
(Feb. 16, 2010 N.D. Cal.) ............................................................................ 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) .................................................................... 15

*Manchaca v. Chater*,
927 F. Supp. 962 (E.D. Tex. 1996) ............................................................... 9

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y 1984) ............................................................. 12

*Molski v. Gleich*,
318 F.3d 937 (9th Cir. 2003) ...................................................................... 14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) .................................................................................... 17

*Nat'l Rural Telecomm. Coop. v. DIRECTTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 8

*Officers for Justice v. Civil Serv. Comm.*,
688 F.2d 615 (9th Cir. 1982) .................................................................... 7, 8

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...................................................................... 10

*Satchell v. Federal Express Corp.*,
Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010
(N.D. Cal. April 13, 2007) ............................................................................ 8

BLOOD HURST & O'REARDON, LLP

*Simon v. Toshiba America,*
No. C 07-06202 MHP, 2010 WL 1757956
(N.D. Cal. Apr. 30, 2010)................................................................................................ 10

*State of California v. Levi Strauss & Co.,*
41 Cal. 3d 460 (1986) .................................................................................................... 5

*Staton v. Boeing,*
327 F.3d 938 (9th Cir. 2003)......................................................................................... 14

*Valentino v. Carter-Wallace, Inc.,*
97 F.3d 1227 (9th Cir. 1996)......................................................................................... 16

*Vasquez v. Superior Court,*
4 Cal. 3d 800 (1971) ..................................................................................................... 17

*Vista HealthPlan, Inc. v. Warner Holdings Co. III, LTD,*
246 F.R.D. 349 (D.D.C. 2007)................................................................................ 10-11

*Wiener v. Dannon Co., Inc.,*
255 F.R.D. 658 (C.D. Cal. 2009) .......................................................................... *passim*

*Williams v. Costco Wholesale Corp.,*
No. 02cv2003 IEG(AJB), 2010 WL 761122
(S.D. Cal. Mar. 4, 2010)................................................................................................ 10

*Young v. Polo Retail, LLC,*
No. C-02-4546 (VRW), 2006 WL 3050861
(N.D. Cal. Oct. 25, 2006) ............................................................................................... 8

*Zinser v. Accufix Research Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001)................................................................................. 16, 17

**STATUTES, RULES & REGULATIONS**

Federal Rules of Civil Procedure
Rule 23 ................................................................................................................... 12, 19
Rule 23(a)............................................................................................................... 12, 13
Rule 23(a)(1)................................................................................................................. 13
Rule 23(a)(3)................................................................................................................. 13
Rule 23(a)(4)................................................................................................................. 14
Rule 23(b)(3)..................................................................................................... 15, 16, 17
Rule 23(c)(2)(B)............................................................................................................. 2
Rule 23(g)(1)................................................................................................................. 14

1

**SECONDARY AUTHORITIES**

2

7A C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* (2d ed. 1986)
    §1777......................................................................................................................... 15
    §1778......................................................................................................................... 16

*Manual for Complex Litigation (Fourth)* (2004)
    §21.633.................................................................................................................... 7-8

*Newberg on Class Actions* (4th Ed. 2007)
    §3.3.......................................................................................................................... 13
    §11.41........................................................................................................................ 8

3

4

5

6

7

8

9

10

BLOOD HURST & O'REARDON, LLP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiffs Harry Dennis and John Koz ("Plaintiffs") submit this memorandum in
2    support of the motion of Plaintiffs and defendant Kellogg Company ("Kellogg") (collectively,
3    the "Parties") for entry of the [Proposed] Order Preliminarily Approving Class Action
4    Settlement, Conditionally Certifying the Settlement Class, and Providing for Notice and
5    Scheduling Order, attached as Exhibit F to the concurrently filed Stipulation of Settlement.
6    This motion is unopposed.

7    **I.    INTRODUCTION**

8    The Parties respectfully request preliminary approval of the proposed settlement of this
9    class action. [1] After extensive and extended settlement negotiations that have been ongoing for
10   months, including mediation before Martin Quinn of JAMS, the Parties have reached a
11   settlement, as memorialized in the concurrently filed Stipulation of Settlement. The
12   Stipulation of Settlement provides monetary relief for Class members who purchased the
13   cereal at issue (the "Product") and an end to the challenged advertisements. It also provides
14   for a significant *cy pres* distribution, with settlement notice and administration costs and Class
15   Counsels' attorneys fees and expenses paid by Kellogg on top of all other relief. All told, the
16   settlement has a value in excess of $10.5 million.

17   This is a class action alleging false and deceptive advertising and breach of an express
18   warranty. At various times between January 28, 2008 and October 1, 2009, Kellogg claimed
19   in the advertising and labeling of its various types of Frosted Mini-Wheats® cereals that it was
20   clinically shown to improve kids' attentiveness by nearly 20%. Plaintiffs allege that Kellogg's
21   representations were not true or otherwise scientifically substantiated.

22   Under the Stipulation of Settlement, a non-revertible fund of $2.75 million will be
23   established to provide cash payments to Class members who submit valid Claim Forms to
24   recover the full purchase price of the cereal they purchased, up to three boxes. The Claim
25   Form is simple, straightforward, and can be submitted online or by mail. Any money
26   remaining will be distributed to appropriate charities pursuant to the *cy pres* doctrine. The

27   _____

[1]   All capitalized terms herein have the same meaning as set forth in the Stipulation of
28   Settlement.

