1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  600 B Street, Suite 1550
   San Diego, CA 92101
3  Telephone: 619/338-1100
   619/338-1101 (fax)
4  tblood@bholaw.com

5  BONNETT, FAIRBOURN, FRIEDMAN
     & BALINT, P.C.
6  ANDREW S. FRIEDMAN (AZ 005425)
   ELAINE A. RYAN (AZ 012870)
7  PATRICIA N. SYVERSON
     (CA 203111; AZ 020191)
8  2901 N. Central Avenue, Suite 1000
   Phoenix, AZ 85012-3311
9  Telephone: 602/274-1100
   602/274-1199 (fax)
10 afriedman@bffb.com
   eryan@bffb.com
11 psyverson@bffb.com

12 PISCITELLI LAW FIRM
   FRANK E. PISCITELLI, JR.
13 55 Public Square, Suite 1950
   Cleveland, OH 44113
14 Telephone: 216/931-7000
   frank@piscitellilaw.com

15 Attorneys for Plaintiffs

16 [Additional Counsel Appear on Signature Page.]

17

18              UNITED STATES DISTRICT COURT

19            SOUTHERN DISTRICT OF CALIFORNIA

| 20 | HARRY DENNIS and JON KOZ, On Behalf of Themselves and All Other Others Similarly Situated, | Case No.: 3:09-CV-01786-IEG(WMC) |
|---|---|---|
| 21 | | CLASS ACTION |
| 22 | Plaintiffs, | PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| 23 | v. | |
| 24 | KELLOGG COMPANY, a Delaware Corporation, | Date: February 14, 2011 Time: 10:30 a.m. |
| 25 | | |
| 26 | Defendant. | Courtroom: 1, 4th Floor Judge: Honorable Irma E. Gonzalez |
| 27 | | Date Filed: August 17, 2009 Trial Date: TBD |
| 28 | | |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ....................................................................................... 1

II.    HISTORY OF THE LITIGATION.............................................................. 2

III.   THE TERMS OF THE SETTLEMENT ..................................................... 4

       A.    The Settlement Relief........................................................................ 4

             1.    Cash Refunds .......................................................................... 4

             2.    Charitable Food Donations ..................................................... 5

             3.    Injunctive Relief...................................................................... 6

             4.    Notice and Administration Costs, Attorneys' Fees and Expenses, and Service Awards.................................................................... 6

       B.    The Notice Program .......................................................................... 7

IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL............................ 8

       A.    The Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations ............................................................... 9

       B.    The Settlement Provides Substantial Value ..................................... 10

       C.    The Settlement Is Fair to Plaintiffs and Class Members.................... 12

       D.    The Reaction of the Class Supports Approval of the Settlement........ 13

V.     THE COURT SHOULD CONFIRM CERTIFICATION OF THE CLASS ................. 13

       A.    The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a).............. 14

             1.    Numerosity............................................................................. 14

             2.    Commonality........................................................................... 15

             3.    Typicality ............................................................................... 15

             4.    Adequacy of Representation ................................................... 16

       B.    The Court Should Confirm Certification of the Class Under Federal Rule of Civil Procedure 23(b)(3) ....................................................... 16

             1.    Common Questions Predominate Over Individual Issues ...................... 17

             2.    A Class Action Is The Superior Method to Settle This Controversy.............................................................................. 18

VI.    PLAINTIFFS' FEE AND EXPENSE APPLICATION SHOULD BE APPROVED............................................................................................ 19

BLOOD HURST & O'REARDON, LLP

00024775

|   |   |   |   |   |
|---|---|---|---|---|
| A. | Fees and Expenses Totaling 19% of the Settlement Value Are Reasonable | | | 19 |
| B. | The Lodestar/Multiplier Crosscheck | | | 21 |
| | 1. | The Hourly Rates are Reasonable | | 23 |
| | 2. | The Hours Expended Are Reasonable | | 24 |
| | 3. | An Enhancement of 4.3 Is Reasonable | | 25 |
| | | a. | The Exceptional Results Obtained | 25 |
| | | b. | Contingent Nature of the Fee and Ongoing Work | 25 |
| | | c. | Skill Displayed and the Prompt Resolution | 27 |
| | | d. | Benefits to the Public | 28 |
| C. | Plaintiffs' Expenses Are Reasonable and Compensable | | | 29 |
| D. | The Service Awards Are Reasonable | | | 29 |
| VII. | CONCLUSION | | | 31 |

BLOOD HURST & O'REARDON, LLP

1

## **TABLE OF AUTHORITIES**

2

Page(s)

3

**CASES**

*Adams v. Inter-Con Security System, Inc.*,
  Case No. C-06-5428-MHP, 2007 WL 3225466
  (N.D. Cal. Oct. 30, 2007) .............................................................................................. 10

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................... 14, 17, 18

*Andrews v First Interstate Bank of California*,
  Case No. 953575 (S.F. Super. Ct. 1997) .......................................................................... 20

*Apple Computer, Inc. v. Super. Ct.*,
  126 Cal. App. 4th 1253 (2005) .......................................................................................... 21

*Bell v. Farmers Ins. Exch.*,
  115 Cal. App. 4th 715 (2004) ............................................................................................ 19

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ............................................................................................. 20

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ......................................................................................................... 20

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ................................................................................... 13

*Chavez v. Netflix, Inc.*,
  162 Cal. App. 4th 43 (2008) .......................................................................... 19, 22, 25, 26

*Churchill Village, LLC v. Gen. Elec. Co.*,
  361 F.3d 566 (9th Cir. 2004) .............................................................................................. 8

*Cicero v. DirecTV, Inc.*,
  Case No. EDCV-07-1182, 2010 WL 2991486
  (C.D. Cal. July 27, 2010) .................................................................................................. 12

*City of Oakland v. Oakland Raiders*,
  203 Cal. App. 3d 78 (1988) .............................................................................................. 22

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................................................ 8

*Create-A-Card, Inc. v. Inuit, Inc.*,
  Case No. C-07-06452-WHA, 2009 WL 3073920
  (N.D. Cal. Sep. 22, 2009) ................................................................................................. 24

BLOOD HURST & O'REARDON, LLP

00024775

BLOOD HURST & O'REARDON, LLP

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
  Case No. C-06-3903-TEH, 2008 WL 4667090
  (N.D. Cal. Oct. 22, 2008) ................................................................................................ 8

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) ...................................................................................................... 18

*Discover Bank v. Superior Court*,
  36 Cal. 4th 148 (2005) ................................................................................................. 28

*Dunk v. Ford Motor Co.*,
  48 Cal. App. 4th 1794 (1996) ....................................................................................... 19

*Emulex Corp. Secs. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) ................................................................................. 16

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  Case No. CV-08-1365-CW(EMC), 2010 WL 1687832
  (N.D. Cal. Apr. 22, 2010) ............................................................................................. 30

*Glendale City Employees' Ass'n*,
  15 Cal. 3d 328 (1975) ................................................................................................... 19

*Glendora Cmty. Redev. Agency v. Demeter*,
  155 Cal. App. 3d 465 (1984) ............................................................................ 22, 23, 25

*Graham v. Daimler Chrysler Corp.*,
  34 Cal. 4th 553,583 (2004) .......................................................................................... 22

*Greene v. Dillingham Constr. NA., Inc.*,
  101 Cal. App. 4th 418 (2002) ....................................................................................... 25

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................*passim*

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ........................................................................................ 15

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ............................................................................................ 29

*Hemphill v. S.D. Ass'n of Realtors, Inc.*,
  225 F.R.D. 616 (S.D. Cal. 2005) .................................................................................. 25

*Hensley v. Eckhart*,
  461 U.S. 424 (1983) ................................................................................................ 21, 25

*Housing Rights Ctr. v. Sterling*,
  Case No. C-V03-859-DSF, 2005 WL 3320738
  (C.D. Cal. Nov. 1, 2005) .............................................................................................. 24

BLOOD HURST & O'REARDON, LLP

*In re Applied Signal Tech., Inc. Secs. Litig.*,
   Case No. C-05-1027(SBA), 2006 WL 1050174 (N.D. Cal. Feb. 8, 2006) ...................... 20

*In re Cal. Indirect Purchases*,
   Case No. 960886, 1998 WL 1031494
   (Alameda Super. Ct. Oct. 22, 1998).......................................................................... 19-20

*In re Cellphone Fee Termination Cases*,
   186 Cal. App. 4th 1380 (2010)........................................................................................ 21

*In re Consumer Privacy Cases*,
   175 Cal. App. 4th 545 (2009)........................................................................................... 21

*In re Cylink Secs. Litig.*,
   274 F. Supp. 2d. 1109 (N.D. Cal. 2003) .......................................................................... 21

*In re Employee Benefit Plans Secs. Litig.*,
   Case No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993)........................................ 9

*In re Equity Funding Corp. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................................. 28

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006)............................................................................................ 15

*In re Indep. Energy Holdings PLC*,
   Case No. 00-Civ-6689(SAS), 2003 WL 22244676
   (S.D.N.Y. Sept. 29, 2003) ................................................................................................ 10

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009)............................................................................................. 25

*In re Ins. Brokerage Antitrust Litig.*,
   Case No. 04-5184-GEB, 2007 WL 1652303 (D.N.J. June 5, 2007)................................. 31

*In re Mego Fin. Corp. Secs. Litig.*,
   213 F.3d 454,457 (9th Cir. 2000)............................................................................... 20, 30

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010)............................................................................................ 13

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................ 9, 29

*In re Pac. Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)......................................................................................... 8, 20

*In re Simon v. Toshiba Am.*,
   Case No. C-07-06202-MHP, 2010 WL 1757956
   (N.D. Cal. Apr. 30, 2010)................................................................................................. 12

BLOOD HURST & O'REARDON, LLP

*In re Toys "R" Us Antitrust Litig*
 191 F.R.D. 347 (E.D.N.Y. 2000) ................................................................. 11

*In re Vitamin Cases,*
 110 Cal. App. 4th 1041 (2003)..................................................................... 22

*In re Warner Commc'ns Secs. Litig.,*
 618 F. Supp. 735 (S.D.N.Y. 1985)................................................................ 10

*Johnston v. Comerica Mortg. Corp.,*
 83 F.3d 241 (8th Cir. 1996).......................................................................... 21

*Keilholtz v. Lennox Health Prods., Inc.,*
 268 F.R.D. 330 (N.D. Cal. 2010)................................................................. 15

*Keith v. Volpe,*
 501 F. Supp. 403 (C.D. Cal. 1980) .............................................................. 23

*Kerr v. Screen Extras Guild, Inc.,*
 526 F.2d 67 (9th Cir. 1975)........................................................................... 21

*Ketchum v. Moses,*
 24 Cal. 4th 1122 (2001) .........................................................................*passim*

*Lealao v. Beneficial Cal., Inc.,*
 82 Cal. App. 4th 19 (2000)......................................................................*passim*

*Lingenfelter v. Astrue,*
 Case No. SACV-03-00264-VBK, 2009 WL 2900286
 (C.D. Cal. Sep. 3, 2009) ............................................................................... 24

*Linney v. Cellular Alaska P'ship,*
 151 F.3d 1234 (9th Cir. 1998)........................................................................ 8

