Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Janine R. Menhennet (SBN 163501)
Law Offices of Darrell Palmer
603 North Highway 101, Ste A
Solana Beach, California 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655

Attorney for Objector Stephanie Berg

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY DENNIS and JON KOZ, On Behalf of Themselves and All Other Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG COMPANY, a Delaware Corporation,<br><br>Defendant. | Case No. 3:09-CV-01786-IEG (WMC)<br><br>**OBJECTION OF STEPHANIE BERG TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date: February 14, 2011<br>Time: 10:30 a.m.<br>Place: Courtroom 1<br>Judge: Hon. Irma E. Gonzalez |

COMES NOW, STEPHANIE BERG ("Objector") an unnamed representative of Class Members to this action, by and through her undersigned counsel, and hereby files these Objections to the Proposed Class Action Settlement, gives notice of her counsel's intent to appear at the February 14, 2011, final approval hearing, and requests award of an incentive fee for serving as an unnamed class member.

Objector, STEPHANIE BERG, represents to the court that she is an unnamed representative of Class Members, qualified to make a claim as set forth in the NOTICE OF CLASS ACTION SETTLMENT; her address is known to her attorney and may be provided upon request.

## **INTRODUCTION**

Rule 23(e) of the Federal *Rules of Civil Procedure* provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or

compromise shall be given to all members of the class in such manner as the court directs." A settlement may only be approved after the court finds it is fundamentally fair, adequate and reasonable. *Id.* This rule has been read as a requirement for the court to " 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.' " *In Re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3rd 2001)*, citing In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 785 (3rd Cir. 1995). For guidance on these questions, a district court must consider a number of factors, including:

> (1)The strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F. 3d 938, 959 (9th Cir. 2003). This list of factors is "by no means an exhaustive list of relevant considerations." *Id.*

"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003.

Ultimately, the goal of the district court's is to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010). As is the case here, when the settlement was achieved before class

certification, the court should view the settlement with "heightened scrutiny." *In re General Motors*, 55 F.3d at 807.  This is because, "[t]he danger of a premature, even a collusive, settlement is increased when as in this case the status of the action as a class action is not determined until a settlement has been negotiated." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680 (7th Cir. 1987).

According to Plaintiffs' Memorandum In Support of Motion for Final Approval of Class Action Settlement ("Motion for Approval"), Class Counsel values this settlement "in excess" of $10.6 million. (Motion for Approval at 1).  This begs the question, to whom is this settlement worth $10.6 million dollars?  It's certainly not worth $10.6 million to the Class Members.  This optimistic appraisal only benefits two parties –Class Counsel and the Defendant.  For Class Members, this settlement is seriously lacking in fairness, reasonableness and adequacy.

## I. CLASS COUNSEL'S USE OF *CY PRES* RELIEF IS IMPROPER

The doctrine of *cy pres* originated in the law of wills and trusts and allowed courts to redirect money from trusts and testamentary gifts that would otherwise fail for legal reasons.  *In Re Wells Fargo Securities Litigation*, 991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998).  However, a court cannot direct excess funds to any seemingly worthwhile recipient, instead, the funds must be used in such a way that best serve the original intent of the settlor or testator. *Id* at 1195.

In the context of class actions, distribution of funds through the use of *cy pres* should be limited in two ways. *Id* at 1194.  First, the doctrine of *cy pres* should only be invoked when "(1) no parties have equitable interests in the residue or (2) distribution to such parties would be impractical." *Id*.  Second, "a court must be careful to direct the residue to an entity that will indirectly serve the interests of class members or "others similarly situated, e.g. *future class members* who engage in future transactions of the type involved in the class litigation." *Id* at 1195.

3

This proposed settlement fails on both fronts.  As evidenced by the non-revertible fund of $2.75 million, distribution to the class is not impractical.  Furthermore, the only relationship between this lawsuit and feeding the indigent is that they both involve food in some way.  This proposed distribution is an abuse of the *cy pres* doctrine and inadequately compensates the injured party – the class.  For these reasons and the reasons below, the court should reject this settlement.

**A. Class Counsel Places the Interests of Charities Ahead of Their Clients**

Class Counsel owes a fiduciary duty to the entire class once the complaint is filed.  *Staton* 327 F. 3d at 960.   Somewhere along the way, Class Counsel lost sight of that duty and became an advocate for some unnamed third party charity.  While the potential exists for Class Members to make over $8.25 million in claims, Class Counsel has volunteered the class as charitable donors of 66% of the available $8.25 million.  In fact, Class Counsel reminds the class on the claim form that "if they do not submit a claim, more money will be available for charitable donation."  (Motion for Approval at 5).   Not only is that statement misleading because of the potential that the entire fund will be diminished, it demonstrates their loyalty lies with someone other than with their client.