1   parties anticipate money will be left over for *cy pres* distribution.  Additionally, Kellogg will

2   distribute $5.5 million worth of specified food items to charities that feed the indigent.  A *cy*

3   *pres* distribution is particularly appropriate here because the Parties do not have the names or

4   addresses of Class members (who purchased cereal at grocery stores).  It would be very

5   difficult and unjustifiably expensive to attempt to locate everyone who purchased the Product

6   during the Class Period.

7          The Stipulation of Settlement also provides that Kellogg must discontinue using the

8   challenged message and details the language that is acceptable.

9          The Class Notice is informative and its distribution "is the most practicable under the

10  circumstances," in accordance with Federal Rule of Civil Procedure, Rule 23(c)(2)(B).  The

11  notice will target Class members through various internet channels and publication in *Parents*

12  *Magazine* in accordance with the media plan.  *See* Stipulation of Settlement, Exhibit G.  It will

13  also be posted on various websites, including one website established especially for this

14  settlement.  The cost of Class Notice and of claims administration will be paid by Kellogg

15  separate and apart from the Settlement Fund.  In addition, Class Counsels' attorney fees and

16  expenses, which will not exceed $2 million, will be paid by Kellogg separate and apart from

17  the Settlement Fund and other relief.

18         The proposed Class is defined as:

19         All persons or entities in the United States who purchased the Product from
           January 28, 2008 up to and including October 1, 2009.  Excluded from the
20         Class are Kellogg's employees, officers, directors, agents, and representatives
           and those who purchased the Product for the purpose of re-sale.
21
22         Finally, the Parties request that the Court designate Plaintiffs as Class Representatives

23  for the Class and appoint Plaintiffs' counsel as Class Counsel.

24         As set forth in further detail below, the proposed settlement readily meets the standard

25  for preliminary approval.  Thus, the Parties jointly request that the Court enter the proposed

26  preliminary approval order that, among other things: (1) preliminarily approves the terms of

27  the settlement; (2) approves the form, method and plan of notice; (3) conditionally certifies the

28  Class for settlement purposes; and (4) schedules a final Settlement Hearing and related dates at

BLOOD HURST & O'REARDON, LLP

1   which the request for final approval of the proposed settlement and entry of the judgment will

2   be considered.

## II.   HISTORY OF THE LITIGATION

4        Counsel for Mr. Koz began investigating this case in or about April 2009, prepared a

5   class action complaint and, on May 5, 2009, sent a demand letter to Kellogg.  Declaration of

6   Timothy G. Blood in Support of Request for Preliminary Approval of Class Action Settlement

7   ("Blood Decl."), ¶¶2-4.  On August 17, 2009, Plaintiff Dennis initiated this action by filing a

8   class action complaint in this Court.  Blood Decl., ¶6.  On June 23, 2010, Plaintiffs Dennis and

9   Koz filed a first amended class action complaint ("Complaint").  Blood Decl., ¶¶2-6.  In the

10  Complaint, Plaintiffs allege that Kellogg falsely claims on its Product advertising and labeling

11  that Frosted Mini-Wheats has been clinically shown to improve kids' attentiveness by nearly

12  20%.  *Id.* at ¶1.  Plaintiffs allege that Kellogg's representations are false, misleading and likely

13  to deceive the public because eating a bowl of Kellogg's Frosted Mini-Wheats cereal for

14  breakfast is not clinically shown to improve attentiveness by 20%.  *Id.* at ¶¶1, 15-17.

15       Before the Complaint was filed, Class Counsel investigated the factual allegations

16  ultimately made in the Complaint.  Class Counsel also obtained and reviewed significant

17  literature regarding Kellogg's marketing and purported substantiation of its "attentiveness

18  claims."  Blood Decl., ¶¶2, 5, 7, 10.

19       On January 13, 2010, Class Counsel, Defendant and Defendant's Counsel participated

20  in a full day mediation session with Martin Quinn of JAMS San Francisco.  Blood Decl., ¶12.

21  Over the next several months, the Parties heavily negotiated every aspect of the proposed

22  settlement and the relief and ultimately the Parties were able to reach agreement.  *Id.* at ¶¶12-

23  13.

## III.   SETTLEMENT TERMS

### A.   The Proposed Settlement Relief

26       The settlement provides for a $2.75 million fund for cash refunds to Class members,

27  $5.5 million worth of food donations to charities serving the poor, injunctive relief and notice

28

BLOOD HURST & O'REARDON, LLP

1    and settlement administration costs and Class Counsels' fees and expenses paid separately by

2    Kellogg, for a total value exceeding $10.5 million.

3                              **1.    Cash Refunds**

4         Under the settlement, Kellogg will establish a cash fund of $2.75 million to reimburse

5    Class members for the purchase price paid for the Product during the class period.  Class

6    members need not attempt to recall the price they paid because it is presumed to be $5 per box.

7    Five dollars is about one dollar more than the 16.3 oz box, and roughly the same price as the

8    24 oz package.  Class members may recover up to $15, the equivalent of three boxes of cereal.

9    Stipulation of Settlement, §IV.A.1.  To recover, Class members need only submit a simplified

10   Claim Form (Stipulation of Settlement, Ex. A) either by mail or electronically.  These Claim

11   Forms will be available online and in the Publication Notice, and may also be obtained by

12   calling a dedicated toll-free number operated by the Class Action Settlement Administrator or

13   by writing to the Class Action Settlement Administrator.  Stipulation of Settlement, §IV.A.5.