*Lobatz v. U.S. W. Cellular of Cal., Inc.,*
 222 F.3d 1142 (9th Cir. 2000)...................................................................... 25

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
 244 F.3d 1152 (9th Cir. 2001)...................................................................... 17

*Love v. Mail on Sunday,*
 Case No. CV-05-7798-ABC(PJWX), 2007 WL 2709975
 (C.D. Cal. Sept. 7, 2007).............................................................................. 24

*Masters v. Wilhelmina Model Agency, Inc.,*
 473 F.3d 423 (2d Cir. 2007)......................................................................... 20

*McPhail v. First Command Fin. Planning, Inc.,*
 Case No. 05cv179-IEG-JMA, 2009 WL 839841
 (S.D. Cal. Mar. 30, 2009)............................................................................. 20

*Natural Gas Anti-Trust Cases, I, II, III & IV,*
  Case Nos. 4221, 4224, 4226, 4228, 2006 WL 5377849
  (Cal. Super. Ct. Dec. 11, 2006) .................................................................................. 22

*Negrete v. Fid. and Guar. Life Ins. Co.,*
  Case No CV-05-6837-CAS-MANx (C.D. Cal. April 19, 2010) ....................................... 24

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982) ......................................................................................... 8

*Ozga v. U.S. Remodelers, Inc.,*
  Case No. C-09-05112-JSW, 2010 WL 3186971
  (N.D. Cal. Aug. 9, 2010) ..................................................................................... 9, 10, 13

*Parker v. Los Angeles,*
  44 Cal. App. 3d 556 (1974) ......................................................................................... 19

*Pelletz v. Weyerhaeuser Co.,*
  592 F. Supp. 2d 1322 (W.D. Wash. 2009) ............................................................... 30-31

*People Who Care v. Rockford Bd. of Educ.,*
  90 F.3d 1307 (7th Cir. 1996) .................................................................................. 23-24

*POM Wonderful, LLC v. Purely Juice, Inc.,*
  Case No. CV-07-2633-CAS, 2008 WL 4351842
  (C.D. Cal. Sept. 22, 2008) ...................................................................................... 24, 25

*Rader v. Thrasher,*
  57 Cal. 2d 244 (1962) .................................................................................................. 25

*Rider v. San Diego,*
  11 Cal. App. 4th 1410 (1992) ...................................................................................... 29

*Rodriguez v. W. Publishing,*
  563 F.3d 948 (9th Cir. 2009) .......................................................................... 12, 29, 30

*Ross v. U.S. Bank Nat. Ass'n,*
  Case No. C-07-02951-SI, 2010 WL 3833922
  (N.D. Cal. Sept. 29, 2010) ............................................................................................ 9

*San Bernardino Valley Audubon Soc'y v. San Bernardino,*
  155 4 Cal. App. 3d 738 (1984) ................................................................................ 22, 23

*Sanders v. City of L.A.,*
  3 Cal. 3d 252 (1971) .................................................................................................... 19

*Schwartz v. Sec'y of Health & Human Servs.,*
  73 F.3d 895 (9th Cir. 1995) ......................................................................................... 23

BLOOD HURST & O'REARDON, LLP

*Serrano v. Priest ("Serrano III"),*
  20 Cal. 3d 25 (1977) ..................................................................................... 22, 27, 29

*Sheppard v. Cons. Edison Co. of N.Y., Inc.,*
  Case No. 94-CV-0403(JG), 2002 WL 2003206
  (E.D.N.Y. Aug. 1, 2002) ................................................................................ 29-30

*Six Mexican Workers v. Arizona Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) ........................................................................ 19, 20

*State of Cal. v. Levi Strauss & Co.,*
  41 Cal. 3d 460 (1986) ........................................................................................... 5

*State v. Meyer,*
  174 Cal. App. 3d 1061 (1985) ........................................................................ 22, 28

*Staton v. Boeing,*
  327 F.3d 938 (9th Cir. 2003) .......................................................................... 16, 29

*Steinberg v. Allstate Ins. Co.,*
  226 Cal. App. 3d 216 (1990) ................................................................................ 19

*Steiner v. Am. Broad. Co., Inc.,*
  Case No. 05-55773, 2007 WL 2460326 (9th Cir. Aug. 29, 2007) ..................... 23

*SternwestCorp. v. Ash,*
  183 Cal. App. 3d 74 (1986) ............................................................................ 22-23

*Stoetzner v. U.S. Steel Corp.,*
  897 F.2d 115 (3d Cir. 1990) ................................................................................ 13

*Stuart v. Radioshack Corp.,*
  Case No. C-07-4499-EMC, 2010 WL 3155645
  (N.D. Cal. Aug. 9, 2010) ..................................................................................... 10

*Tchoboian v. Parking Concepts, Inc.,*
  Case No. SACV-09-422-JVS(ANx), 2009 WL 2169883
  (C.D. Cal. July 16, 2009) ..................................................................................... 14

*Thayer v. Wells Fargo Bank,*
  2 Cal. App. 4th 819,838 (2001) ........................................................................... 22

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
  896 F.2d 403 (9th Cir. 1990) ............................................................................... 24

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227 (9th Cir. 1996) ............................................................................... 18

*Van Vranken v. Atlantic Richfield Co.,*
  901 F. Supp. 294 (N.D. Cal. 1995) ................................................................. 30, 31

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*Vasquez v. Super. Ct.,*
  4 Cal. 3d 800 (1971) ........................................................................................ 18, 28

*Vista HealthPlan, Inc. v. Warner Holdings Co. III, Ltd.,*
  246 F.R.D. 349 (D.C. 2007) .................................................................................. 11

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (2002) ...................................................................................... 20, 23

*Wershba v. Apple Computer, Inc.,*
  91 Cal. App. 4th 224 (2001) .................................................................. 19, 22, 23, 25

*Wiener v. Dannon Co., Inc.,*
  255 F.R.D. 658 (C.D. Cal. 2009) ....................................................................*passim*

*Williams v. Costco Wholesale Corp.,*
  Case No. 02cv2003-IEG(AJB), 2010 WL 761122
  (S.D. Cal. Mar. 4, 2010) ................................................................................. 12-13

*Williams v. MGM-Pathe Commc'ns Co.,*
  129 F.3d 1026 (9th Cir. 1997) .............................................................................. 20

*Young v. Polo Retail, LLC,*
  Case No. C-02-4546 (VRW), 2006 WL 3050861
  (N.D. Cal. Oct. 25, 2006) .................................................................................... 8-9

*Zinser v. Accufix Research Inst., Inc.,*
  253 F.3d 1180 (9th Cir. 2001) .............................................................................. 18

**STATUTES, RULES & REGULATIONS**

California Business & Professions Code
  §17200. ............................................................................................................... 3

California Civil Code
  §1750. ................................................................................................................. 3

Ohio Rev. Code
  §1345 ................................................................................................................... 2
  §4165 ................................................................................................................... 2

Federal Rules of Civil Procedure
  Rule 23 ........................................................................................................... 7, 14
  Rule 23(a) ............................................................................................................ 14
  Rule 23(a)(1) ....................................................................................................... 14
  Rule 23(a)(3) ....................................................................................................... 15
  Rule 23(a)(4) ....................................................................................................... 16
  Rule 23(b)(3) .......................................................................................... 16, 17, 18
  Rule 23(e)(2) .......................................................................................................... 8

**SECONDARY AUTHORITIES**

Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
    §2.06.................................................................................................................... 23

H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002)
    §3.3...................................................................................................................... 14
    §11.41.................................................................................................................... 9

H. Newberg & A. Conte, *Newberg on Class Actions* (2d ed. 1993)
    §12.08.................................................................................................................. 29

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs:
An Empirical Study*,
    53 U.C.L.A. L. Rev. 1303 (2006) ..................................................................... 29

BLOOD HURST & O'REARDON, LLP

1  Plaintiffs[1] submit this memorandum in support of their motion for final approval of the
2  class action settlement and request for entry of the [Proposed] Judgment, Final Order and
3  Decree (the "Final Order").  The Final Order is attached as Exhibit E to the Stipulation of
4  Settlement (the "Stipulation" or the "Settlement") filed on September 10, 2010.  Plaintiffs
5  further submit their application for an award of attorneys' fees and expenses and service
6  awards.

7  **I.    INTRODUCTION**

8  The Settlement with Kellogg meets Plaintiffs' goals in this litigation – monetary relief
9  for Class members who purchased the cereal at issue and an end to the challenged
10  advertisements.  It also provides for a significant *cy pres* distribution, which is particularly
11  appropriate under the facts of this case.  Further, costs normally born by the class such as
12  settlement notice and administration costs and Class Counsels' attorneys' fees and expenses,
13  are paid by Kellogg on top of all other relief.  All told, the Settlement has a value in excess of
14  $10.6 million.

15  In its preliminary approval order, the Court found that the Settlement fell within the
16  range of a reasonable settlement, conditionally certified a settlement class, and approved a plan
17  to notify the Class of certification and of the proposed settlement.  *See* Dkt. 37.  Now that the
18  Class has been noticed and provided an opportunity to comment on the Settlement, the Parties
19  have received an overwhelmingly positive response from the Class.  As of December 30, 2010,
20  no Class members have objected or opted out.  The objection and opt out period closes on
21  January 15, 2011.

22  The class action alleges false and deceptive advertising and unjust enrichment.
23  Between January 28, 2008 and October 1, 2009, Kellogg claimed in the advertising and
24  labeling of its Frosted Mini-Wheats® cereals that eating the cereal was clinically proven to
25  improve kids' attentiveness and other cognitive abilities by nearly 20%.  Plaintiffs allege that

BLOOD HURST & O'REARDON, LLP

[1] All capitalized terms herein have the same meaning as set forth in the Stipulation.

1    Kellogg's advertisements were deceptive because its representations were not true or

2    otherwise scientifically substantiated.

3         Under the Stipulation, a non-revertible fund of $2.75 million will be established to

4    provide cash payments to Class members who submit Claim Forms to recover the purchase

5    price of the cereal they purchased, up to three boxes.   The Claim Form is simple,

6    straightforward, and can be submitted online or by mail.   Any money remaining will be

7    distributed to appropriate charities pursuant to the *cy pres* doctrine.   The Parties anticipate

8    money will be left over for *cy pres* distribution.   Additionally, Kellogg will distribute $5.5

9    million worth of specified food items to charities that feed the indigent.   A *cy pres* distribution

10   is particularly appropriate here because the Parties do not have the names or addresses of Class

11   members who purchased cereal at grocery stores.   It would be very difficult and unjustifiably

12   expensive to attempt to locate everyone who purchased Mini-Wheats during the Class Period.

13   The Stipulation also provides that Kellogg must discontinue using the challenged message and

14   details the language that is acceptable.

15        The Class Notice is informative and has been distributed in accordance with the

16   Court's order.   *See* Dkt. 37 and concurrently filed Declaration of Lance Blair Regarding Notice

17   and Settlement Administration ("Blair Decl.").   In addition, Class Counsel's attorney fees and

18   expenses, which will not exceed $2 million, will be paid by Kellogg separate and apart from

19   the Settlement Fund and other relief.

20        The Settlement is fair, reasonable and adequate and thus readily meets the standard for

21   final approval.