Class Counsel justifies this disbursement plan because "notice costs could swamp the value of those who claim in" if a saturation notice campaign is employed.  (Motion for Approval at 5).  The evidence indicates otherwise, as a $2.75 million Settlement Fund to pay cash claims would not exist if this were true.  Further, Class Counsel makes no attempt to explain how this line of economic feasibility was drawn at $2.75 million.   Notice *and* claims administration fees are estimated to cost only $391,500. (Motion for Approval at 21).  It's unclear why notice sufficient to alert claimants for $2.75 million makes economic sense, but anything more becomes impractical and would somehow overwhelm the fund.

The reality is the $5.5 million food donation allows the Defendants to settle cheaply while simultaneously inflating the value of the settlement to justify higher attorneys' fees. Class Counsel's attempt to frame this bargain settlement as some sort of valuable opportunity for Class Members to donate to charity is unconvincing. Food donations will provide absolutely no benefit to the class and bears no relationship to this lawsuit.

A *cy pres* recipient should only be chosen if distribution to the class is <u>proven</u> to be impractical. If that determination is made, the funds should be put to use in such a way that effectuates the underlying purpose of the cause of action. *See Bruno v. Superior Court*, 127 Cal.App.3d 120, 129 (1980).

**B. The Value Of the *Cy Pres* Relief is Ambiguous**

In the Motion for Approval, Class Counsel states that Kellogg will donate $5.5 million worth of Kellogg branded food items to charities. This statement surreptitiously fails to disclose how the value of this Kellogg branded food will be calculated – most likely because they intend to calculate it at retail value. Regardless of their intentions, this material omission in the Class Notice creates confusion amongst class members. This confusion should be resolved in the class members' favor; either by calculating the value of Kellogg branded food items at Kellogg's cost or by amending the Class Notice so Class Members are adequately informed. It would be fundamentally unfair to bind class members to such ambiguous language given the profound effect it has on the value of total recovery.

**C. *Cy Pres* Benefits Class Counsel and Defendant – Not the Class**

Putting aside the impropriety of the proposed *cy pres* and its exaggerated value, the *cy pres* distribution should not be approved because it only benefits the Defendant and Class Counsel. Class Counsel's benefit derives from the notion that higher settlement values typically justify higher fees. The

5

Defendant, on the other hand, is benefitted because the proffered *cy pres* is a tax deductible charitable donation that will cost them nothing in the end, at least in terms of this lawsuit.

At least one court has recognized this situation, cautioning "the use of a *cy pres* remedy to distribute remaining funds in a class action settlement poses many dangers." *Bear, Stearns & Co. Inc.,* 626 F. Supp 2d 402, 414 (S.D.N.Y. 2009). "*Cy pres* distributions often stray … from the "next best use" to a use that actually benefits the defendant rather than the plaintiffs. In general, defendants reap goodwill from the donation of monies to a good cause. However, **defendants may also channel money into causes and organizations in which they already have an interest**." *Id* at 415.

This point is illustrated by Kellogg's corporate website, wherein they catalogue the millions of dollars in cash, food products and brand products they donate every year to support the global community. In the years 2005 through 2009, Kellogg made $23.0, $27.1, $25.0, $26.7, and $22.6 million worth of in-kind contributions respectively. In that same time period, they donated $7.7, $7.9, $7.8, $9.5, and $9.3 million in cash respectively. What type of organizations receive these donations? In 2009, Kellogg donated approximately $10 million worth of food in one day to the charity Feeding America, a hunger-relief organization. The website does not disclose how much of these donations were part of other settlements.

Given Kellogg's history of philanthropic donations, it is no wonder Class Counsel advocates a $5.5 million donation to feeding the indigent. It's something Kellogg already planned to do. This settlement falls right into the Defendant's lap and also allows Class Counsel to argue some sort of value was created so they can collect fees. The only loser here is the class.

Class Counsel's brazen attempt to credit themselves for donations that Kellogg would have made with or without lawsuit raises serious concerns about collusion. Further, this highlights who is - and more importantly - who is not intended to benefit under this settlement.

**D.     The *Cy Pres* Recipient Must Be Identified**

The settlement may only be approved after the court determines it is fair, adequate and reasonable. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 955 (9th Cir. 2009). Without having identified a *cy pres* recipient for the Settlement Fund this determination is not possible. This is particularly true if the *cy pres* recipient chosen is a charity that Kellogg has donated money to in the past, and would have donated money to regardless of this lawsuit.