14        To obtain the cash payment, Class members need only fill out and submit a simple,

15   straight-forward Claim Form where the Claimant provides his or her name and address and the

16   number of boxes of cereal purchased during the class period.  Stipulation of Settlement,

17   §IV.A.6. and Ex. A (Claim Form).  In the event less than $2.75 million is paid out of the

18   Settlement Fund, the remaining balance will be distributed *cy pres* to one or more appropriate

19   charities (to be approved by the Court); it will not be returned to Kellogg.  This *cy pres*

20   distribution is separate from the food *cy pres* distribution.  Because of the relatively low

21   purchase price of the Product, some Class members may prefer that more money be donated to

22   charity.  Therefore, in the Class Notice and on the Claim Form, Class members are informed

23   that if they do not submit a claim, more money will be available for charitable donation.

24   Because of the nature of the claims and the difficulty in cost-effectively reaching Class

25   members who purchased the Products more than a year ago and up to three years ago.  The

26   Parties expect a large portion of the Settlement Fund will remain for *cy pres* distribution.

27        In the event claims exceed the fund amount, payments will be proportionately reduced.

28   Stipulation of Settlement, §IV.A.3(a).

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1

### 2.   Charitable Food Donations

2      The Parties recognize the difficulties and cost inherent in identifying and notifying
3  Class members who purchased the Product during the class period (January 28, 2008 through
4  October 1, 2009).  Class members are located throughout the country and the Parties do not
5  have Class Member addresses, so individual notice cannot be provided and nationwide
6  saturation notice campaigns by publication quickly become prohibitively expensive with no
7  guarantee of any significant level of participation.  Given the dollar amount of an individual's
8  claim, notice costs could swamp the value of those who claim in.  This set of facts presents the
9  prototypical *cy pres* situation.  *See, e.g., State of California v. Levi Strauss & Co.*, 41 Cal. 3d
10  460, 472 (1986) ("[W]ithout fluid recovery [*cy pres*], defendants may be permitted to retain ill
11  gotten gains simply because their conduct harmed a large number of people in small amounts
12  instead of small numbers of people in large amounts.").  As a result – in addition to the
13  common fund for cash payments – the Parties agree that the substantial charitable donation is
14  an appropriate and important aspect of this settlement.  Therefore, pursuant to the Stipulation
15  of Settlement, Kellogg will donate $5.5 million worth of Kellogg branded food items to
16  charities that provide food to the indigent.  All food donations will be made within nine
17  months of the Effective Date.  Stipulation of Settlement, §IV.B.2.

18      The specific food items are listed in the settlement agreement and do not include foods
19  of little or no nutritional value (such as candies or similar products).  The food items permitted
20  for distribution are:  All-Bran®, Corn Flakes Cereal, Cracklin' Oat Bran® Cereal, FiberPlus
21  Antioxidant Bars, Low Fat Granola, Mueslix® Cereal, Nutri-Grain® Products, Product 19®
22  Cereal, Raisin Bran® Cereal, Raisin Bran Crunch® Cereal, Smart Start® Cereal, Special K®
23  Cereal products, Morningstar Farms® Veggie Foods, and Rice Krispies® Cereal.  *See*
24  Stipulation of Settlement, §IV.B.2.

25

### 3.   Injunctive Relief

26      First, the settlement puts an end to Kellogg's alleged unlawful practices.  Within 30
27  days of the Effective Date and for a period of three years thereafter, Kellogg will cease using
28  any language to the effect that "eating a bowl of Kellogg's® Frosted Mini-Wheats cereal for

1    breakfast is clinically shown to improve attentiveness by nearly 20%" on Product advertising
2    and labeling.  The Stipulation of Settlement also requires Kellogg to limit and qualify other
3    claims about the impact on attentiveness from eating the Product.  Stipulation of Settlement,
4    §IV.B.1.  The Stipulation of Settlement's injunctive relief applies to all Product advertising,
5    including the packaging of the Product and any type of advertisement or promotion of any
6    kind, including on radio, television, the Internet, newspapers, periodicals, point of purchase
7    displays, and all other media.

8              **4.       Notice and Administration Costs and Attorneys' Fees And Expenses**

9              All Class Notice and claims administration costs, Class Counsels' fees and expenses,
10   and class representative incentive awards will be paid by Kellogg, separate and apart from any
11   consideration being paid to the Class.  Stipulation of Settlement, §§V.C and VII.A.  Kellogg
12   agrees to not oppose Class Counsels' application for reasonably attorneys' fees and
13   reimbursement of expenses, not to exceed $2 million, and class representative incentive
14   awards of $5,000.  *Id.* at §§VIII.A, VIII.C.

15             **B.       The Proposed Class Notice Program**

16             The Parties have developed a notice program with the help of Garden City Group, Inc.
17   ("Garden City"), a firm that specializes in developing class action notice plans.  Because the
18   Product is sold over the counter at retail stores, Kellogg does not have mailing addresses for
19   the Class members.   Consequently, the notice program focuses on disseminating notice
20   through the internet and in *Parents Magazine*, where Kellogg advertises the Product.