22   **II.      HISTORY OF THE LITIGATION**

23        Counsel for Plaintiff Jon Koz began investigating this case in or about April 2009,

24   prepared a class action complaint, and on May 5, 2009, sent a demand letter to Kellogg along

25   with a proposed complaint alleging violations of Ohio's Consumer Sales Practice Act (Ohio

26   Rev. Code §1345, *et seq.*), Ohio's Deceptive Trade Practices Act, (Ohio Rev. Code §4165, *et*

27   *seq.*) and breach of warranty in connection with Defendant's advertising of Kellogg's Frosted

28

BLOOD HURST & O'REARDON, LLP

1    Mini-Wheats cereals.  Blood Decl., ¶¶2-4.[2]  Separately and apart from Mr. Koz, counsel for

2    Plaintiff Harry Dennis had been conducting their own investigations (Blood Decl., ¶5) and on

3    August 17, 2009, Plaintiff Dennis filed a complaint against Kellogg in the United States

4    District Court for the Southern District of California (Blood Decl., ¶6).  Dkt. 1.  On June 23,

5    2010, a First Amended Complaint was filed by Dennis and Koz.[3]  Dkt. 23 (the "Amended

6    Complaint").

7         In the Amended Complaint, Plaintiffs Dennis and Koz allege that Kellogg falsely

8    claimed on its labels and packages and in its promotional materials and advertisements that

9    consumption of Kellogg's Frosted Mini-Wheats cereal for breakfast improved kids'

10   attentiveness, memory and other cognitive functions to a degree not supported by any

11   competent clinical evidence.  *See* Amended Complaint, ¶¶1, 7-20.  The Amended Complaint

12   alleges: (1) violations of California's Unfair Competition Law, Business & Professions Code

13   §17200, *et. seq.*, and similar laws of the various states, (2) violations of California's

14   Consumers Legal Remedies Act, Civil Code §1750, *et seq.*, and similar laws of the various

15   states and (3) unjust enrichment.  *See* Amended Complaint, ¶¶32-49.  The Amended

16   Complaint seeks equitable monetary relief and injunctive relief.  *See* Amended Complaint, ¶1.

17        Before the *Dennis* Complaint was filed, counsel for each of the Plaintiffs conducted

18   separate examinations and evaluations of the relevant law and facts to assess the merits of the

19   claims and to determine how to best serve the interests of the members of the proposed Class.

20   Class Counsel obtained and reviewed significant documentation regarding Kellogg's

21   marketing and purported substantiation of its "attentiveness claims," including documents

22   obtained from the Federal Trade Commission pursuant to a FOIA request.  Blood Decl., ¶2.

23   Once Plaintiffs learned of each others' respective claims and lawsuits, and coordinated their

[2]    "Blood Decl." refers to the Declaration of Timothy G. Blood in Support of Motion for Final Approval of Class Action Settlement, filed concurrently.

[3]    On June 23, 2009, Lani Felix-Lozano separately sent a demand to Kellogg alleging violation of the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.* and other laws.  Declaration of Patrick J. Sheehan in Support of Motion for Final Approval of Class Action Settlement ("Sheehan Decl."), ¶7.

BLOOD HURST & O'REARDON, LLP

00024775

3    No. 3:09-CV-01786-IEG(WMC)

1    efforts, the Parties attempted to resolve the dispute by negotiating a Settlement without outside

2    assistance.  Blood Decl., ¶10.  When their efforts were unsuccessful (Blood Decl., ¶11), on

3    January 13, 2010, the Parties participated in a mediation conducted by Martin Quinn of JAMS

4    in San Francisco, California.  Blood Decl., ¶12.  Over the next several months, the Parties

5    heavily negotiated every aspect of the proposed settlement and the relief and ultimately the

6    Parties were able to reach agreement.  Blood Decl., ¶13.  The parties have concluded that

7    further pursuit of the Litigation would be protracted and expensive, and that it is desirable that

8    the Litigation be fully and finally settled in the manner and upon the terms and conditions set

9    forth in the Stipulation.

10   **III.     THE TERMS OF THE SETTLEMENT**

11          **A.     The Settlement Relief**

12          The Settlement provides for a $2.75 million interest bearing fund to pay cash refunds to

13   Class members, $5.5 million worth of food donations to charities serving the poor, injunctive

14   relief, and notice and settlement administration costs and Class Counsels' fees and expenses

15   paid separately by Kellogg, for a total value exceeding $10.6 million.

16                 **1.     Cash Refunds**

17          Under the Settlement, Kellogg will establish an interest bearing cash fund of $2.75

18   million to reimburse Class members for the purchase price paid for the Product during the

19   class period.  Stipulation, §IV.A.2.  Class members need not attempt to recall the price they

20   paid because it is presumed to be $5 per box.  Stipulation, §IV.A.1.  Five dollars is about one

21   dollar more than the 16.3 ounce box, and roughly the same price as the 24 ounce package.

22   Class members may recover up to $15, the equivalent of three boxes of cereal.  Stipulation,

23   §IV.A.1.  To recover, Class members need only submit a very simple Claim Form either by

24   mail or electronically.  Stipulation, §IV.A.1.  These Claim Forms are available online and in

25   the Publication Notice, and may also be obtained by calling a dedicated toll-free number

26   operated by the Class Action Settlement Administrator or by writing to the Class Action

27   Settlement Administrator.  Stipulation, §IV.A.5.

28

BLOOD HURST & O'REARDON, LLP

00024775

4                          No. 3:09-CV-01786-IEG(WMC)

BLOOD HURST & O'REARDON, LLP

1    In the event less than $2.75 million is paid out of the Settlement Fund, the remaining

2    balance will be distributed *cy pres* to one or more appropriate charities (to be approved by the

3    Court); it will not be returned to Kellogg.   Stipulation, §IV.A.3(b).   This cash *cy pres*

4    distribution is separate from the food *cy pres* distribution (*see* Stipulation, §IV.B).   Because of

5    the relatively low purchase price of the Product, some Class members may prefer that more

6    money be donated to charity.   Therefore, in the Class Notice and on the Claim Form, Class

7    members are informed that if they do not submit a claim, more money will be available for

8    charitable donation.   Because of the nature of the claims and the difficulty in cost-effectively

9    reaching Class members who purchased the Products more than a year ago and up to three

10   years ago, the Parties expect a large portion of the Settlement Fund will remain for *cy pres*

11   distribution.

12   In the event claims exceed the fund amount, payments will be proportionately reduced.

13   Stipulation, §IV.A.3(a).

14                     **2.     Charitable Food Donations**

15   The Parties recognize the difficulties and cost inherent in identifying and notifying

16   Class members who purchased the Product during the class period (January 28, 2008 through

17   October 1, 2009).   Class members are located throughout the country and the Parties do not

18   have Class member addresses, so individual notice cannot be provided and nationwide

19   saturation notice campaigns by publication quickly become prohibitively expensive with no

20   guarantee of any significant level of participation.   Given the dollar amount of an individual's

21   claim, notice costs could swamp the value of those who claim in.   This set of facts presents the

22   prototypical *cy pres* situation.   *See, e.g., State of Cal. v. Levi Strauss & Co.*, 41 Cal. 3d 460,

23   472 (1986) ("[W]ithout fluid recovery [*cy pres*], defendants may be permitted to retain ill

24   gotten gains simply because their conduct harmed a large number of people in small amounts

25   instead of small numbers of people in large amounts.").   As a result – in addition to the fund

26   for cash payments – the Parties agree that the substantial charitable donation is an appropriate

27   and important aspect of this Settlement.   Therefore, Kellogg will donate $5.5 million worth of

28   Kellogg branded food items to charities that provide food to the indigent.   Stipulation,

1  §IV.B.2.   All food donations will be made within nine months of the Effective Date.

2  Stipulation, §IV.B.2.

3        The specific food items are listed in the Stipulation and do not include foods of little or

4  no nutritional value (such as candies or similar products).   The food items permitted for

5  distribution are:   All-Bran®, Corn Flakes Cereal, Cracklin' Oat Bran® Cereal, FiberPlus

6  Antioxidant Bars, Low Fat Granola, Mueslix® Cereal, Nutri-Grain® Products, Product 19®

7  Cereal, Raisin Bran® Cereal, Raisin Bran Crunch® Cereal, Smart Start® Cereal, Special K®

8  Cereal products, Morningstar Farms® Veggie Foods, and Rice Krispies® Cereal.   Stipulation,

9  §IV.B.2.

10              **3.       Injunctive Relief**

11        The Settlement puts an end to Kellogg's alleged unlawful practices.   Within three

12  months of the Effective Date and for a period of three years thereafter, Kellogg will cease

13  using any language to the effect that "eating a bowl of Kellogg's® Frosted Mini-Wheats cereal

14  for breakfast is clinically shown to improve attentiveness by nearly 20%" on Product

15  advertising and labeling.   Stipulation, §IV.B.   The Settlement also requires Kellogg to limit

16  and qualify other claims about the impact on attentiveness, memory and other cognitive

17  functions from eating the Product.   Stipulation, §IV.B.   The Settlement's injunctive relief

18  applies to all Product advertising, including the packaging of the Products and any type of

19  advertisement or promotion of any kind, including on radio, television, the Internet,

20  newspapers, periodicals, point of purchase displays, and all other media.   Stipulation, §IV.B.

21              **4.       Notice and Administration Costs, Attorneys' Fees and Expenses,
                            and Service Awards**

22

23        All notice and claim administration costs, including costs of providing notice to the

24  Class members and processing claims, will be paid by Kellogg, separate and apart from the

25  Settlement Fund and product donations.   Stipulation, §V.C.

26        In addition, attorneys' fees and expenses will be paid by Kellogg, separate and apart

27  from any consideration being paid directly to the Class.   Kellogg has agreed to pay Class

28  Counsels' fees and expenses up to $2 million.   Stipulation, §VIII.A.

BLOOD HURST & O'REARDON, LLP

00024775

1    Finally, the Stipulation provides for modest service awards to Plaintiffs Dennis and

2    Koz in the amount of $5,000 each.  Stipulation, §VIII.C.  In addition, Lani Felix-Lozano will

3    receive a $5,000 service award to be paid by her counsel out of that counsel's attorney fee

4    award thereby settling her claims.  *See* Sheehan Decl, ¶6.  Kellogg does not oppose payment of

5    the service awards.