Also, without a named *cy pres* recipient, the Class Notice is defective. The Class Members have no idea how their funds might be used or in whose hands their monies will end up. Class Members have an interest in seeing the funds used in a manner that effectuates the underlying purpose of this lawsuit. Without a named recipient, they cannot be sure that will happen.

## II.  ATTORNEYS' FEES CANNOT BE APPROVED

In the Ninth Circuit, either the percentage of the fund or lodestar method may be adopted to calculate attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Regardless of which method is chosen, the main inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F. 3d 1249, 1256 (9th Cir. 2000). The Ninth Circuit is guided by these factors in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.

*See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). "The most critical factor is the degree of success obtained." *Hensley v. Eckhart*, 461 U.S. 424, 436 (1983).

**A. The Results Achieved Are Exaggerated**

Class Counsel's request for a lodestar multiplier of 4.3 is absurd, and the attorneys' attempt pull the wool over the eyes of their client cannot be rewarded. This proposed settlement makes no attempt to

7

differentiate the charitable donations mandated by this settlement from those already given throughout the year by the Defendant.  Therefore, Class Counsel cannot in good faith make a representation that they've created $5.5 million in value for the class.

The real benefit this settlement provides is the cash payments for $2.75 million.  From this figure, Class Counsel's fees should be calculated – not the exaggerated $10.6 million.

**B.  A 25% Benchmark Is Not a Valid Starting Point**

Class Counsel attempts to liken this case to a line of cases that have established 25% as a "benchmark" for reasonable fees in a common fund.  In reality, this "benchmark" is a legal fiction and this Court should give no weight to any proffered benchmark, especially when it has no correlation to how the class is benefitted.  This flawed approach creates arbitrary results and is inconsistent with the time honored notion that "a fee award should be assessed based on scrutiny of the unique circumstances of each case, and "a jealous regard to the rights of those who are interested in the fund."" *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 53 (2d Cir. 2000).  (Holding that a deviation from the 25% "benchmark" embraced by class counsel to 4% was not an abuse of discretion); *See also In re Infospace Inc.*, 330 F. Supp. 2d 1203, 1210 (W.D. Wash. 2004) ("There is nothing inherently reasonable about a 25 percent recovery, and the courts applying this method have failed to explain the basis for the idea that a benchmark fee of 25 percent is logical or reasonable."); *Vizcaino*, 290 F.3d at 1048 ("Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 129 (9th Cir.1994) ("WPPSSS") ("[T]here is no necessary correlation between any particular percentage and a reasonable fee.").

Viewing the circumstances surrounding this case, using the 25% benchmark based on the $10.6 million value would be unjust to the class.  That would put this settlement on the same grounds as other

8

hard fought and beneficial settlements. This blue-light special settlement shares none of those characteristics.

**C. Other Factors Weigh Against This Fee Award**

Both the risks associated with this litigation and the burdens carried by Class Counsel weigh against any lodestar multiplier. This case settled very quickly, in fact, Defendant never even filed an answer. Without opposition in the court, this lawsuit was relatively low risk compared to most class action lawsuits. The quick resolution also minimized the burden it placed on Class Counsel. These factors weigh against awarding a multiplier.

### III.   JOINDER IN OTHER OBJECTIONS

This Objector herein joins in all other meritorious objections filed in this matter.

### IV.   CONCLUSION

WHEREFORE, This Objector respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

C. Continue the Fairness Hearing until such time that this Objector has had an opportunity to review Class Counsel's Fee Application and for an opportunity to submit limited Discovery regarding said Fee Application; or in the alternative, continue the Hearing on the Class Counsel's Fee Application until after all Claims are received, reviewed and tabulated by the Administrator.

D. Award an incentive fee to this Objector for her service as an unnamed representative of Class Members in this litigation.

Dated:   January 18, 2011                                  By:   ____/s/ Darrell Palmer_____
                                                                                DARRELL PALMER
                                                                                Attorney for Objector, Stephanie Berg

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2011, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of California by using the USDC CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, service will be accomplished by the USDC CM/ECF system, to wit:

| | |
|---|---|
| Timothy Blood | Dean N. Panos |
| Blood, Hurst & O'Reardon, LLP | Richard P. Steinken |
| tblood@bholaw.com | Jenner & Block, LLP |
| | dpanos@jenner.com |
| | rsteinken@jenner.com |

       \_\_\_/s/ Darrell Palmer\_\_\_\_
       Darrell Palmer
       Attorney for Objector