21             The Publication Notice is a summary version of the longer, more formal Notice of
22   Class Action Settlement, which is designed to readily provide potential Class members with
23   essential information about the Settlement, including submitting a claim.  The Publication
24   Notice contains a general description of the lawsuit, the settlement relief including how a
25   claim can be filed, and a general description of Class members' legal rights.  The Publication
26   Notice also directs Class members to a website dedicated exclusively to the settlement and a
27   toll free number Class members may use to obtain a copy of the detailed Notice of Class
28   Action Settlement and other information.  Importantly, the Publication Notice also shall

BLOOD HURST & O'REARDON, LLP

incorporate the Claim Form so that Class members can easily fill out and return the Claim Form directly from the Publication Notice itself, or readily access the Claim Form online. The Publication Notice is attached to the Stipulation of Settlement as Exhibit D.

The Publication Notice will appear where Class members are likely to see it based on market research about the consumers who purchased the Product. Accordingly, the Publication Notice will appear in *Parents Magazine* and in on-line versions of local newspapers and television stations in 375 websites.

Complementing the Publication Notice is the Class Notice. Stipulation of Settlement, Ex. C. The Class Notice contains detailed information about the lawsuit, the Claim Form, the Settlement benefits, the release and how to opt-out, object and exercise other rights under the Settlement. The Class Notice will be available on the Settlement Website, Class Counsels' websites and will be mailed to Class members who request a copy. Stipulation of Settlement, §V.A.

## IV.   THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

### A.   The Standard Used to Decide Whether to Preliminarily Approve a Class Action Settlement

The approval of a proposed class action settlement is a matter within the broad discretion of the trial court. *Officers for Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982). In making this determination, the Court should evaluate the fairness of the settlement in its entirety. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . [t]he settlement must stand or fall in its entirety.").

Settlements of complex class actions are strongly favored. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The preliminary approval process requires the Court to "make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement and date of the final fairness hearing." *Manual for Complex Litigation (Fourth)*, §21.633, at 321

BLOOD HURST & O'REARDON, LLP

1  (2004). At this stage, the Court need only conduct a *prima facie* review of the relief and notice

2  provided by the Stipulation of Settlement to determine whether notice should be sent to the

3  settlement Class members. *Id.* The Court's review is "limited to the extent necessary to reach

4  a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

5  collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

6  reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *accord*

7  *Hanlon*, 150 F.3d at 1027. This is a minimal threshold:

> [I]f the proposed settlement appears to be the product of serious, informed, non-
> collusive negotiations, has no obvious deficiencies, does not improperly grant
> preferential treatment to class representatives or segments of the class, and ***falls
> within the range of possible approval***, then the court should direct that the
> notice be given to the Class members of a formal fairness hearing . . . .

11  *Young v. Polo Retail, LLC*, No. C-02-4546 (VRW), 2006 WL 3050861, at *5 (N.D. Cal. Oct.

12  25, 2006) (emphasis added); *see also Satchell v. Federal Express Corp.*, Nos. C03-2659 SI, C

13  03-2878 SI, 2007 WL 1114010 at *4 (N.D. Cal. April 13, 2007).

14  Here, the proposed settlement plainly satisfies the standard for preliminary approval, as

15  there is no question as to its fairness, reasonableness and adequacy; placing it squarely within

16  the range of possible approval.

### 1. The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations

19  The requirement that a settlement be fair is designed to protect against collusion among

20  the parties. *See Hanlon*, 150 F.3d at 1026. Typically, "[t]here is a presumption of fairness

21  when a proposed class settlement, which was negotiated at arm's-length by counsel for the

22  class, is presented for Court approval." *Newberg on Class Actions*, §11.41 (4th Ed. 2007); *see*

23  *also Nat'l Rural Telecomm. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)

24  ("'Great weight' is accorded to the recommendation of counsel, who are the most closely

25  acquainted with the facts of the underlying litigation."); *In re Employee Benefit Plans Secs.*

26  *Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("[t]he court is entitled

27  to rely on the judgment of experienced counsel in its evaluation of the merits of a class action

28  settlement").

BLOOD HURST & O'REARDON, LLP

1    Here, the Parties engaged the services of Martin Quinn of JAMS, an experienced and

2    skilled mediator, who assisted the Parties during a full day of mediation on January 13, 2010.

3    The Parties have been negotiating for months since then.  Blood Decl., ¶¶12, 13.  Before the

4    mediation, Class Counsel conducted an extensive investigation into the facts of the case,

5    obtained factual information from Kellogg and third parties relating to both information

6    necessary to evaluate damage and restitution amounts and the substantive advertising claims

7    that are the subject of this lawsuit.  Thus, by this time, Plaintiffs and their counsel, who are

8    experienced in prosecuting this type of complex class action claims, had "a clear view of the

9    strengths and weaknesses" of their case and were in a strong position to make an informed

10   decision regarding the reasonableness of a potential settlement.  *See, e.g.*, *In re Warner*

11   *Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *see also Manchaca v. Chater*,

12   927 F. Supp. 962, 967 (E.D. Tex. 1996).  The initial mediation session with Martin Quinn was

13   followed by months of detailed and contentious negotiations between the Parties before

14   agreement on the settlement was reached. Blood Decl., ¶¶12-13.  The fact that the settlement

15   was prompted by an experienced mediator confirms the settlement was anything but collusive.