6    **B.      The Notice Program**

7    The Court approved the Parties' proposed Notice Program as meeting the requirements

8    of Fed. R. Civ. P. 23 and due process and found it was the best notice practicable under the

9    circumstances.  *See* Preliminary Approval Order.  The Notice Program has now been fully

10   implemented in accordance with the Court's Order.  Blair Decl., ¶¶3-8.  Because Kellogg does

11   not sell Frosted Mini-Wheats directly to consumers, Kellogg did not have mailing addresses

12   for most Class members.  Therefore, the notice program focused primarily on publishing the

13   Publication Notice in targeted periodicals and internet sites.  Stipulation, §V.B.

14   The Publication Notice was designed to provide potential Class members with

15   information regarding the Settlement and to inform them about their rights.  The Publication

16   Notice contained a general description of the lawsuit, the Settlement relief, including how a

17   claim can be filed, and a general description of Class members' legal rights.  *See* Stipulation,

18   Ex. D (Publication Notice).  The Publication Notice also directed Class members to a website

19   dedicated to the Settlement and a toll free number the Class members may use to obtain a copy

20   of the detailed Class Notice, Claim Form and other information.  *See* Publication Notice.  The

21   Publication Notice appeared in numerous online and print sources chosen based on the

22   demographics of consumers who purchase Kellogg's Frosted Mini-Wheats.  The Publication

23   Notice included a Claim Form that could be cut out and directly mailed to the Claim

24   Administrator.  *See*  Publication Notice.

25   Complementing the Publication Notice was the Class Notice.  *See* Stipulation, Ex. C.

26   The Class Notice contains detailed information about the lawsuit, the Settlement benefits, the

27   release and how to opt-out, object and exercise other rights under the Settlement.  *Id.*  Also

28   provided with the Class Notice is the web address where the Claim Form can be found as well

BLOOD HURST & O'REARDON, LLP

1  as the phone number the Class member can call to obtain the Claim Form. *Id.* The Class

2  Notice is available through the Settlement Website established for this case and is sent by

3  regular or electronic mail to callers at their request. Stipulation, §V.A.

4  **IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL**

5        The Court may approve a settlement upon "finding that it is fair, reasonable, and

6  adequate." Fed. R. Civ. Pro. 23(e)(2); *see also Officers for Justice v. Civil Serv. Comm'n*, 688

7  F.2d 615, 625 (9th Cir. 1982). There is also a strong judicial policy in favor of pretrial

8  settlement of class actions. *See Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 576

9  (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney

10  v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ("[S]trong judicial policy []

11  favors settlements, particularly where complex class action litigation is concerned.") (quoting

12  *Officers for Justice*, 688 F.2d at 626)); *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

13  1995). Accordingly, while approval of the settlement is committed to the sound discretion of

14  the court, *Class Plaintiffs*, 955 F.2d at 1276, "the court must also be mindful of the Ninth

15  Circuit's policy favoring settlement, particularly in class action law suits." *Curtis-Bauer v.

16  Morgan Stanley & Co., Inc.*, Case No. C-06-3903-TEH, 2008 WL 4667090, at *4 (N.D. Cal.

17  Oct. 22, 2008).

18        The Court's review of the settlement is "limited to the extent necessary to reach a

19  reasoned judgment that the agreement is not the product of fraud or overreaching by, or

20  collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

21  reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *accord

22  Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of

23  compromise; the question we address is ... whether it is fair, adequate and free from

24  collusion.").

25             [I]f the proposed settlement appears to be the product of serious, informed, non-
           collusive negotiations, has no obvious deficiencies, does not improperly grant
26             preferential treatment to class representatives or segments of the class, and falls
           within the range of possible approval, then the court should direct that the
27             notice be given to the class members of a formal fairness hearing ....

28

BLOOD HURST & O'REARDON, LLP

00024775

8

No. 3:09-CV-01786-IEG(WMC)

1    *Young v. Polo Retail, LLC*, Case No. C-02-4546 (VRW), 2006 WL 3050861, at *5 (N.D. Cal.

2    Oct. 25, 2006) (internal citations omitted); *see also Ross v. U.S. Bank Nat. Ass'n*, Case No. C-

3    07-02951-SI, 2010 WL 3833922, at *1 (N.D. Cal. Sept. 29, 2010) (granting final approval of a

4    settlement class based on these factors); *Ozga v. U.S. Remodelers, Inc.*, Case No. C-09-05112-

5    JSW, 2010 WL 3186971, at *2 (N.D. Cal. Aug. 9, 2010) (granting final approval of a

6    settlement class as being "fair, adequate and reasonable").

7         Here, the Settlement is fair, reasonable and adequate.  Moreover, the Settlement was

8    the result of informed and adversarial negotiations, placing it squarely within the range of

9    permissible approval.

10   **A.    The Settlement Resulted from Serious, Informed and Non-Collusive**
          **Arm's-Length Negotiations**

11   

12        The requirement that a settlement be fair is designed to protect against collusion among

13   the parties.  Typically, there is a "presumption of fairness when a proposed class settlement,

     which was negotiated at arm's-length by counsel for the class, is presented for Court

14   approval." H. Newberg & A. Conte, *Newberg on Class Actions*, §11.41, at 90 (4th ed. 2002);

15   *see also In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The

16   recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *In*

17   *re Employee Benefit Plans Secs. Litig.*, Case No. 3-92-708, 1993 WL 330595, at *5 (D. Minn.

18   June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its

19   evaluation of the merits of a class action settlement").

20        After the Parties' informal attempts to settle the litigation were unsuccessful, in

21   January 2010, the Parties engaged the services of Martin Quinn of JAMS, an experienced and

22   skilled mediator, who assisted the Parties to the point of reaching an agreement in principle.

23   Blood Decl., ¶¶10-13.   Before the mediation, Class Counsel conducted an extensive

24   investigation into the facts of the case, obtained factual information from Kellogg and third

25   parties relating to both information necessary to evaluate damage and restitution amounts and

26   the substantive advertising claims that are the subject of this lawsuit.  Blood Decl., ¶¶3, 5, 7-

27   10.  Thus, by the time of the mediation, Plaintiffs' counsel, who are experienced in prosecuting

28   

BLOOD HURST & O'REARDON, LLP

1   complex class action claims, had "a clear view of the strengths and weaknesses of their case"

2   and were in a strong position to make an informed decision regarding the reasonableness of a

3   potential settlement. *In re Warner Commc'ns Secs. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y.

4   1985). The mediation was followed by months of contentious negotiations between the Parties

5   before agreement on the Settlement was reached. The fact that the Settlement was prompted

6   by an experienced mediator is one factor that demonstrates the Settlement was anything but

7   collusive. *See, e.g., Adams v. Inter-Con Security System, Inc.*, Case No. C-06-5428-MHP,

8   2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced

9   mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep.*

10  *Energy Holdings PLC*, Case No. 00-Civ-6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y.

11  Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's-length

12  negotiations, with the assistance of a private mediator experienced in complex litigation, is

13  further proof that it is fair and reasonable"). Further, the nature of the subsequent negotiations

14  between the Parties, the experience of counsel as longstanding class action attorneys, and the

15  fair result reached are illustrative of the arms-length negotiations that lead to the Settlement.

16      **B.    The Settlement Provides Substantial Value**

17      The Settlement specifically addresses the alleged deceptive practices by Kellogg and

18  provides refunds to all Class members who submit eligible claims. *See* Stipulation, §IV. Any

19  remaining funds in the Settlement Fund established by Kellogg will not revert to Kellogg but

20  will be paid out through *cy pres* distributions agreed to by the Parties and approved by the

21  Court. *See* Stipulation, §IV.A.3. *See also Ozga*, 2010 WL 3186971, at *2 (finding the fact

22  that none of the settlement fund would revert to defendant supported final approval of the

23  settlement as reasonable); *see also Stuart v. Radioshack Corp.*, Case No. C-07-4499-EMC,

24  2010 WL 3155645, at *4 (N.D. Cal. Aug. 9, 2010) (that there is "no reversion" of settlement

25  monies to defendant "provides substantial assurance that the settlement reflect[s] good faith on

26  the part of the negotiating parties"). Further, the Settlement requires significant business

27  practice reform in the form of ceasing to use the complained of representations on labels

28  and/or advertising. *See* Stipulation, §IV.B.

BLOOD HURST & O'REARDON, LLP

Most significantly of all, a very substantial donation of food aid to charities (with a total value of $5.5 million) addresses the harm caused to consumers who might not otherwise be reached by the settlement.  Stipulation, §IV.B.  *See, e.g.*, *Vista HealthPlan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349 (D.C. 2007) (approving settlement involving $3 million in hormonal contraceptive products).  In *In re Toys "R" Us Antitrust Litig.* the court explained:

> The Settlements, with their distributions of toys and educational programs, will benefit children nationwide.  In addition, the toy consuming public will benefit from the injunctive relief and from the antitrust deterrent inherent in the successful and expeditious conclusion of this litigation.  The decision to forego individual recoveries was sensible, given the difficulty of identifying proper claimants and the difficulty, and especially the costs, that such recoveries and their administration would have entailed.  The net monetary relief for any individual claimant would have been limited.  Under these circumstances, as the court stated in approving a similar settlement in *Reebok*, [*State of N.Y. v. Reebok Int'l Ltd.*, 903 F. Supp. 532, 537 (S.D.N.Y. 1995)]: "'The distribution method here serves the general public interest, the interests of the plaintiffs and the consumers, and the public interests of disgorgement and deterrence.  The distribution procedure included in the Settlement Agreement is thus fair, reasonable, and adequate.'"

191 F.R.D. 347, 353-54 (E.D.N.Y. 2000); *see also Vista HealthPlan, Inc.*, 246 F.R.D. at 363-64.  The same interests that were served by the charitable product donation in *Toys "R" Us* are similarly served here given that: (1) Kellogg does not sell directly to consumers but through retailers, so it has no way of identifying Class members directly; (2) Frosted Mini-Wheats is an established cereal product that many consumers routinely purchase regardless of the subject advertising campaign, making it difficult to identify those consumers who purchased the Product based on Kellogg's misleading "attentiveness claims"; and (3) the misleading "attentiveness claims" were only made for a limited time period – from January 28, 2008 through October 1, 2009.  For all of these reasons, the Settlement requires that Kellogg make a charitable product distribution of $5.5 million worth of Kellogg branded food items to charities that provide food to the indigent.  *See* Stipulation, §IV.B.  This distribution serves the general public interest, the interests of Plaintiffs and consumers, and the public interest of disgorgement and deterrence.

In addition, the Settlement provides these benefits without the risk and delays of continued litigation, trial and appeal.  The expense, complexity, and duration of litigation are

BLOOD HURST & O'REARDON, LLP

00024775

11

No. 3:09-CV-01786-IEG(WMC)

1   significant factors considered in evaluating the reasonableness of a settlement. Litigating this

2   class action through trial would undoubtedly be time-consuming and expensive. As with most

3   class actions, this action is complex.   The question of whether Kellogg's claims were

4   deceptive is disputed by the Parties and would require analysis by experts for both Parties. At

5   a minimum, absent settlement, litigation would likely continue for years before Plaintiffs or

6   the Class would see any recovery. That a settlement would eliminate the delay and expenses

7   strongly weighs in favor of approval. *See Cicero v. DirecTV, Inc.*, Case No. EDCV-07-1182,

8   2010 WL 2991486, at *3 (C.D. Cal. July 27, 2010) ("Judicial policy favors settlement in class

9   actions ... where substantial resources can be conserved by avoiding the time, cost, and rigors

10  of formal litigation.").

11          By reaching this Settlement, the Parties avoided protracted litigation and will establish

12  a means for prompt resolution of Class members' claims against Kellogg.   Given the

13  alternative of long and complex litigation before this Court, the risks involved in such

14  litigation, and the possibility of further appellate litigation, the availability of prompt relief

15  under the Settlement is highly beneficial to the Class.