16   *See, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3

17   (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement

18   process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*,

19   No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that

20   the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a

21   private mediator experienced in complex litigation, is further proof that it is fair and

22   reasonable").  Further, the nature of the subsequent negotiations between the Parties, the

23   experience of counsel in this area, and the fair result reached are all evidence of the arms-

24   length nature of the negotiations that lead to the settlement.

25           **2.     The Proposed Settlement Is Fair to Both Plaintiffs and Class
                       Members**

26

27       The proposed settlement is fair to the members of the Class because it permits cash

28   refunds for up to three boxes of cereal.  In addition, Kellogg will stop the false advertising

BLOOD HURST & O'REARDON, LLP

practices that were the subject of this litigation. Although Kellogg's conduct was also the subject of an investigation by the Federal Trade Commission ("FTC"), the agreement reached with the FTC and the resulting consent order did not provide refunds or *cy pres* relief. Further, unlike the FTC consent order, the injunctive relief here specifically delineates the precise claim Kellogg may make in future advertising. Specifically, the injunctive relief requires that if Kellogg makes a Product comparison claim, Kellogg must qualify that the comparison is made to children who did not eat breakfast. *See* Stipulation of Settlement, §IV.B.1.

To account for their willingness to step forward and represent other consumers, and to compensate them for their time and effort devoted to prosecuting the common claims, the settlement provides for incentive awards to Plaintiffs. Such service awards are "fairly typical in class actions." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see also Simon v. Toshiba America,* No. C 07-06202 MHP, 2010 WL 1757956, at *5 (N.D. Cal. Apr. 30, 2010); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG(AJB), 2010 WL 761122, at *3 (S.D. Cal. Mar. 4, 2010) ("Although [plaintiff] seeks a $5,000 service fee for himself which is not available to other Class members, the fee appears to be reasonable in light of [plaintiff's] efforts on behalf of the class members."); *Chavez v. WIS Holding Corp.*, No. 07-cv-1932, 2010 U.S. Dist. LEXIS 56138, at *8 (S.D. Cal. June 7, 2010) (approving $7,500 incentive awards for each class representative).

### 3.   The Terms of the Settlement Compel Preliminary Approval

The proposed settlement readily meets the standard for preliminary approval. The settlement specifically addresses the alleged deceptive practices and provides carefully-tailored economic benefits to all Class members who submit valid claims. The settlement also requires Kellogg to reform its business practices by ceasing to use the advertising language challenged in this litigation.

Moreover, the inclusion of a substantial charitable donation of Kellogg's branded food items as part of the settlement is appropriate in situations such as this where identification of Class members is difficult or impossible. *See, e.g., Vista HealthPlan, Inc. v. Warner Holdings*

1    *Co. III, LTD*, 246 F.R.D. 349 (D.D.C. 2007) (approving settlement involving $3 million

2    hormonal contraceptive products). In *In re Toys "R" Us Antitrust Litig.* the court explained:

> The Settlements, with their distributions of toys and educational programs, will benefit children nationwide. In addition, the toy consuming public will benefit from the injunctive relief and from the antitrust deterrent inherent in the successful and expeditious conclusion of this litigation. The decision to forego individual recoveries was sensible, given the difficulty of identifying proper claimants and the difficulty, and especially the costs, that such recoveries and their administration would have entailed. The net monetary relief for any individual claimant would have been limited. Under these circumstances, as the court stated in approving a similar settlement in *Reebok*, [903 F. Supp. 532, 537 (S.D.N.Y. 1995)]: "'The distribution method here serves the general public interest, the interests of the plaintiffs and the consumers, and the public interests of disgorgement and deterrence. The distribution procedure included in the Settlement Agreement is thus fair, reasonable, and adequate.'"

10   191 F.R.D. 347, 353-54 (E.D.N.Y. 2000). The same interests that were served by the

11   charitable product donation in *In re Toys "R" Us Antitrust Litig* are similarly served here

12   given that: (1) Kellogg does not sell directly to consumers but through retailers, so it has no

13   way of identifying Class members directly; (2) Frosted Mini-Wheats is an established cereal

14   product that many consumers routinely purchase regardless of the subject advertising

15   campaign, making it difficult to identify those consumers who purchased the Product based on

16   Kellogg's misleading "attentiveness claims," as may be required under some state's consumer

17   protection laws; and (3) the misleading "attentiveness claims" were only made for a limited

18   time period – from January 28, 2008 through October 1, 2009. For all of these reasons, the

19   settlement requires that Kellogg make a charitable product distribution of $5.5 million worth

20   of Kellogg branded food items to charities that provide food to the indigent. Stipulation of

21   Settlement, §IV.B.2.

22          Further, the settlement provides these benefits without the risk and delays of continued

23   litigation, trial and appeal. The expense, complexity and duration of litigation are significant

24   factors considered in evaluating the reasonableness of a settlement. *Churchill*, 361 F.3d at

25   577. Litigating this class action through trial would be time-consuming and expensive. As

26   with most class actions, Plaintiffs' claims are complex and risky. The question of whether

27   Kellogg has sufficient scientific substantiation for its "attentiveness claims" would require

28   analysis by experts for both Parties, setting up a "battle of the experts." Moreover, class

BLOOD HURST & O'REARDON, LLP

1  certification itself always poses a risk. If plaintiffs were unable to certify a class, the case

2  would effectively be over, and defendant would have prevailed, regardless of the merits of the

3  claims. At minimum, absent settlement, this litigation would likely continue for years before

4  Plaintiffs or the Class would see any recovery. That a settlement would eliminate the delay

5  and expenses strongly weighs in favor of approval. *See Milstein v. Huck*, 600 F. Supp. 254,

6  267 (E.D.N.Y 1984).