16          **C.     The Settlement Is Fair to Plaintiffs and Class Members**

17          The Settlement is fair as to all Class members in that it allows for cash recovery of up

18  to $15 per consumer. In addition, Plaintiffs do not receive any unduly preferential treatment

19  under the Settlement. With the exception of modest service awards of $5,000 to account for

20  their willingness to step forward and represent other consumers, and to compensate them for

21  their time and effort devoted to prosecuting the common claims, Plaintiffs are treated the same

22  as every other Class member and must submit a Claim Form to receive settlement benefits.

23  Such service awards are "fairly typical in class actions." *Rodriguez v. W. Publishing,* 563 F.3d

24  948, 958 (9th Cir. 2009); *see also In re Simon v. Toshiba Am.*, Case No. C-07-06202-MHP,

25  2010 WL 1757956, at *5 (N.D. Cal. Apr. 30, 2010) ($5,000 award was presumptively

26  reasonable); *Williams v. Costco Wholesale Corp.*, Case No. 02cv2003-IEG(AJB), 2010 WL

27  761122, at *3 (S.D. Cal. Mar. 4, 2010) ("Although [plaintiff] seeks a $5,000 service fee for

28

1    himself which is not available to other class members, the fee appears to be reasonable in light

2    of [plaintiff's] efforts on behalf of the class members.").

3                  **D.    The Reaction of the Class Supports Approval of the Settlement**

4            Class members must be allowed the opportunity to review and object to both the

5    preliminary notice of settlement and Plaintiffs' application for attorneys' fees prior to final

6    approval. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

7    If, after having a full opportunity to object to the settlement, there is an absence of objections

8    by class members, that is an important factor in evaluating the fairness of the settlement. *See*,

9    *e.g.*, *Ozga*, 2010 WL 3186971, at *2 (in granting final approval of a settlement class, court

10   considered that the "overall reaction to the settlement has been positive," there were "no

11   objections to the Settlement" and "[n]o Class Member appeared at the final approval hearing to

12   object"); *Williams*, 2010 WL 2721452, at *5 ("the reaction of the class members weighs in

13   favor of granting final approval" where "not one class member has filed an objection or a

14   request for exclusion" (citing *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d

15   164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be

16   viewed as indicative of the adequacy of the settlement." (internal citations omitted))); *Boyd v.*

17   *Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84%

18   of the class has filed no opposition); *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-

19   19 (3d Cir. 1990) (concluding that when "only" 29 members of 281 class members objected,

20   the response of the class as a whole "strongly favors [the] settlement").

21          Here, the deadline for Class members to file objections or submit requests for

22   exclusion is January 15, 2011. Blair Decl., ¶7. As of December 27, 2010, no Class members

23   have objected to the Settlement or sought exclusion from the Class. Blair Decl., ¶6.

24   **V.    THE COURT SHOULD CONFIRM CERTIFICATION OF THE CLASS**

25          The Court should confirm the preliminary approval order certifying a Class defined as:

26          All persons or entities in the United States who purchased the Product from
             January 28, 2008 up to and including October 1, 2009. Excluded from the
27          Class are Kellogg's employees, officers, directors, agents, and representatives
             and those who purchased the Product for the purpose of re-sale.

28

BLOOD HURST & O'REARDON, LLP

00024775                                          13                No. 3:09-CV-01786-IEG(WMC)

1  Preliminary Approval Order at 9.

2      The Ninth Circuit recognizes the propriety of certifying a settlement class to resolve

3  consumer lawsuits. *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a

4  court must first determine whether the proposed settlement class satisfies the requirements for

5  class certification under Federal Rule of Civil Procedure 23.  *Id.*  But in assessing those

6  certification requirements, a court may properly consider that there will be no trial.  *Amchem*

7  *Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-

8  only class certification, a district court need not inquire whether the case, if tried, would

9  present intractable management problems ... for the proposal is that there be no trial.").

10     **A.     The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)**

11     Rule 23(a) enumerates four prerequisites for class certification, referred to as:

12  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  In light of the Settlement,

13  the Parties agree that each of these requirements are met.

14         **1.     Numerosity**

15     Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

16  impracticable."  Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D.

17  Cal. 2009).  Here, the numerosity requirement is readily met because it is difficult or

18  inconvenient to join all members of the proposed Class.  Amended Complaint, ¶25; *Tchoboian*

19  *v. Parking Concepts, Inc.*, Case No. SACV-09-422-JVS(ANx), 2009 WL 2169883, at *4 (C.D.

20  Cal. July 16, 2009) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982),

21  *vacated on other grounds*, 459 U.S. 810 (1982)).  Kellogg is a nationwide manufacturer of

22  foodstuffs (Amended Complaint, ¶25), and Mini-Wheats is among its most popular brands.

23  Hundreds of thousands of purchases were made between January 28, 2008 and October 1,

24  2009.  *Newberg*, §3.3 (where "the exact size of the class is unknown, but general knowledge

25  and common sense indicates that it is large, the numerosity requirement is satisfied.").

26  Accordingly, the numerosity requirement is met.

27

28

00024775                                      14                    No. 3:09-CV-01786-IEG(WMC)

BLOOD HURST & O'REARDON, LLP

### 2.   Commonality

"The existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006).  The commonality requirement is construed "permissively." *Hanlon*, 150 F.3d at 1019; *Wiener*, 255 F.R.D. at 664.

Plaintiffs' complaint alleges common issues that will be addressed by this Settlement. *See* Amended Complaint, ¶26.  For example, Plaintiffs allege that the wrongdoing here involves standardized product advertisements containing common misrepresentations that Kellogg's Frosted Mini-Wheats "improve attentiveness by nearly 20%." Amended Complaint, ¶¶1, 8-14; *see Wiener*, 255 F.R.D. at 664-65 ("The proposed class members clearly share common legal issues regarding Dannon's alleged deception and misrepresentations in its advertising and promotion of the Products.").

### 3.   Typicality

Rule 23(a)(3) typicality is satisfied where the Plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665.  The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citations omitted).  Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.* For example, in *Keilholtz v. Lennox Health Prods., Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010), in certifying UCL and CLRA claims, the court found that the typicality requirement was satisfied because: "Plaintiffs' claims are all based on defendants' sale of allegedly dangerous fireplaces without adequate warnings." *Id.* at 338.

Plaintiffs and Class members all purchased the same product and were all exposed to the same alleged misrepresentations on the labeling and in the advertisements.  Amended

Complaint, ¶¶1, 7-14, 27.  Under the claims alleged, Plaintiffs and Class members also seek relief for the same alleged wrongful conduct, *i.e.*, misrepresenting the characteristics of Kellogg's Frosted Mini-Wheats.  *Id.*  Therefore, the typicality requirement is met.

### 4.    Adequacy of Representation

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In the Ninth Circuit, adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the Class.  *See, e.g., Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Wiener*, 255 F.R.D. at 667.  *See also Emulex Corp. Secs. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (court evaluating adequacy of counsel's representation may examine "the attorneys' professional qualifications, skill, experience, and resources ... [and] the attorneys' demonstrated performance in the suit itself.").

The adequacy requirement has been met in this case.  The Court found that Blood Hurst & O'Reardon, LLP; Piscitelli Law Firm; Bonnett, Fairbourn, Friedman & Balint, P.C.; Whatley, Drake & Kallas, LLC; and Climaco, Wilcox, Peca, Tarantino & Garofoli Co., L.P.A. are qualified and experienced in class action litigation such that appointment of these firms as Class Counsel was appropriate.  *See* Preliminary Approval Order at 7-8.  Class Counsel performed extensive work in identifying and investigating the claims in this action, in developing a detailed understanding of the scientific testing of Kellogg's claims and the scientific basis of the "improves attentiveness" representation and in successfully mediating and negotiating the proposed Settlement.  Blood Decl., ¶¶2, 5, 7, 10, 12-13.  Additionally, there is no conflict between Plaintiffs' interests and the interests of the Class members.  Amended Complaint, ¶28.

### B.    The Court Should Confirm Certification of the Class Under Federal Rule of Civil Procedure 23(b)(3)

Plaintiffs seek certification of a Class under Rule 23(b)(3).  Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1  settling their difference in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A C.A.

2  Wright, A.R. Miller, & M. K. Kane, *Federal Practice & Procedure*, §1777 (2d ed. 1986)).

3  There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law

4  or fact common to the members of the class predominate over any questions affecting only

5  individual members; and (2) a class action is superior to other available methods for the fair

6  and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd.*

7  *of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir.

8  2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668.   As such, Rule 23(b)(3)

9  encompasses those cases "in which a class action would achieve economies of time, effort, and

10  expense, and promote ... uniformity of decision as to persons similarly situated, without

11  sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S.

12  at 615 (internal citations omitted and alterations in original); *Wiener*, 255 F.R.D. at 668.

13           **1.     Common Questions Predominate Over Individual Issues**

14           "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

15  sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

16  "Predominance is a test readily met in certain cases alleging consumer ... fraud ...." *Id.* at 625.

17  "When common questions present a significant aspect of the case and they can be resolved for

18  all members of the class in a single adjudication, there is clear justification for handling the

19  dispute on a representative rather than on an individual basis." Wright & Miller, *Federal*

20  *Practice & Procedure*, §1778, p. 121 (quoted in *Hanlon*, 150 F.3d at 1022).

21           The Class satisfies the predominance requirement.  As discussed above, the Class

22  members are entitled to the same legal remedies premised on the same alleged wrongdoing.

23  Amended Complaint, ¶¶1, 7-14, 27.  The central issue for every claimant is whether Kellogg

24  misrepresented that Kellogg's Frosted Mini-Wheats "improve attentiveness" and whether that

25  misrepresentation was likely to deceive a reasonable consumer. *Id.*  Accordingly, there is

26  sufficient basis to find that the requirements of Rule 23(b)(3) are present. *See Wiener*, 255

27  F.R.D. at 669 (predominance satisfied when alleged misrepresentation of product's health

28  benefits were displayed on every package).

BLOOD HURST & O'REARDON, LLP

### 2.    A Class Action Is The Superior Method to Settle This Controversy

Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These factors include: (i) the Class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against Class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (internal citations omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the superiority requirement satisfied where granting class certification "will reduce litigation costs and promote greater efficiency").

An assessment of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure for this Settlement. The damages at issue for each Class member are not large. Amended Complaint, ¶¶21, 22; *Zinser*, 253 F.3d at 1191; *Wiener* 255 F.R.D. at 671. It is neither economically feasible, nor judicially efficient, for the tens of thousands of Class members to pursue their claims against Kellogg on an individual basis. *Hanlon*, 150 F.3d at 1023; *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971). Additionally, the difficulties of managing a class action are vitiated by the fact of this Settlement. When "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

VI.    **PLAINTIFFS' FEE AND EXPENSE APPLICATION SHOULD BE APPROVED**

    A.    **Fees and Expenses Totaling 19% of the Settlement Value Are Reasonable**

The Ninth Circuit approves "two separate methods for determining attorneys' fees," *i.e.*, the percentage and lodestar/multiplier methods. *Hanlon*, 150 F.3d at 1029. However, federal courts, including the Ninth Circuit, have developed a strong preference for using a percentage of the recovery method. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Likewise, California "[c]ourts recognize two methods for calculating attorney fees in civil class actions: the lodestar/multiplier and the percentage of recovery method." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001). *See also, Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000) ("Percentage fees have traditionally been allowed in such common fund cases."); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1809 (1996) (recognizing that the percentage method is appropriate where "the amount was a 'certain or easily calculable sum of money.'") (citing *Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25, 35 (1977)); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 65-66 (2008). The key advantage of the percentage method is that it focuses on the benefit conferred on the class resulting from the efforts of counsel. *Lealao*, 82 Cal. App. 4th at 48 (percentage of benefit method is result-oriented rather than process oriented).