7  By reaching this settlement, the Parties will avoid protracted litigation and will

8  establish a means for the prompt resolution of Class members' claims against Kellogg. These

9  avenues of relief provide meaningful benefits to Class members. Given the alternative – a

10  long, complex and uncertain litigation – the availability of prompt relief under the Settlement

11  is highly beneficial to the Class.

12  The settlement should be preliminarily approved.

13  **V.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED**

14  The Ninth Circuit recognizes the propriety of certifying a settlement Class to resolve

15  consumer protection lawsuits. *Hanlon,* 150 F.3d at 1019. When presented with a proposed

16  settlement, a court must first determine whether the proposed settlement class satisfies the

17  requirements for class certification under Federal Rule of Civil Procedure 23. *Id.* But, in

18  assessing those certification requirements, a court may properly consider that there will be no

19  trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request

20  for settlement-only class certification, a district court need not inquire whether the case, if

21  tried, would present intractable management problems . . . for the proposal is that there be no

22  trial.").

23  **A.    The Settlement Class Satisfies the Requirements of**
         **Federal Rule of Civil Procedure 23(a)**

24  

25  Rule 23(a) enumerates four prerequisites for class certification:    (1) numerosity;

26  (2) commonality; (3) typicality; and (4) adequacy.    The Parties agree that each of these

27  requirements is met.

28  

BLOOD HURST & O'REARDON, LLP

00020997

12

No. 3:09-CV-01786-IEG(WMC)

BLOOD HURST & O'REARDON, LLP

### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009). Here, the numerosity requirement is readily met because joinder of absent class members would be exceedingly difficult. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Kellogg is a nationwide manufacturer of foodstuffs, and Mini-Wheats® is among its most popular brands. Hundreds of thousands of purchases were made between January 28, 2008 through October 1, 2009. *Newberg*, §3.3 (Where "the exact size of the class is unknown, but general knowledge and common sense indicates that it is large, the numerosity requirement is satisfied."). Accordingly, the numerosity requirement is met.

### 2. Commonality

"The existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006). The commonality requirement is construed "permissively." *Hanlon*, 150 F.3d at 1019; *Wiener*, 255 F.R.D. at 664.

Here, Class members' claims necessarily involve common questions of law and fact. Plaintiffs' allegations focus on a singular advertising claim appearing on all of the Product labels during the class period. Whether the claim was true or false presents a common, salient issue sufficient to satisfy the Rule 23(a) commonality requirement. *See Weiner*, 255 F.R.D. at 664-65 ("The proposed class members clearly share common legal issues regarding Dannon's alleged deception and misrepresentations in its advertising and promotion of the Products."). Accordingly, the commonality requirement is satisfied.

### 3. Typicality

Rule 23(a)(3) typicality is satisfied where the Plaintiffs' claims are "reasonably co-extensive" with absent Class members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665. The test for typicality "is

BLOOD HURST & O'REARDON, LLP

1   whether other members have the same or similar injury, whether the action is based on conduct

2   which is not unique to the named Plaintiffs, and whether other class members have been

3   injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

4   Cir. 1992). Thus, "[t]he purpose of the typicality requirement is to assure that the interest of

5   the named representative aligns with the interests of the class." *Id.* For example, in *Keilholtz*

6   *v. Lennox Health Prods., Inc.*, No. C08-00836CV, ___ F.R.D. ___, 2010 WL 668067 (Feb. 16,

7   2010 N.D. Cal.), in certifying UCL and CLRA claims, the court found that the typicality

8   requirement was satisfied because: "Plaintiffs' claims are all based on Defendants' sale of

9   allegedly dangerous fireplaces without adequate warnings." *Id.* at *5.

10      Plaintiffs and Class members were all exposed to the same Product and the same

11   alleged misrepresentations on the labeling. Plaintiffs and Class members also seek relief for

12   the same alleged conduct, *i.e.*, misrepresenting that "eating a bowl of Kellogg's® Frosted

13   Mini-Wheats cereal for breakfast is clinically shown to improve attentiveness by nearly 20%."

14   Plaintiffs' claims are identical to those of the Class. Therefore, the typicality requirement is

15   met.

16              **4.    Adequacy of Representation**

17      Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

18   the interests of the class." Adequacy is satisfied where (i) counsel for the class is qualified and

19   competent to vigorously prosecute the action, and (ii) the interests of the proposed class

20   representatives are not antagonistic to the interests of the Class. *See, e.g.*, *Staton v. Boeing*,

21   327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Molski v. Gleich*, 318 F.3d 937,

22   955 (9th Cir. 2003), *overruled on other grounds in Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d

23   571 (9th Cir. 2010); *Weiner*, 225 F.R.D. at 667.[2]

24      The adequacy requirement is met here. First, the proposed Class Counsel are qualified

25   and experienced in conducting class action litigation. *See* Blood Decl., Exs. 1-5 (Class

26

27   [2]   Rule 23(g)(1) also requires the Court to appoint class counsel. Plaintiffs request the
     Court appoint Blood Hurst and O'Reardon, LLP, Bonnett, Fairbourn, Friedman & Balint, P.C.,
28   Whatley, Drake & Kallas, LLC, Piscitelli Law Firm, and Climaco, Wilcox, Peca, Tarantino &
     Garofoli Co., L.P.A. as Class Counsel.