In California state court cases percentages in the range of 25% of the value of the recovery are typical. *Glendale City Employees' Ass'n*, 15 Cal. 3d 328, 341 n.19 (1975) (approving award of 25% of the recovery); *Sanders v. City of L.A.*, 3 Cal. 3d 252, 261 (1971) (approving award of 25%); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (noting fee award of 25%); *Steinberg v. Allstate Ins. Co.*, 226 Cal. App. 3d 216, 220 n. 1 (1990) (affirming award of 20% of the common fund); *Parker v. Los Angeles*, 44 Cal. App. 3d 556, 567-68 (1974) (affirming award of 33%); *Chavez*, 162 Cal. App. 4th at 50 (affirming award of 21.8 %).[4]  Likewise, the Ninth Circuit uses a benchmark of 25% of the value of the

[4]    *See also In re Cal. Indirect Purchases*, Case No. 960886, 1998 WL 1031494, at *9 Alameda Super. Ct. Oct. 22, 1998) (recognizing that numerous California trial courts have

BLOOD HURST & O'REARDON, LLP

00024775

BLOOD HURST & O'REARDON, LLP

1    settlement. *Six Mex. Workers*, 904 F.2d at 1311.  While 25% is the benchmark, district courts

2    have granted and the Ninth Circuit has affirmed awards of attorneys' fees at or above a 30%

3    fee.  *See e.g., In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454,457, 463 (9th Cir. 2000)

4    (affirming fee award of 33 1/3% of fund); *In re Pac. Enter.*, 47 F.3d at 379 (award of 33% of

5    settlement fund as fees affirmed); *In re Applied Signal Tech., Inc. Secs. Litig.*, Case No. C-05-

6    1027(SBA), 2006 WL 1050174, at * 22 (N.D. Cal. Feb. 8, 2006), *reversed on other grounds* in

7    *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008) (awarding attorneys' fees of

8    33% of the settlement fund); *McPhail v. First Command Fin. Planning, Inc.*, Case No.

9    05cv179-IEG-JMA, 2009 WL 839841, at *7 (S.D. Cal. Mar. 30, 2009) (30% for first $10

10   million and 25% for additional $2 million settlement).  Importantly, in determining the amount

11   of the benefit conferred, the appropriate measure is the total recovery available for the class,

12   not the amount actually claimed by class members.  *Boeing Co. v. Van Gemert*, 444 U.S. 472,

13   480-81 (1980); *see also Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th

14   Cir. 1997).  This method recognizes that the efforts of class counsel established the entire

15   settlement, including non-monetary benefits, for the benefit of the entire class.  *Masters v.*

16   *Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (citing *Williams*, 129 F.3d at

17   1027); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (2002) ("Incidental or non-monetary

18   benefits conferred by the litigation are a relevant circumstance.").

19          Class Counsel request a combined fee and expense award of 19% of the settlement

20   value created by counsels' efforts.  Without taking into account the value of injunctive relief,

21

22   awarded fees in excess of 30% (citing *In re Milk Antitrust Litig.*, Case No. BC070061 (L.A.
     Super. Ct. 1998) (33 1/3% fee award); *In re Facsimile Paper Antitrust Litig.*, Case Nos.
23   963598, 964899 and 967137 (S.F. Super. Ct. 1997) (33 1/3% fee award); *In re Liquid Carbon
     Dioxide Cases*, J.C.C.P. 3012 (S.D. Super. Ct. 1996) (33 1/3% fee award); *In re Cal. Indirect-
24   Purchaser Plasticware Antitrust Litig.*, Case. Nos. 961814, 963201 and 963590 (S.F. Super.
     Ct. 1995) (33 1/3% fee award); *Abzug v. Kerkorian*, Case No. CA-000981 (L.A. Super. Ct.
25   1990) (45% fee award); *Haitz v. Meyer, et al.*, Case No. 572968-3 (Alameda Sup. Ct. 1990)
     (45% fee award); *Steiner v. Whittacker Corp.*, Case No. CA 000817 (L.A. Super. Ct. 1989)
26   (35% fee award fee); *Andrews v First Interstate Bank of California*, Case No. 953575 (S.F.
     Super. Ct. 1997) (30% fee award); *In re Cal. Indirect-Purchaser Infant Formula Antitrust
27   Class Action Litig.*, J.C.C.P. No. 2557 (L.A. Super. Ct. 1993) (30% fee award); *Fang, et al. v.
     United Bank, et al.*, Case No. 873365 (S.F. Super. Ct. 1992) (30% fee award); *Sconce/Lamb
28   Cremation Cases*, J.C.C.P. No.2085 (L.A. Super. Ct. 1989) (30% fee award)).

1  the value of the Settlement is a minimum of $10,641,500 measured by value of the claim fund

2  and food donation fund ($8.25 million), claims administration and notice costs (estimated to be

3  at least $391,500 (Blair Decl., ¶8)), and attorneys' fees and expenses ($2 million) (Stipulation,

4  §VII.A).[5]  The requested fees and expenses of just 19% of the Settlement value falls below the

5  percentages historically awarded in class action cases.   Further, counsel achieved this

6  settlement without trial and extended litigation, which would only have increased the costs

7  ultimately borne by the Class.  Counsel should be justly rewarded for obtaining relief in a

8  timely and efficient manner.

9  **B.    The Lodestar/Multiplier Crosscheck**

10  Under the two-step lodestar/multiplier crosscheck, trial courts first calculate the

11  lodestar, consisting of "*all* the hours *reasonably spent*, including those relating solely to the

12  fee," times reasonable hourly rates.  *Ketchum v. Moses,* 24 Cal. 4th 1122, 1133 (2001)

13  (emphasis in original).  *See also Hensley v. Eckhart,* 461 U.S. 424, 433 (1983).  That figure is

14  then augmented or multiplied to reflect additional factors that must be considered in

15  determining a reasonable attorney fee award.  *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67

16  (9th Cir. 1975); *Ketchum,* 24 Cal. 4th at 1138 ("the unadorned lodestar reflects the general

17  local hourly rate for a *fee-bearing* case; it does *not* include any compensation for contingent

18  risk, extraordinary skill, or any other factors a trial court may consider") (emphasis in

19  original).  When determining the multiplier, trial courts should consider all factors relevant to a

20  given case.  *Lealao,* 82 Cal. App. 4th at 40.  The purpose of using the lodestar/multiplier

21

---

22  [5]   When attorneys' fees and notice costs are paid separate and apart from the common
fund, the total settlement benefit to the class (including attorneys' fees and
23  notice/administrative costs) are used to measure the reasonableness of the fees.  *See In re
Consumer Privacy Cases,* 175 Cal. App. 4th 545, 554 (2009) ("the sum of the two amounts
24  [settlement fund and attorneys' fees] ordinarily should be treated as a settlement fund for the
benefit of the class ...." (citing *Manual for Complex Litigation* (4th ed. 2008) §21.71, p. 525)
25  (*see* additional authorities cited therein); *Apple Computer, Inc. v. Super. Ct.,* 126 Cal. App. 4th
1253, 1269 (2005).  *See also In re Cellphone Fee Termination Cases,* 186 Cal. App. 4th 1380,
26  1383 (2010) (settlement provided that all fees and costs, including cost of notice and other
administrative tasks, would be paid from common fund); *In re Cylink Secs. Litig.,* 274 F. Supp.
27  2d. 1109, 1115 (N.D. Cal. 2003) (approving settlement and ordering payment from common
fund to claims administrator for cost of notifying class and administering settlement); *Johnston
28  v. Comerica Mortg. Corp.,* 83 F.3d 241, 246 (8th Cir. 1996) (citing *In re Gen. Motors Corp.
Pick-Up Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 821 (3d Cir. 1995)).

BLOOD HURST & O'REARDON, LLP

00024775

21                                            No. 3:09-CV-01786-IEG(WMC)

1   method is to mirror the legal marketplace: counsel will not handle cases on straight hourly fees

2   that are payable only if they win, so an enhancement helps determine a fee that is

3   commensurate with what attorneys could expect to be compensated for similar service in these

4   circumstances. *San Bernardino Valley Audubon Soc'y v. San Bernardino*, 155 4 Cal. App. 3d

5   738, 755 (1984) (award must be large enough "to entice competent counsel to undertake

6   difficult public interest cases"); *Lealao,* 82 Cal. App. 4th at 50 (adjusted lodestar should not be

7   significantly different from the percentage fee freely negotiated in comparable litigation). In

8   determining the multiplier, courts have considered a range of relevant factors. *Lealao*, 82 Cal.

9   App. 4th at 40. The factors California courts have looked to include:

10  •   the benefits obtained or the results achieved (*City of Oakland v. Oakland
        Raiders*, 203 Cal. App. 3d 78, 80 (1988); *Lealao,* 82 Cal. App. 4th at 41;
11      *Thayer v. Wells Fargo Bank*, 2 Cal. App. 4th 819,838 (2001));

12  •   the novelty and difficulty of the questions involved and the skill displayed in
        presenting the issues (*Serrano III,* 20 Cal. 3d at 49);
13
    •   the contingencies involved in prosecuting the action and obtaining fees (*id.;
14      Graham v. Daimler Chrysler Corp.,* 34 Cal. 4th 553,583 (2004));

15  •   the delay in receiving fees (*Graham,* 34 Cal. 4th at 583; *City of Oakland*, 203
        Cal. App. at 85);
16
    •   the promptness of resolution (*Lealao,* 82 Cal. App. 4th at 52; *In re Vitamin
17      Cases*, 110 Cal. App. 4th 1041, 1058-59 (2003));

18  •   the multiplier that will result in a reasonable percentage of the value of the
        settlement (*Chavez*, 162 Cal. App. 4th at 63); and
19
    •   the "public service element ... and motivation to represent consumers and
20      enforce laws." *State v. Meyer*, 174 Cal. App. 3d 1061, 1073 (1985); *Thayer*, 92
        Cal. App. 4th at 839 (meager fee awards will discourage able counsel from
21      engaging in public interest litigation, which should be encouraged).

22      "Multipliers can range from 2 to 4, or even higher." *Wershba v. Apple Computer, Inc.,*

23  91 Cal. App. 4th 224, 255 (2001). The court in *Glendora Cmty. Redev. Agency v. Demeter*,

24  155 Cal. App. 3d 465, 479 (1984), approved a multiplier of 12.  *See also Natural Gas Anti-*

25  *Trust Cases, I, II, III & IV*, Case Nos. 4221, 4224, 4226, 4228, 2006 WL 5377849, at *4 (Cal.

26  Super. Ct. Dec. 11, 2006) ("This Court and numerous cases have applied multipliers of

27  between 4 and 12 to counsel's lodestar in awarding fees."); *SternwestCorp. v. Ash*, 183 Cal.