1   Counsels' Firm Resumes).  Further, proposed Class Counsel have thoroughly and efficiently

2   identified and investigated the claims in this lawsuit and the facts that support those claims.

3   They also successfully mediated the proposed Settlement. *See In re Emulex Corp. Sec. Litig.*,

4   210 F.R.D. 717, 720 (C.D. Cal. 2002) (a court evaluating adequacy of Counsels'

5   representation may examine "the attorneys' professional qualifications, skill, experience, and

6   resources . . . [and] the attorneys' demonstrated performance in the suit itself").  Second, there

7   is no conflict of interest between Plaintiffs' interests and the interests of the Class members.

8   **B.      The Settlement Class Should Be Preliminarily Approved Under Federal
          Rule of Civil Procedure 23(b)(3)**

9

10  Plaintiffs seek certification of a settlement Class under Rule 23(b)(3).  Certification

11  under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served

12  best by settling their difference in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A

13  C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* §1777 (2d ed. 1986)).

14  There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law

15  or fact common to the members of the class predominate over any questions affecting only

16  individual members; and (2) a class action is superior to other available methods for the fair

17  and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd.

18  of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir.

19  2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668.  Rule 23(b)(3) encompasses

20  those cases "in which a class action would achieve economies of time, effort, and expense, and

21  promote . . . uniformity of decision as to persons similarly situated, without sacrificing

22  procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615

23  (citations omitted and alterations in original); *Wiener*, 255 F.R.D. at 668.

24  **1.      Common Questions Predominate Over Individual Issues**

25  The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are

26  sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

27  "Predominance is a test readily met in certain cases alleging consumer . . . fraud . . . ." *Id.*

28  "When common questions present a significant aspect of the case and they can be resolved for

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1   all members of the class in a single adjudication, there is clear justification for handling the

2   dispute on a representative rather than on an individual basis." *Fed. Prac. & Proc.*, §1778;

3   *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that commonality

4   and typicality tend to merge).

5       The predominance requirement is satisfied here.  As discussed above, Plaintiffs allege

6   that the Class members are entitled to the same legal remedies based on the same alleged

7   wrongdoing – exposure to the same alleged misrepresentation.  The central issues for every

8   claimant are whether Kellogg had substantiation for its claim that "eating a bowl of

9   Kellogg's® Frosted Mini-Wheats cereal for breakfast is clinically shown to improve

10  attentiveness by nearly 20%" and whether that misrepresentation was likely to deceive a

11  reasonable consumer.  Under these circumstances, there is sufficient basis to find that the

12  requirements of Rule 23(b)(3) are present.  *See Weiner*, 255 F.R.D. at 669 (predominance

13  satisfied when alleged misrepresentation of product's health benefits were displayed on every

14  package); *Hanlon*, 150 F.3d at 1022.

15              **2.     A Class Action is the Superior Method to Settle This Controversy**

16      Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is

17  superior to other available methods for the fair and efficient adjudication of the controversy.

18  These factors include: (i) the class members' interest in individually controlling separate

19  actions; (ii) the extent and nature of any litigation concerning the controversy already begun by

20  or against class members; (iii) the desirability or undesirability of concentrating the litigation

21  of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.

22  Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92

23  (9th Cir. 2001).  "[C]onsideration of these factors requires the court to focus on the efficiency

24  and economy elements of the class action so that cases allowed under subdivision (b)(3) are

25  those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at

26  1190 (citations omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th

27  Cir. 1996) (finding the superiority requirement may be satisfied where granting class

28  certification "will reduce litigation costs and promote greater efficiency").

1    Application of the Rule 23(b)(3) "superiority" factors shows that a class action is the

2    preferred procedure for this Settlement. The amount of damage to which an individual class

3    member would be entitled is not large. *Zinser*, 253 F.3d at 1191; *Wiener* 255 F.R.D. at 671. It

4    is neither economically feasible, nor judicially efficient, for the hundreds of thousands of Class

5    members to pursue their claims against Kellogg on an individual basis. *Deposit Guar. Nat'l*

6    *Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023; *Vasquez v. Superior*

7    *Court*, 4 Cal. 3d 800, 808 (1971). Additionally, the fact of settlement eliminates any potential

8    difficulties in managing the trial of this action as a class-action. When "confronted with a

9    request for settlement-only class certification, a district court need not inquire whether the

10   case, if tried, would present intractable management problems . . . for the proposal is that there

11   be no trial." *Amchem*, 521 U.S. at 620.

## VI.   THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND CLASS NOTICE SHOULD BE APPROVED

The threshold requirement concerning the sufficiency of class notice is whether the

means employed to distribute the notice is reasonably calculated to apprise the class of the

pendency of the action, of the proposed settlement, and of the Class members' rights to opt out

or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent.*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process

are best left to the discretion of the court, subject only to the broad "reasonableness" standards

imposed by due process. In this Circuit, it has long been the case that a notice of settlement

will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient

detail to alert those with adverse viewpoints to investigate and to come forward and be heard."

*Churchill*, 361 F.3d at 575 (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352

(9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member

with the opportunity to opt-out and individually pursue any remedies that might provide a

better opportunity for recovery).