28  App. 3d 74, 76 (1986) (case remanded with directions "to enhance the lodestar award by such

BLOOD HURST & O'REARDON, LLP

1    factor (two, three, four or otherwise) that the court, in its discretion shall deem proper"). *See*

2    *also Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Steiner v. Am. Broad. Co., Inc.*, Case No.

3    05-55773, 2007 WL 2460326, at *2 (9th Cir. Aug. 29, 2007) (multiplier of 6.85); *Keith v.*

4    *Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5).

5         In cases where, as here, "a large common fund has been recovered and the hours are

6    relatively small, some courts reach a reasonable fee determination based on large multiples of

7    5 or 10 times the lodestar." Alba Conte, *Attorney Fee Awards* (2d ed. 1993), §2.06 at 39.

8         In this case, the lodestar is $459,203 based on over 944 hours of work as of mid-

9    December, 2010.  Plaintiffs' counsel request a multiplier of approximately 4.3 for a total fee

10   and expense award of $2 million.  In light of the exceptional results obtained, the efficiency

11   with which the case was litigated, the risk, difficulty and the public service rendered by this

12   action and the work on the final approval reply papers and hearing, settlement and *cy pres*

13   administration, and potential appeals still to be performed, the requested fee is fair and

14   reasonable.

15              **1.    The Hourly Rates are Reasonable**

16        Class Counsel are entitled to the hourly rates charged by attorneys of comparable

17   experience, reputation and ability for similar litigation.   *Ketchum*, 24 Cal. 4th at 1133.

18   Typically, the court looks to prevailing market rates in the community in which the court sits.

19   *Schwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  Payment at

20   full market rates is essential to fulfill the goal of enticing well-qualified counsel to undertake

21   difficult consumer interest litigation, such as this. *San Bernardino*, 155 Cal. App. 3d at 755.

22   The background and experience of Class Counsel are set forth in their attached declarations

23   and firm resumes.  Class Counsel have excellent reputations as class action litigators, with

24   specialized experience in false advertising and consumer class action law.  Their hourly rates

25   are well within the range of rates billed by comparable attorneys in this market and are the

26   standard rates they charge to all of their clients.[6]

27

28   [6]    An attorney's actual billing rate for similar work is presumptively appropriate.  *See*
     *Wershba*, 91 Cal. App. 4th at 254-55; *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    Moreover, Class Counsel's lodestar is calculated using rates that have been accepted in

2    numerous other class action cases. *See, e.g., Negrete v. Fid. and Guar. Life Ins. Co.*, Case No

3    CV-05-6837-CAS-MANx (C.D. Cal. April 19, 2010) (final order and judgment).   Class

4    Counsel's rates also compare very favorably with rates approved by other trial courts in class

5    action litigation.[7]  Finally, Class Counsel have submitted sworn declarations attesting to their

6    hourly rates and total hours devoted to the case, their experience, and describing their efforts to

7    prosecute this case. *See* Declarations of Counsel, concurrently filed.

8                    **2.    The Hours Expended Are Reasonable**

9          The number of hours spent by Class Counsel is reasonable.  The 944 hours expended

10   by Class Counsel represent efforts incurred in the litigation of what started as two separate

11   actions – the *Dennis* federal court action and the *Koz* Ohio action.  In addition, on behalf of

12   Ms. Felix-Lozano, the Whatley Drake law firm had been separately investigating the claims

13   and had gone so far as to present a demand letter to Kellogg before the various plaintiffs'

14   counsel all joined forces.  The resulting combined action in this court has lasted well over a

15   year and involved substantial investigation prior to and continuing throughout the litigation.

16   *See* Declarations of Counsel, concurrently filed.  Further, Class Counsel spent a significant

17   amount of time negotiating the Settlement in principle and then finalizing the actual terms of

18

19   1307, 1310 (7th Cir. 1996).  "Affidavits of the plaintiffs' attorney and other attorneys

20   regarding prevailing fees in the community, and rate determinations in other cases, particularly
     those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing

21   market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.
     1990).

22   [7]   *See, e.g., Create-A-Card, Inc. v. Inuit, Inc.*, Case No. C-07-06452-WHA, 2009 WL

23   3073920, at *2 (N.D. Cal. Sep. 22, 2009) (approving hourly rates for attorneys ranging from
     $700-$315 for attorneys and $235-$150 for paralegals); *Lingenfelter v. Astrue*, Case No.

24   SACV-03-00264-VBK, 2009 WL 2900286, at *4 (C.D. Cal. Sep. 3, 2009) ($600 is
     "reasonable"); *POM Wonderful, LLC v. Purely Juice, Inc.*, Case No. CV-07-2633-CAS, 2008

25   WL 4351842, at *4 (C.D. Cal. Sept. 22, 2008) (approving partner rates of $750-$475 and
     associate rates of $425-$275); *Love v. Mail on Sunday*, Case No. CV-05-7798-ABC(PJWX),

26   2007 WL 2709975, at *8 (C.D. Cal. Sept. 7, 2007) (approving partner rates of $540-$690 and

27   associate rates of $305-$485); *Housing Rights Ctr. v. Sterling*, Case No. C-V03-859-DSF,
     2005 WL 3320738, at *2 (C.D. Cal. Nov. 1, 2005) (J. Fischer) (noting hourly rates may run up

28   to $1,000 per hour in Los Angeles, with $125 to $650 routine in California).

1  the Settlement with a Defendant that scrutinized and bargained virtually every provision of the

2  Stipulation.[8]  Blood Decl., ¶¶12-13.

3              **3.       An Enhancement of 4.3 Is Reasonable**

4                   **a.       The Exceptional Results Obtained**

5        In determining the reasonableness of attorney fees, "the most critical factor is the

6  degree of success obtained." *Hensley*, 461 U.S. at 436; *Glendora*, 155 Cal. App. 3d at 475;

7  *Lealao*, 82 Cal. App. 4th at 40.  In the legal marketplace, law firms that obtain exceptional

8  results for their clients can and do expect that those exceptional results will be reflected in their

9  fees.  Here, Class Counsel were able to efficiently settle the litigation and obtain a benefit of

10  over $10.6 million.  The results achieved strongly support the multiplier of 4.3.

11                   **b.       Contingent Nature of the Fee and Ongoing Work**

12        When attorneys undertake litigation on a contingent basis, a fee that is limited to the

13  hourly fee that would have been paid by the fee-paying client, win or lose, is not a reasonable

14  fee by market standards. *Greene v. Dillingham Constr. NA., Inc.*, 101 Cal. App. 4th 418, 428-

15  29 (2002).   As *Ketchum* recognizes, without the incentives of a premium for risk, most

16  attorneys will not accept cases on a contingency basis.  "A contingent fee must be higher than

17  a fee for the same legal services paid as they are performed.  The contingent fee compensates

18  the lawyer not only for the legal services he renders but for the loan of those services.  The

19  implicit interest rate on such a loan is higher because the risk of default (the loss of the case,

20  which cancels the debt of the client to the lawyer) is much higher than that of conventional

21  loans." *Ketchum*, 24 Cal. 4th at 1132 (quoting Posner, *Economic Analysis of Law* at 534,567

22  (4th ed. 1992)).  *See also Rader v. Thrasher*, 57 Cal. 2d 244, 253 (1962).  Risk multipliers,

23

24  [8]      Counsel need only submit summaries of their hours incurred; submission of billing
   records are not required.  *Wershba*, 91 Cal. App. 4th at 254-55; *Chavez*, 162 Cal. App. 4th at
25  64 ("time sheets are not required of class counsel to support fee awards in class action cases.");
   *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148-49 (9th Cir. 2000) (the court may
26  rely on summaries of the total number of hours spent by counsel); *POM Wonderful, LLC v.
   Purely Juice, Inc.*, Case No. CV-07-2633-CAS(JWJX), 2008 WL 4351842, at *4 (C.D. Cal.
27  Sept. 22, 2008); *Hemphill v. S.D. Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 623-24 (S.D. Cal.
   2005) (declining review of detailed time records where no evidence of collusion); *see also In
28  re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) (finding district court's
   reliance on time summaries of counsel proper).

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    therefore, are "intended to approximate market-level compensation for ... services, which

2    typically includes a premium for risk of nonpayment or delay in payment." *Ketchum*, 24 Cal.

3    4th at 1138. Likewise, in *Lealao*, the court held that the trial court has the discretion to use a

4    multiplier as "necessary to ensure that the fee awarded is within the range of fees freely

5    negotiated in the legal marketplace in comparable litigation." 82 Cal. App. 4th at 50. In short

6    the multiplier used should generally result in a fee comparable to that appropriate under the

7    percentage method. *Id.* at 47 ("Given the unique reliance of our legal system on private

8    litigants to enforce substantive provisions of the law through class ... actions, attorneys

9    providing the essential enforcement services must be provided incentives roughly comparable

10   to those negotiated ... in the legal marketplace ...."). *See also Chavez*, 162 Cal. App. 4th at 64-

11   65 (to establish a benchmark for the enhanced lodestar, courts look to the percentage of the

12   settlement value that the enhanced fee would represent). Under this standard and the facts of

13   this case, a multiplier of approximately 4.3 is very reasonable since it results in just 19% of the

14   settlement value.

15        From the outset of this litigation to the present, Class Counsel litigated this matter on a

16   contingent basis and placed at risk their own resources to do so. Because the fee in this matter

17   was entirely contingent, the only certainty was that Class Counsel would not get paid unless

18   they obtained a successful result. Absent this Settlement, there was a sizeable risk that

19   Plaintiffs, the Settlement Class, and their counsel would obtain no recovery at all. Indeed,

20   there was no guarantee that Plaintiffs would succeed on class certification, summary judgment,

21   trial or appeal. At no time has Kellogg conceded liability, the appropriateness of class

22   certification, or the availability of relief. *See* Stipulation, §I.G. Despite this uncertainty, Class

23   Counsel obtained an excellent result on behalf of the Class.

24        Moreover, Class Counsel's work is not yet done. Class Counsel still need to: (1)

25   prepare for and attend the final approval hearing, including the research and drafting of the

26   reply papers and response to objectors, if any; (2) oversee the claims administration process,

27   including addressing any claim review issues and monitoring payments to the Settlement

28   Class; (3) select the *cy pres* recipients for both the cash and food distributions and obtain Court

1    approval of the selections; (4) monitor the *cy pres* distributions of cash and product donations;

2    (5) handle any appeals; and (6) disburse incentive awards and Class Counsel's fees and

3    expenses. Accordingly, a modest multiplier of 4.3 is justified in light of the contingent nature

4    of this action and the significant amount of additional work Class Counsel will have to

5    undertake in the future. Indeed, once the remaining work is performed, based on Class

6    Counsel's experience in past settlements, Counsel anticipate the multiplier will fall well below

7    4. Blood Decl., ¶33.[9]

8                    **c.   Skill Displayed and the Prompt Resolution**

9            The difficulty and complexity of the action and the quality of counsel's skill in meeting

10   the difficulties are additional factors that support a lodestar enhancement. *Serrano III*, 20 Cal.