The proposed Class Notice – collectively the long form Notice of Class Action

Settlement and the Publication Notice – satisfies these content requirements. *See* Stipulation

of Settlement, Exs. C (long form notice) and D (Publication Notice). The Class Notice is written in simple, straightforward language and includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class members can obtain settlement benefits; (4) an explanation of how Class members can exercise their right to opt-out or object to the settlement; (5) an explanation that any claims against Kellogg that could have been litigated in this action will be released if the Class member does not opt out from the Settlement; (6) the names of Class Counsel and information regarding attorneys' fees and expenses, and Plaintiffs' incentive awards; (7) the Settlement Hearing date; (8) an explanation of eligibility for appearing at the Settlement Hearing; and (9) the Settlement Website and a toll free number where additional information can be obtained. *Id.* The Class Notice also informs Class members that Plaintiffs' final approval brief and request for attorneys' fees will be filed prior to the objection deadline. *See In re Mercury Interactive Corp. Sec. Litig.*, No. 08-17372, __ F.3d __, 2010 WL 3239460 (9th Cir. Aug. 18, 2010). Collectively, the Class Notice provides Class members with sufficient information to make an informed and intelligent decision about the settlement. As such, it satisfies the content requirements of Rule 23. *See In re Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation entitled to participate, including the right to exclude themselves from the class").

Additionally, the proposed dissemination of the Class Notice satisfies all due process requirements. The Settlement provides that Kellogg will provide notice to the Class after preliminary approval of the Settlement by the Court. Because Kellogg does not sell the Products directly to consumers, Kellogg does not have mailing addresses or other contact information for the members of the Class. Therefore, the Notice Program consists of publishing the Publication Notice in targeted sources that direct Class members to various methods of obtaining the Claim Form. Additionally, Class Notice will be available on the Settlement Website and will be provided to Class members who request it via the toll-free number established for this Settlement.

BLOOD HURST & O'REARDON, LLP

00020997

18

No. 3:09-CV-01786-IEG(WMC)

1    In sum, the contents and dissemination of the proposed Class Notice constitutes the

2    best notice practicable under the circumstances and fully complies with the requirements of

3    Rule 23.

4    **VII.    THE PROPOSED SCHEDULE OF EVENTS**

5    Dates, such as the time to complete publication of the Class Notice or to opt-out or

6    object, are based on when preliminary approval of the settlement is granted and when the final

7    approval Settlement Hearing is set.  The settlement-related dates calculated in accordance with

8    the Stipulation of Settlement are as follows:

| Event | Date |
|---|---|
| Last day to complete publication of notice and to activate the Settlement Website | 60 days before Settlement Hearing |
| Last Day to Opt Out or Object | 30 days before Settlement Hearing |
| First Day Settlement Hearing can be set | About 100 days after the Court enters the Preliminary Approval Order |
| Last Day to Submit a Claim Form | 80 days after the date of the Settlement Hearing |

Accordingly, the Parties request that the Court schedule a Final Approval Hearing 100 days

after granting preliminary approval, or as soon thereafter as the Court's schedule permits.

**VIII.   CONCLUSION**

For the reasons set forth above, the Parties respectfully request the Court enter the

[Proposed] Order attached to the Stipulation of Settlement as Exhibit F: (1) certifying the

Class; (2) designating Plaintiffs Dennis and Koz as representatives of the Class; (3) appointing

Blood Hurst & O'Reardon, LLP, Piscitelli Law Firm, Bonnett, Fairbourn, Friedman & Balint,

P.C., Whatley, Drake & Kallas, LLC, and Climaco, Wilcox, Peca, Tarantino & Garofoli Co.,

L.P.A. as Class Counsel; (4) granting preliminary approval of the Settlement; (5) approving

the proposed Class Notice plan; and (6) scheduling a final Settlement Hearing.

Respectfully submitted,

Dated: September 10, 2010              BLOOD HURST & O'REARDON, LLP
                                       TIMOTHY G. BLOOD

                                       By:        s/Timothy G. Blood
                                              TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

600 B Street, Suite 1550
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012-3311
Telephone:  602/274-1100
602/274-1199  (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

PISCITELLI LAW FIRM
FRANK E. PISCITELLI, JR.
55 Public Square, Suite 1950
Cleveland, OH  44113
Telephone:  216/931-7000
frank@piscitellilaw.com

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  619/756-6978
602/798-5825 (fax)
tcarpenter@bffb.com

CLIMACO, WILCOX, PECA, TARANTINO
   & GAROFOLI CO., L.P.A.
JOHN R. CLIMACO
PATRICK G. WARNER
55 Public Square, Suite 1950
Cleveland, OH  44113
Telephone:  216/621-8484
216/771-1632 (fax)
jrclim@climacolaw.com
pwarn@climacolaw.com

WHATLEY, DRAKE & KALLAS, LLC
PATRICK J. SHEEHAN
1540 Broadway, 37th Floor
New York, NY  10036
Telephone: 212/447-7070
212/447-7077 (fax)
psheehan@wdklaw.com

Attorneys for Plaintiffs

00020997

No. 3:09-CV-01786-IEG(WMC)

1

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CF/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 10, 2010.

s/Timothy G. Blood
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O'REARDON, LLP

00020997

21

No. 3:09-CV-01786-IEG(WMC)