11   3d at 49; *Ketchum*, 24 Cal. 4th at 1138. In addition, the Court should consider if counsel

12   obtained a favorable result with less effort or more promptly than might be expected. *Lealao*,

13   82 Cal. App. 4th at 52 ("The promptness of settlement cannot be used to justify the refusal to

14   apply a multiplier to reflect the size of the class recovery without exacerbating the disincentive

15   to settle promptly inherent in the lodestar methodology.").

16           Prosecuting nationwide consumer class actions such as this one requires counsel with

17   experience in class action litigation, California's Unfair Competition Law and the Consumers

18   Legal Remedies Act. Here, Class Counsel have extensive experience in all these areas. For

19   example, Mr. Blood's practice focuses on plaintiffs' class actions and false advertising claims

20   concerning the advertised scientific substantiation for the health claims, in this case, that eating

21   Mini-Wheats for breakfast improved kids' attentiveness, memory and other cognitive

22   functions. Indeed, Mr. Blood's experience and expertise gained in other deceptive advertising

23   litigations and nationwide settlements contributed to counsel's ability to research and

24   understand the purported scientific basis for Kellogg's advertised claims prior to filing the

25   complaint, and to quickly and efficiently coordinate Plaintiffs' counsel from the separate cases

26

27   [9]    As courts sometimes order, Plaintiffs would have no objection to a staging of fees to
28   ensure that the Settlement is fully implemented though counsel's justified reputation and
     history is to complete all settlement work without exception.

BLOOD HURST & O'REARDON, LLP

1 into a joint action, and then jointly resolve the claims with Kellogg without extended litigation.

2 *See* resume of Blood, Hurst & O'Reardon, LLP attached to Blood Decl., listing recent false

3 advertising cases including *Gemelas v. Dannon*, Case No. CV-08-236 (N.D. Ohio 2010);

4 *Smith v. Wrigley*, Case No. 09-60646-Civ-Cohn/Seltzer (S.D. Florida 2010); and *Hartless v.*

5 *Clorox*, Case No. 3:06-CV-02705-CAB (S.D. Cal. 2010).

6          Finally, the skill and competence of opposing counsel should be considered and cannot

7 be doubted. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D.

8 Cal. 1977) (noting that plaintiff's counsel faced "established and skillful defense lawyers").

9 Kellogg is represented by a team of experienced attorneys from the Chicago and Los Angeles

10 offices of Jenner & Block LLP, a firm skilled in class action defense. The Jenner & Block

11 team was headed by Dean Panos, a partner in the firm's Litigation Department; a member of

12 the Complex Commercial Litigation, Class Action and Real Estate Construction Litigation

13 Practices; and Co-Chair of Products Liability and Mass Tort Defense Practice. Blood

14 Decl., ¶21.

15                              **d.      Benefits to the Public**

16          The public interest served by Plaintiffs' lawsuit also supports the enhancement sought.

17 *State v. Meyer*, 174 Cal. App. 3d 1061, 1073 (1985); *Lealao*, 82 Cal. App. 4th at 41 (""'[T]his

18 kind of consumer class action litigation would not be pursued by counsel but for the

19 expectation of receiving enhanced fee awards in successful cases."'" (internal citations

20 omitted)). The California Supreme Court has found that "[p]rotection of unwary consumers

21 from being duped by unscrupulous sellers is an exigency of the utmost priority in

22 contemporary society." *Vasquez*, 4 Cal. 3d at 808. As stated in *Discover Bank v. Superior*

23 *Court*, 36 Cal. 4th 148, 156-57 (2005) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S.

24 591, 617 (1997)): "'"The policy at the very core of the class action mechanism is to overcome

25 the problem that small recoveries do not provide the incentive for any individual to bring a

26 solo action prosecuting his or her rights. A class action solves this problem by aggregating the

27 relatively paltry potential recoveries into something worth someone's (usually an attorney's)

28 labor."'"

BLOOD HURST & O'REARDON, LLP

1    Kellogg falsely advertised its cereal across the nation to boost its sales and profits.

2    Amended Complaint, ¶20. And yet, from each individual Class member, the amount collected

3    was small and could not support individual litigation. Amended Complaint, ¶¶21, 22.

4    Without commensurate fee awards, the incentive to undertake risky consumer litigation will be

5    lost.

6    **C.      Plaintiffs' Expenses Are Reasonable and Compensable**

7        The reasonableness of the requested fee award is reinforced by the fact that it covers all

8    expenses incurred by Class Counsel to prosecute the Class claims. Both the Ninth Circuit and

9    California state courts allow recovery of pre-settlement litigation costs in the context of class

10   action settlements. *See Staton*, 327 F.3d at 974; *Serrano III*, 20 Cal. 3d at 35; *Rider v. San*

11   *Diego*, 11 Cal. App. 4th 1410, 1424 n.6 (1992); *see also* H. Newberg & A. Conte, *Newberg on*

12   *Class Actions*, §12.08, at 50-51 (2d ed. 1993). "Attorneys may recover their reasonable

13   expenses that would typically be billed to paying clients in non-contingency matters." *In re*

14   *Omnivision*, 559 F. Supp. 2d at 1048; *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

15   1994).

16       Class Counsel have submitted declarations attesting to the expenses incurred in this

17   litigation – in the aggregate, a moderate $16,334 was invested over the 18 months spent on this

18   litigation. *See* Blood Decl., ¶31 and Declarations of Counsel. As detailed in the Declarations,

19   Class Counsel incurred these costs for mediation fees, filing fees, travel, computer research,

20   photocopies, postage, and telephone charges. All of these expenses were reasonably and

21   necessarily incurred, and are of the sort that would typically be billed to paying clients in the

22   marketplace.

23   **D.      The Service Awards Are Reasonable**

24       Service awards "are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958;

25   Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An*

26   *Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1303 (2006) (28% of class actions include

27   incentive awards to class representatives). Such awards "serve an important function in

28   promoting class action settlements." *Sheppard v. Cons. Edison Co. of N.Y., Inc.*, Case No. 94-

BLOOD HURST & O'REARDON, LLP

1    CV-0403(JG), 2002 WL 2003206, at *5 (E.D.N.Y. Aug. 1, 2002).   The Ninth Circuit has

2    recognized that service awards "are intended to compensate class representatives for work

3    done on behalf of the class, to make up for financial or reputational risk undertaken in bringing

4    the action, and, sometimes, to recognize their willingness to act as a private attorney general."

5    *Rodriguez*, 563 F.3d at 958-59.   Service awards are committed to the sound discretion of the

6    trial court and should be awarded based upon the court's consideration of, *inter alia*, the

7    amount of time and effort spent on the litigation, the duration of the litigation and the degree

8    of personal gain obtained as a result of the litigation.  *See Van Vranken v. Atlantic Richfield*

9    *Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

10          Here, Plaintiffs respectfully request that the Court approve a modest service award of

11   $5,000 for Plaintiffs Dennis and Koz, in recognition of their contributions toward the

12   successful prosecution of this case.   They reviewed relevant pleadings and kept in constant

13   communication with their counsel throughout the litigation.  They were also willing to provide

14   both deposition and trial testimony as needed.   Declaration of Elaine Ryan in Support of

15   Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses, ¶13, filed concurrently;

16   Declaration of Frank Piscitelli in Support of Plaintiffs' Motion for an Award of Attorneys'

17   Fees and Expenses, ¶8, filed concurrently.  Plaintiffs further request that the Court approve a

18   $5,000 service award for Lani Felix-Lozano, who separately sent a demand letter to Kellogg in

19   anticipation of filing suit and who has also made herself available to prosecute this litigation if

20   it became necessary to name a third plaintiff.  Ms. Felix-Lozano's service award will be paid

21   by Class Counsel out of Class Counsel's fee award.  Sheehan Decl., ¶6.  Kellogg does not

22   oppose the payment of these service awards.  *Id.*; Stipulation, §VIII.C.

23          The requested service awards fall squarely in line with amounts awarded in comparable

24   cases.  *See, e.g., In re Mego Fin.*, 213 F.3d at 463 (approving $5,000 incentive awards);

25   *Garner v. State Farm Mut. Auto. Ins. Co.*, Case No. CV-08-1365-CW(EMC), 2010 WL

26   1687832, at *17 (N.D. Cal. Apr. 22, 2010) (service award of $20,000 was "well justified"

27   given plaintiffs' efforts on behalf of the class) (compiling cases); *Pelletz v. Weyerhaeuser Co.*,

28   592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) ("When compared to service awards in other

BLOOD HURST & O'REARDON, LLP

1  cases, the $7,500 payments requested here are justified."); *In re Ins. Brokerage Antitrust Litig.*,

2  Case No. 04-5184-GEB, 2007 WL 1652303, at *11 (D.N.J. June 5, 2007) (approving incentive

3  award of $10,000); *Van Vranken*, 901 F. Supp. at 300 (approving service award of $50,000).

4  **VII.   CONCLUSION**

5      For the reasons set forth above, Plaintiffs respectfully request the Court confirm

6  certification of the Settlement Class, grant final approval of the Settlement and approve

7  Plaintiffs' application for attorneys' fees and expenses and service awards.

8      Respectfully submitted,

9  Dated: December 30, 2010              BLOOD HURST & O'REARDON, LLP
                                          TIMOTHY G. BLOOD
10
                                          By:        s/Timothy G. Blood
11                                                TIMOTHY G. BLOOD

12                                        600 B Street, Suite 1550
                                          San Diego, CA 92101
13                                        Telephone: 619/338-1100
                                          619/338-1101 (fax)
14                                        tblood@bholaw.com

15                                        BONNETT, FAIRBOURN, FRIEDMAN
                                            & BALINT, P.C.
16                                        ANDREW S. FRIEDMAN
                                          ELAINE A. RYAN
17                                        PATRICIA N. SYVERSON
                                          2901 N. Central Avenue, Suite 1000
18                                        Phoenix, AZ 85012-3311
                                          Telephone: 602/274-1100
19                                        602/274-1199 (fax)
                                          afriedman@bffb.com
20                                        eryan@bffb.com
                                          psyverson@bffb.com
21
                                          PISCITELLI LAW FIRM
22                                        FRANK E. PISCITELLI, JR.
                                          55 Public Square, Suite 1950
23                                        Cleveland, OH 44113
                                          Telephone: 216/931-7000
24                                        frank@piscitellilaw.com

25                                        BONNETT, FAIRBOURN, FRIEDMAN
                                            & BALINT, P.C.
26                                        TODD D. CARPENTER
                                          600 West Broadway, Suite 900
27                                        San Diego, CA 92101
                                          Telephone: 619/756-6978
28                                        602/798-5825 (fax)
                                          tcarpenter@bffb.com

1    CLIMACO, WILCOX, PECA, TARANTINO
       & GAROFOLI CO., L.P.A.
2    JOHN R. CLIMACO
     PATRICK G. WARNER
3    55 Public Square, Suite 1950
     Cleveland, OH  44113
4    Telephone:  216/621-8484
     216/771-1632 (fax)
5    jrclim@climacolaw.com
     pwarn@climacolaw.com
6
     WHATLEY, DRAKE & KALLAS, LLC
7    PATRICK J. SHEEHAN
     1540 Broadway, 37th Floor
8    New York, NY  10036
     Telephone: 212/447-7070
9    212/447-7077 (fax)
     psheehan@wdklaw.com
10
     Attorneys for Plaintiffs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

00024775