BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ 005425)
ELAINE A. RYAN (AZ 012870)
PATRICIA N. SYVERSON
   (CA 203111; AZ 020191)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

PISCITELLI LAW FIRM
FRANK E. PISCITELLI, JR.
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/931-7000
frank@piscitellilaw.com

Attorneys for Plaintiffs

[Additional Counsel Appear on Signature Page.]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY DENNIS and JON KOZ, On Behalf of Themselves and All Other Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG COMPANY, a Delaware Corporation,<br><br>Defendant. | Case No.: 3:09-CV-01786-IEG(WMC)<br><br>CLASS ACTION<br><br>PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Judge: Hon. Irma E. Gonzalez<br>Courtroom: 1, 4th Floor<br>Date Filed: August 17, 2009<br>Trial Date: TBD |

*Sidebar:* BLOOD HURST & O'REARDON, LLP

00057068

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION.................................................................................. 1

II. HISTORY OF THE LITIGATION........................................................ 2

III. SETTLEMENT TERMS ...................................................................... 5

    A.    The Proposed Settlement Relief ................................................. 5

        1.    Cash Refunds.................................................................... 5

        2.    Injunctive Relief............................................................... 6

        3.    Notice and Administration Costs and Attorneys' Fees and Expenses ............................................................. 6

        4.    The Proposed *Cy Pres* Recipients ................................... 7

    B.    The Class Notice Program ......................................................... 8

IV. THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL ......................................................... 10

    A.    The Strengths of Plaintiffs' Case and Risks Inherent in Continued Litigation and in Securing Certification Favor Preliminary Approval ........................................................ 12

    B.    The Risk, Complexity, Expense, and Duration of the Litigation Favor Preliminary Approval ........................................... 13

    C.    The Substantial Relief Provided by the Settlement Agreement Favors Preliminary Approval ..................................... 14

    D.    The Experience and Views of Counsel Favor Preliminary Approval............................................................................ 15

    E.    The Settlement Was Reached After Arms-Length Negotiations and Mediation ............................................................. 16

V. THE CLASS SHOULD BE CONDITIONALLY CERTIFIED ................. 17

    A.    The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a) ............................................ 18

        1.    Numerosity ....................................................................... 18

        2.    Commonality .................................................................... 18

        3.    Typicality ......................................................................... 19

        4.    Adequacy of Representation.............................................. 20

BLOOD HURST & O'REARDON, LLP

00057068

B. The Settlement Class Should Be Preliminarily Approved Under Federal Rule of Civil Procedure 23(b)(3) ............................. 21

    1. Common Questions Predominate Over Individual Issues ...................................................................................... 21

    2. A Class Action is the Superior Method to Settle This Controversy ............................................................................. 22

VI. THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND CLASS NOTICE SHOULD BE APPROVED ...................................................................................... 24

VII. PLAINTIFFS SHOULD BE APPOINTED CLASS REPRESENTATIVES AND CLASS COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ............................................... 26

VIII. THE PROPOSED SCHEDULE OF EVENTS ............................................ 26

IX. CONCLUSION ................................................................................. 28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP

00057068

CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................... 17, 21, 22, 23

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010)............................................................. 16

*Churchill Village, LLC v. Gen. Elec. Co.*,
361 F.3d 566 (9th Cir. 2004) ............................................................. 10, 13, 24

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992)........................................................................ 10

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) ....................................................................... 4, 7

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980) ...................................................................................... 23

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ...................................................................................... 24

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980)
*aff'd*, 661 F.2d 939 (9th Cir. 1981) ............................................................... 15

*Gardner v. GC Services, LP*,
No. 10cv0997-IEG (CAB), 2012 U.S. Dist. LEXIS 47034
(S.D. Cal. Apr. 2, 2012)................................................................................. 15

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982) ...................................................................................... 22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)................................................................ passim

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ........................................................................ 20

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) ........................................................................ 18

*In re Compact Disc. Minimum Advertised Price Antitrust Litig.,*
216 F.R.D. 197 (D. Me. 2003) ........................................................................ 25

*In re Emulex Corp. Sec. Litig.,*
210 F.R.D. 717 (C.D. Cal. 2002) .................................................................... 20

*In re First Alliance Mortg. Co.,*
471 F.3d 977 (9th Cir. 2006) .......................................................................... 19

*In re Mercury Interactive Corp. Sec. Litig.,*
618 F.3d 988 (9th Cir. 2010) .......................................................................... 25

*In re ML. Stern Overtime Litig.,*
No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650
(S.D. Cal. Apr. 13, 2009)................................................................... 10, 11, 16

*In re Pacific Enters. Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995) ............................................................................ 10

*In re Rubber Chems. Antitrust Litig.,*
232 F.R.D. 346 (N.D. Cal. 2005) .................................................................... 26

*In re Vivendi Universal S.A. Sec. Litig.,*
765 F. Supp. 2d 512 (S.D.N.Y. 2011) ............................................................ 12

*Jack v. Hartford Fire Ins. Co.,*
No. 3:09-CV-1683-MMA (JMA), 2011 U.S. Dist. LEXIS 118764
(S.D. Cal. Oct. 13, 2011) ................................................................................ 11

*Johns v. Bayer Corp.,*
280 F.R.D. 551 (S.D. Cal. 2012) .................................................................... 22

*Johnson v. General Mills, Inc.,*
275 F.R.D. 282 (C.D. Cal. 2011) .................................................................... 19

*Keilholtz v. Lennox Health Prods., Inc.,*
No. C08-00836CV, 268 F.R.D. 330
(N.D. Cal. 2010) ............................................................................................. 20

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund
v. Las Vegas* Sands, Inc.,
244 F.3d 1152 (9th Cir. 2001) ........................................................................ 21

*Milstein v. Huck,*
600 F. Supp. 254 (E.D.N.Y 1984) .................................................................. 13

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

00057068

*Molski v. Gleich,*
    318 F.3d 937 (9th Cir. 2003) ............................................................ 20

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ...................................................................... 24

*Nat'l Rural Telecomms. Coop. v. DlRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................... 10, 15

*Officers for Justice v. Civil Service Com.,*
    688 F.2d 615 (9th Cir. 1982) ....................................................... 11

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ........................................... 10, 14, 24

*Skilstaf, Inc. v. CVS Caremark Corp.,*
    669 F.3d 1005 (9th Cir. 2012) ..................................................... 25

*Staton v. Boeing,*
    327 F.3d 938 (9th Cir. 2003) ....................................................... 20

*True v. Am. Honda Motor Co.,*
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ....................................... 15

*United States v. McInnes,*
    556 F.2d 436 (9th Cir. 1977) ....................................................... 12

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ....................................................... 23

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ................................................. 10, 12

*Vasquez v. Superior Court,*
    4 Cal. 3d 800 (1971) .................................................................... 23

*Walmart Stores, Inc. v. Dukes,*
    ___ U.S. ___, 131 S. Ct. 2541 (2011) .......................................... 18

*White v. Experian Info. Solutions, Inc.,*
    803 F. Supp. 2d 1086 (C.D. Cal. 2011) ................................... 15, 16

*Wiener v. Dannon Co., Inc.,*
    255 F.R.D. 658 (C.D. Cal. 2009) .......................................... passim

BLOOD HURST & O'REARDON, LLP

v      Case No. 3:09-CV-01786-IEG(WMC)

00057068

*Young v. Polo Retail, LLC,*
　　No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077
　　(N.D. Cal. Oct. 25, 2006) ................................................................. 11

*Zinser v. Accufix Research Inst., Inc.,*
　　253 F.3d 1180 (9th Cir. 2001) ......................................................... 23

STATUTES, RULES AND REGULATIONS

Business & Professions Code §17200. ............................................... 3

Civil Code §1750 ................................................................................. 3

Fed. Prac. & Proc. §1778 ................................................................. 22

Fed. R. Civ. Proc. 23 ............................................................. 17, 18, 25

Fed. R. Civ. Proc. 23(a) .............................................................. 18, 19

Fed. R. Civ. Proc. 23(a)(1) ............................................................... 18

Fed. R. Civ. Proc. 23(a)(3) ............................................................... 19

Fed. R. Civ. Proc. 23(a)(4) ............................................................... 20

Fed. R. Civ. Proc. 23(b)(3) ............................................... 21, 22, 23

Fed. R. Civ. Proc. 23(b)(3): (1) ....................................................... 21

Fed. R. Civ. Proc. 23(e) ................................................................... 10

Fed. R. Civ. Proc. 23(g)(1) ............................................................... 26

Ohio Rev. Code §1345, et. seq. .......................................................... 2

Ohio Rev. Code §4165, et. seq. .......................................................... 2

SECONDARY AUTHORITIES

Manual for Complex Litigation §§21.632, 21.633 (4th ed. 2009) ....... 11

Newberg on Class Actions, §3.3 (4th ed. 16 2002) ........................... 18

Newberg on Class Actions, §11.25 (4th ed. 16 2002) ....................... 11

Newberg on Class Actions, §11.41 (4th ed. 16 2002) ....................... 16

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

00057068

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Harry Dennis and John Koz submit this memorandum in support of the joint motion of Plaintiffs and defendant Kellogg Company ("Kellogg") for entry of an order preliminarily approving the proposed class action settlement as set forth in the concurrently filed Stipulation of Settlement ("Stipulation of Settlement" or "Stipulation").

## I.    INTRODUCTION

This is a class action alleging that Kellogg falsely and deceptively advertised its Mini-Wheats branded cereals January 28, 2008 and October 1, 2009.    According to Plaintiffs, Kellogg falsely claimed on its cereal labels and packages and in its promotional materials and advertisements that eating Frosted Mini-Wheats cereal for breakfast improved kids' attentiveness, memory and other cognitive functions to a degree not supported by any competent clinical evidence.  Although Kellogg's still denies all charges of wrongdoing or liability, the Parties have agreed to settle this matter upon the terms set forth in the Stipulation of Settlement.

Under the Stipulation of Settlement, a non-revertible common fund of $4 million will be established to pay settlement related fees and expenses and to provide cash payments to Class Members[1] who submit claims.

The cash payments will be made to all Claimants who submit a valid Claim Form, as well as those who previously submitted claims in accordance with the previous settlement agreement.  Eligible Claimants will receive the approximate full purchase price of the cereal they purchased, at $5 a box up to three boxes.  The Claim Form is simple, straightforward, and can be submitted online or by mail.

If money remains in the Settlement Fund after all eligible claims are paid, the remaining money will be used to increase the cash awards to Claimants to up

---

[1] Unless otherwise defined, capitalized words and terms are defined in the Stipulation of Settlement.

to three times the original value of the claim, for a total potential award of $45 per Claimant. The Stipulation of Settlement also provides that Kellogg must discontinue using the challenged message and details the language that is acceptable.

The proposed settlement meets the standard for preliminary approval. Thus, the Parties request that the Court enter the proposed preliminary approval order that, among other things: (1) preliminarily approves the terms of the settlement; (2) approves the form, method and plan of notice; (3) conditionally certifies the Class for settlement purposes; and (4) schedules a final Settlement Hearing and related dates.

## II.    HISTORY OF THE LITIGATION

This is the second negotiated settlement of this case, which began in May 2009, when Plaintiff Koz sent a demand letter to Kellogg along with a proposed Complaint alleging violations of Ohio's Consumer Sales Practice Act (Ohio Rev. Code §1345, *et. seq.*), Ohio's Deceptive Trade Practices Act, (Ohio Rev. Code §4165, *et. seq.*) and Breach of Warranty in connection with Defendant's advertising of Kellogg's® Frosted Mini-Wheats cereals ("Product"). Declaration of Timothy G. Blood in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Blood Decl.") ¶3. On August 17, 2009, Plaintiff Dennis filed a complaint against Defendant in the United States District Court for the Southern District of California. *Id.* ¶5. On June 22, 2010, a First Amended Complaint (the "Amended Complaint") was filed by both Plaintiff Dennis and Plaintiff Koz. [ECF No. 22].

In the Amended Complaint, Plaintiffs allege that Kellogg falsely claimed on its Product labels and packages and in its promotional materials and advertisements that consumption of Mini-Wheats cereal for breakfast improved kids' attentiveness, memory and other cognitive functions to a degree not supported by any competent clinical evidence. *Id.* at ¶¶15-20. The Amended

Complaint alleges: (1) violations of California's Unfair Competition Law ("UCL"), Business & Professions Code §17200, *et. seq.*, and similar laws of the various states, (2) violations of California's Consumers Legal Remedies Act, Civil Code §1750 *et seq.*, and similar laws of the various states and (3) unjust enrichment. *See generally, id.*

Prior to filing the initial complaint, Counsel for each of the Plaintiffs conducted separate examinations and evaluations of the relevant law and facts to assess the merits of their respective Plaintiff's claims and to determine how to best serve the interests of the members of the proposed Class. Blood Decl., ¶¶2, 4, 6. Plaintiffs' Counsel also investigated the factual allegations ultimately made in the Complaint and obtained and reviewed significant literature regarding Kellogg's marketing and purported substantiation of its "attentiveness claims." *Id.*

Kellogg's advertising, marketing and promotional campaigns that consumption of Kellogg's® Frosted Mini-Wheats cereal for breakfast improved kids' attentiveness ran nationally from January 28, 2008 to June 16, 2008, from July 28, 2008 to September 15, 2008, and from August 3, 2009 to September 14, 2009. Kellogg's advertising, marketing and promotional campaigns that consumption of Kellogg's® Frosted Mini-Wheats cereal for breakfast improved kids' memory ran nationally from February 9, 2009 to May 11, 2009.

The first settlement was the result of a mediation conducted by Martin Quinn of JAMS in San Francisco, California, followed by detailed settlement negotiations between the Parties. Blood Decl. ¶¶11-13. The settlement was preliminarily presented to the Court on September 10, 2010 (ECF No. 34). Final approval was granted on April 5, 2011 (ECF No. 49).

After entry of the Order Granting Preliminary Approval of the Settlement, the class notice program was implemented. [ECF No. 40-7]; Blood Decl. ¶14. More than 48,000 claim forms seeking reimbursements were submitted by

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1  Settlement Class Members, but no claims have been paid. Blood Decl. ¶15.

2  After filing boilerplate, shotgun objections to the settlement, two "serial"

3  objectors appealed the Order Granting Final Approval as expected, contesting

4  virtually every aspect of the settlement, including the settlement value and

5  settlement relief, the *cy pres* awards, the value of the product *cy pres* component,

6  the amount of attorneys' fees, and the determination of attorneys' fees based on

7  both a percentage and lodestar basis. (ECF Nos. 43 & 44).

8  The Ninth Circuit questioned only the *cy pres* component of the

9  settlement. The court found the settlement flawed because *cy pres* recipients for

10  the monetary and non-monetary funds were to be chosen as had been

11  traditionally done, after claims had been paid and the amount to be distributed

12  under the *cy pres* doctrine was known. The Ninth Circuit wanted the potential *cy*

13  *pres* recipients specifically identified in the settlement agreement. Further, the

14  Ninth Circuit found flawed the distribution of food donations to national food

15  charities that feed the indigent. Although the subject advertising was aimed at

16  children and promoted aspects of the advertised product, the Ninth Circuit found

17  that although more than half of the nation's poor are children, the food charities

18  were not sufficiently related to the underlying purpose of the lawsuit. *Dennis v.*

19  *Kellogg Co.*, 697 F.3d 858, 866 (9th Cir. 2012). Lacking the authority "to strike

20  down only the *cy pres* portions of the settlement," the Ninth Circuit remanded

21  the case to this Court for further consideration. *Id*. at 869.

22  Upon remand, the Parties prepared for further litigation by exchanging

23  discovery and with plaintiff served formal written discovery requests. Blood

24  Decl. ¶17. However, the Parties were also willing to discuss a revised settlement

25  in light of the Ninth Circuit's opinion and agreed to a mediation with the

26  Honorable Richard Haden of JAMS in San Diego, California. *Id*. ¶¶18-19. As a

27  result of that mediation session on December 11, 2012, the Parties agreed in

28  principle to a settlement. Over the following two and half months, the details

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

were negotiated and the Second Stipulation of Settlement was written, revised and ultimately agreed on.

## III.    SETTLEMENT TERMS

### A.    The Proposed Settlement Relief

#### 1.    Cash Refunds

Under the settlement, Kellogg will establish a cash fund of $4 million to reimburse Class members for the purchase price paid for the Product during the class period.  Stipulation of Settlement §IV.A.2.(a).  As is typical with common fund settlements, the Settlement Fund will be applied to pay in full and in order: (i) any necessary taxes and tax expenses; (ii) notice and Claim administration costs; (iii) attorneys' fees and expenses; (iv) Plaintiffs' incentive awards ($2,500 each); and (v) cash payments to Class members.  *Id*. §IV.A.2.(b).

To obtain the cash payment, Class members need only return a very simple Claim Form.  The Claim Form requires that the Claimant provide his or her name, address and the number of boxes of cereal purchased during the class period.  Stipulation of Settlement, §IV.A.6. and Ex. A (Claim Form).  Class Members who submitted a valid claim in the first settlement do not need to resubmit a Claim Form.  Their claims will automatically be paid based on the claim forms previously submitted.  *Id*. §IV.A.6.(a).  To be eligible, Claim Forms must be postmarked or submitted online no later than 80 days after the date set for the Settlement Hearing.  *Id*. §IV.A.6.(b).

Class members need not attempt to recall the price they paid for the cereal. Stipulation of Settlement §IV.A.1.  Each Claimant will be paid $5 per box.  *Id*. Five dollars is about one dollar more than the 16.3 oz box, and roughly the same price as the 24 oz package.  Class members may recover up to $15, the equivalent of three boxes of cereal.  *Id*. §IV.A.1.

In the event that funds remain in Settlement Fund after all valid claims are paid, the balance will be used to increase, pro rata, the recovery on each eligible

00057068

1  claim, up to three times the original value of the claim. Stipulation of

2  Settlement, §IV.A.3(b). Should any funds remain after this adjustment (which is

3  unlikely), the remainder will be distributed, subject to Court approval and

4  consistent with the Ninth Circuit precedent, *cy pres* to Consumers Union,

5  Consumer Watchdog and Center for Science in the Public Interest. *Id*.

6       In the event claims exceed the fund amount, payments will be

7  proportionately reduced. Stipulation of Settlement, §IV.A.3(a).

8                    **2.    Injunctive Relief**

9       In addition to the Settlement Fund, the Stipulation puts an end to Kellogg's

10  alleged unlawful practices. Within three (3) months of the Effective Date, and

11  for a period of three (3) years from the Effective Date, Defendant shall refrain

12  from using in its advertising and on its labeling for the Product any assertion to

13  the effect that "eating a bowl of Kellogg's® Frosted Mini-Wheats cereal for

14  breakfast is clinically shown to improve attentiveness by nearly 20%."

15  Stipulation of Settlement, §IV.B. The Stipulation of Settlement also requires

16  Kellogg to limit and qualify other claims about the impact on attentiveness from

17  eating the Product. *Id*. The Stipulation of Settlement's injunctive relief applies

18  to all Product advertising, including the packaging of the Product and any type of

19  advertisement or promotion of any kind, including on radio, television, the

20  Internet, newspapers, periodicals, point of purchase displays, and all other media.

21                    **3.    Notice and Administration Costs and Attorneys' Fees and

22                           Expenses**

23       Prior to paying the cash awards to Claimants, the Settlement Fund will be

24  used to pay notice and claim administration costs, Plaintiffs' Counsels' fees and

25  expenses, and Plaintiffs' incentive awards. Stipulation of Settlement,

26  §§IV.A.2(b) and VII.A. The Parties anticipate that notice costs will be

27  approximately $550,000. Claim administration costs will depend on the number

28  of claims processed, however, the simplified Claim Form will keep

administrative costs to a minimum. The Plaintiffs will each seek $2,500 for an incentive award. And Plaintiffs' Counsel will seek attorneys' fees of no more than 25% of the Settlement Fund in attorneys' fees plus costs.

### 4.   The Proposed *Cy Pres* Recipients

A proposed *cy pres* recipient in this case must be an "organization[] dedicated to protecting consumers from, or redressing injuries caused by, false advertising." *Dennis*, 697 F.3d at 867. The proposed *cy pres* recipients, Consumers Union, Consumer Watchdog and Center for Science in the Public Interest, readily meet this requirement. Under the proposed settlement, they would split equally any remaining funds. Stipulation of Settlement, §IV.A.3.(b).

Consumers Union is a not-for-profit group dedicated to fighting false advertising by working to create "a fair, just, and safe marketplace for all consumers and to empower consumers to protect themselves." *See* Declaration of Elisa Odabashian in Support of Motion for Preliminary Approval of Class Action Settlement, at ¶3. Consumers Union is the policy and action division of Consumer Reports. It works with its "million plus activists to pass consumer protection laws in states and in Congress." *Id*. It "also advocate[s] against corporations that do wrong by their customers, and encourage[s] companies that are heading in the right direction. Consumers Union is dedicated to protecting consumers from false advertising and promoting consumer protection, including laws and actions that provide redress for consumers whose rights have been violated." *Id*.

Consumer Watchdog is a not-for-profit advocacy group that fights false advertising and other corporate deception. "Through policy research, investigation, public education, advocacy (including litigation), and direct consumer outreach, Consumer Watchdog has helped millions of Americans fight false advertising and protect and enhance consumers ability to recover when they are cheated by corporations." Declaration of Jamie Court in Support of Motion

00057068

BLOOD HURST & O'REARDON, LLP

for Preliminary Approval of Class Action Settlement, at ¶2. "With offices in California and Washington, D.C., Consumer Watchdog uses a variety of approaches to advocate for consumer rights. Much of the ability to protect consumer rights lies within the powers of the states and a handful of federal regulatory agencies, so Consumer Watchdog fights on both the state and federal level, strategically choosing which agencies, governments and battlegrounds are most likely to result in a desired outcome." *Id.* at ¶3. On the federal level, Consumer Watchdog regularly works with the Consumer Protection divisions of the Federal Trade Commission and petitions the FTC to take action to stop and correct acts of unfair and deceptive advertising practices. *Id.* at ¶4.

Center for Science in the Public Interest is a not-for-profit organization founded in 1971. It is "a consumer advocacy organization whose twin missions are to conduct innovative research and advocacy programs in health and nutrition, and to provide consumers with current, useful information about their health and well-being." It is at the forefront of combating false advertising by large processed food companies, such as the defendant here. See Declaration of Stephen Gardner in Support of Motion for Preliminary Approval of Class Action Settlement, at ¶¶2-3 and Ex. 1.

### B. The Class Notice Program

The Parties have developed a Notice Program with the help of Garden City Group, Inc. ("GCG"), a firm that specializes in developing class action notice plans. GCG is the firm that designed the notice plan for the first settlement, which plan even the serial objectors did not fault, superficially or otherwise.

Notice is provided to the Class primarily through publication. This is because Mini-Wheats was sold over the counter at retail stores, and Kellogg does not have contact information for Class members. Use of the Internet and traditional methods for publication maximizes the dollars spent to contact the Class. Publication through the Internet has the further advantage of immediately

BLOOD HURST & O'REARDON, LLP

1    linking the reader to the Settlement Website and the Claim Form.  The details of

2    the notice program, including the methodology underlying its design, are further

3    explained in the concurrently submitted Declaration of Jennifer M. Keough.

4         The Publication Notice provides Class members with information

5    regarding the Settlement and informs them about their rights.  It contains a

6    general description of the lawsuit, the Settlement relief, including how a claim

7    can be filed, and a general description of Class members' legal rights.  The

8    Publication Notice also directs Settlement Class Members to a website dedicated

9    to the Settlement (www.cerealsettlement.com) which the Settlement Class

10   Members may use to complete the Claim Form or print out a copy and obtain a

11   copy of the detailed Class Notice and other information.  The Claim Form may

12   also be requested by calling the toll-free number provided by the Class Action

13   Settlement Administrator or by writing to the Class Action Settlement

14   Administrator.   The Publication Notice is attached to the Stipulation of

15   Settlement as Exhibit D.

16        The Publication Notice will appear in a range of sources chosen based on

17   market research on the demographics of consumers who purchase the Frosted

18   Mini-Wheats Products.  The Publication Notice will be published as set forth in

19   the Stipulation, Ex. G.

20        Class Members who already submitted claims will be notified through the

21   mail about the new settlement, including that they need not complete a new claim

22   form in order to participate in the settlement.   The mailing to these class

23   members is attached as Ex. H to the Stipulation of Settlement.

24        Complementing the Publication Notice is the Class Notice.  The Class

25   Notice contains detailed information about the lawsuit, the Settlement benefits,

26   the release and how to opt-out, object and exercise other rights under the

27   Settlement.  Also provided with the Class Notice is the Claim Form.  The Class

28   Notice is attached to the Stipulation of Settlement as Exhibit C.   The Class

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

1    Notice will be available on the Settlement Website established for this case and

2    by request to the Class Action Settlement Administrator.

3    **IV.    THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL**

4

5         Settlements of class actions are strongly favored.    *Class Plaintiffs v.*

6    *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting "strong judicial policy that

7    favors settlements, particularly where complex class action litigation is

8    concerned"); *see also Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566,

9    576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

10   1995).    By their very nature, class actions readily lend themselves to

11   compromise; as the difficulties of proof and lengthy duration ratchet up

12   uncertainties regarding the outcome.    *Van Bronkhorst v. Safeco Corp.*, 529 F.2d

13   943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true

14   in class action suits . . . which frequently present serious problems of

15   management and expense").    Moreover, the Court should give a presumption of

16   fairness to arm's-length settlements reached by experienced counsel.    *Rodriguez*

17   *v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of

18   stock in the product of an arms-length, non-collusive, negotiated resolution.").

19   Rule 23(e) sets forth a "two-step process in which the court first determines

20   whether a proposed class action settlement deserves preliminary approval and

21   then, after notice is given to class members, whether final approval is

22   warranted."    *Nat'l Rural Telecomms. Coop. v. DlRECTV, Inc.*, 221 F.R.D. 523,

23   525 (C.D. Cal. 2004).

24        On preliminary approval, the court does not make a full and final

25   determination regarding fairness.    "Because class members will subsequently

26   receive notice and have an opportunity to be heard," the court "need not review

27   the settlement in detail at this juncture."    *In re ML. Stern Overtime Litig.*, No. 07-

28   CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *9 (S.D. Cal. Apr. 13,

00057068

BLOOD HURST & O'REARDON, LLP

2009). "[I]nstead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *Id.* at *9-10 (quoting Newberg on Class Actions, §11.25 (4th ed. 16 2002)); *see also* Manual for Complex Litigation §§2l.632, 21.633 (4th ed. 2009). The Court's review is further "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

> [I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and ***falls within the range of possible approval***, then the court should direct that the notice be given to the Class members of a formal fairness hearing . . . .

*Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct. 25, 2006) (emphasis added).

The Ninth Circuit has articulated six factors to use in evaluating the fairness of a class action settlement: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; and (6) the experience and views of counsel. *Jack v. Hartford Fire Ins. Co.*, No. 3:09-CV-1683-MMA (JMA), 2011 U.S. Dist. LEXIS 118764, at *11 (S.D. Cal. Oct. 13, 2011). "The Court needs only consider some of these factors – namely, those designed to protect absentees." *Id.* (citing *Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir. 2003) *overruled in part on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010)); *Hanlon*, 150 F.3d at 1026 (the court's task is to "balance a number of factors," including "the risk,

00057068

expense, complexity, and likely duration of further litigation," "the extent of discovery completed and the stage of the proceedings," and "the amount offered in settlement").

A. **The Strengths of Plaintiffs' Case and Risks Inherent in Continued Litigation and in Securing Certification Favor Preliminary Approval**

Again, because settlements resolve the inherent uncertainty on the merits, they are strongly favored by the courts, and particularly favored in class actions. *See Van Bronkhorst*, 529 F.2d at 950; *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). This action is not unique in this regard - the Parties disagree about the merits, and there is substantial uncertainty about the ultimate outcome of this litigation.

Assuming that litigation was to proceed, the hurdles that Plaintiffs face prior to certification and trial are substantial. Although Plaintiffs have an unflagging belief in the strength of their deceptive advertising claims against Kellogg, Plaintiffs must balance the perceived strength of the Class claims against the undeniable risks of continuing litigation. Class certification itself always poses a significant risk. And, absent settlement, Kellogg would undoubtedly mount a strong opposition to the certification of any proposed class. Here, if Plaintiffs were unable to certify a class the case would effectively be over and defendant would have prevailed, regardless of the merits of the claims. Finally, the ever-present risk of decertification must likewise be acknowledged. *See, e.g.*, *In re Vivendi Universal S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011).

Given these significant considerations, preliminary approval of the Settlement Agreement is appropriate to avoid the uncertainties of continued litigation and the certification and maintenance of a class.

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

**B.     The Risk, Complexity, Expense, and Duration of the Litigation Favor Preliminary Approval**

In addition to the substantial risks and uncertainty inherent in continued litigation, the Parties face the certainty that further litigation would be expensive, complex, and time consuming.  The Court would be required to resolve difficult and complicated issues of statutory interpretation and state law.  The expense, complexity and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement.  *Churchill*, 361 F.3d at 576. Settlement here would provide these benefits to Class Members without the risk and delays of continued litigation, trial and appeal.

Kellogg has denied and continues to deny each and all of the claims and contentions alleged by Plaintiffs, and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation.  Litigating this class action through trial would be time-consuming and expensive.  As with most class actions, Plaintiffs' claims are complex and risky.  The question of whether Kellogg has sufficient scientific substantiation for its "attentiveness claims" would require analysis by experts for both Parties.  In this type of case, the Parties typically utilize marketing, consumer behavior, and damages experts in addition to any scientific experts engaged.  At trial, this litigation would undoubtedly ripen into a fierce "battle of the experts."

At minimum, absent settlement, this litigation would likely continue for years before Plaintiffs or the Class would see any recovery.  This fact is exemplified by the initial settlement and subsequent appeal, which have already significantly extended this litigation.  That a settlement would eliminate the delay and expenses strongly weighs in favor of approval.  *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y 1984).  This is particularly true in a case like this, where Class Member addresses are not known, forcing Class Members to

00057068

BLOOD HURST & O'REARDON, LLP

1  claim in to receive payment. The more time that goes by, the more difficult it is

2  to both identify class members and cause them to participate in any resolution.

3  By reaching this Settlement, the Parties will avoid protracted litigation and

4  will establish a means for prompt resolution of Class Members' claims. The

5  avenue of relief provided by the Settlement ensures meaningful benefits to Class

6  Members. Given the alternative of long and complex litigation before this Court,

7  the risks involved in such litigation and the possibility of further appellate

8  litigation, the availability of prompt relief under the Settlement is highly

9  beneficial to the Class.

10  **C.**  **The Substantial Relief Provided by the Settlement Agreement**

11     **Favors Preliminary Approval**

12  The proposed settlement also meets the standard for preliminary approval

13  because it specifically addresses the alleged deceptive practices and provides

14  carefully-tailored economic benefits to all Class members who submit valid

15  claims. The cash payment of $5 per box represents the approximate full

16  purchase price of the Product. Given the limited Class Period, the three box limit

17  per Class member is reasonable. Finally, if Settlement Funds remain, each

18  Claimant will have their cash award increased up to three times. The settlement

19  benefits are generous.

20  Nevertheless, in evaluating the fairness of the consideration offered in

21  settlement, it is not the role of the court to second-guess the negotiated resolution

22  of the parties. "'[T]he court's intrusion upon what is otherwise a private

23  consensual agreement negotiated between the parties to a lawsuit must be limited

24  to the extent necessary to reach a reasoned judgment that the agreement is not the

25  product of fraud or overreaching by, or collusion between, the negotiating

26  parties, and that the settlement, taken as a whole, is fair, reasonable and adequate

27  to all concerned.'" *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688

28  F.2d at 625); *accord Rodriguez*, 563 F.3d at 965. The issue is not whether the

settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

### D. The Experience and Views of Counsel Favor Preliminary Approval

Plaintiffs' Counsel began investigating the alleged deceptive advertising in 2009 by obtaining publically available information. The Parties have also exchanged written discovery and informal discovery in the course of two rounds of settlement negotiations. Equipped with this information, the Parties were able to make a clear assessment of their claims and the likelihood of success on the merits. "In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Gardner v. GC Services, LP*, No. 10cv0997-IEG (CAB), 2012 U.S. Dist. LEXIS 47034, at *12 (S.D. Cal. Apr. 2, 2012) (internal quotes and citations omitted).

Furthermore, Class Counsel have substantial experience in litigating class actions are uniquely qualified to evaluate the fairness of the proposed Settlement. Courts recognize that the opinions of experienced counsel supporting a settlement, especially after vigorous arm's-length negotiations, are entitled to considerable weight. *White v. Experian Info. Solutions, Inc*., 803 F. Supp. 2d 1086, 1099 (C.D. Cal. 2011) ("The experience and views of counsel further support a finding that the Settlement is fair."); *True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010) (holding that class counsel's views that settlement was reasonable weighed in favor of settlement); *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18

00057068

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

(N.D. Cal. 1980) *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). In this litigation too, the experience and views of Class Counsel weigh in favor of final approval. Accordingly, the views and experience of Class Counsel who specialize in consumer fraud and false advertising class actions strongly favor preliminary approval.

### E. The Settlement Was Reached After Arms-Length Negotiations and Mediation

The Parties' arm's-length settlement negotiations and mediation with Judge Haden further demonstrates the fairness of the Settlement reached, and that the Settlement is not a product of collusion. The requirement that a settlement be fair is principally designed to protect against collusion among the parties. *See Hanlon*, 150 F.3d at 1026. But, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." *Newberg*, §11.41; *see also White*, 803 F. Supp. 2d at 1099.

Here, counsel for Defendant and Plaintiffs have negotiated this settlement on behalf of their clients' best interests, accounting for the Ninth Circuit's opinion and criticism of the *cy pres* component. Blood Decl., ¶__. The negotiations were facilitated by the mediation conducted by the Richard Haden of JAMS in San Diego, California. The fact that such an experienced mediator was heavily involved in the negotiation of the subject settlement is another factor that demonstrates the Settlement was anything but collusive. *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner."); *M.L. Stern Overtime Litig.*, 2009 U.S. Dist. LEXIS 31650, at *13 (granting

00057068

BLOOD HURST & O'REARDON, LLP

1  preliminary approval and stating that "the settlement was reached with the

2  supervision and assistance of an experienced and well-respected independent

3  mediator").

4      Beyond the substantial involvement and assistance of a highly-qualified

5  mediator, and the substantial benefits available for all Class Members, the nature

6  of the subsequent negotiations between the Parties, and the experience of Class

7  Counsel and Defendant's Counsel as longstanding class action attorneys, are all

8  illustrative of the arms-length negotiations that led to the Settlement.

9  Accordingly, the Settlement is well within the "range of possible approval" and

10  should thus be preliminarily approved.

11  **V.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED**

12      The settlement Class to be certified includes:

13  All persons or entities in the United States who purchased the
    Product during the Settlement Class Period.  The Settlement Class
14  Period is defined as: the period from January 28, 2008, up to and
    including October 1, 2009, the dates between which Defendant ran
15  its national advertising, marketing and promotional campaigns for
    Frosted Mini-Wheats relating to cognitive function.  Excluded from
16  the Class are Kellogg's employees, officers, directors, agents, and
    representatives and those who purchased the Product for the purpose
17  of re-sale.

18      This Court previously certified the same class for settlement purposes, and

19  that certification was not challenged.  For the same reasons it previously certified

20  a settlement class, it should do so again.

21      The Ninth Circuit recognizes the propriety of certifying a settlement Class

22  to resolve consumer protection lawsuits.  *Hanlon,* 150 F.3d at 1019.  When

23  presented with a proposed settlement, a court must first determine whether the

24  proposed settlement class satisfies the requirements for class certification under

25  Federal Rule of Civil Procedure 23.  *Id.*  But, in assessing those certification

26  requirements, a court may properly consider that there will be no trial.  *Amchem*

27  *Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request

28  for settlement-only class certification, a district court need not inquire whether

17    Case No. 3:09-CV-01786-IEG(WMC)

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Here, the conditional certification of the Settlement Class is appropriate for purposes of settlement because all the requirements of Rule 23 have been met.

**A.  The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a)**

Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  The Parties agree that each of these requirements is met.

**1.  Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc*., 255 F.R.D. 658, 664 (C.D. Cal. 2009).  Here, the numerosity requirement is readily met because joinder of absent class members would be exceedingly difficult. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  Kellogg is a nationwide manufacturer of foodstuffs, and Mini-Wheats® is among its most popular brands. Hundreds of thousands of purchases were made between January 28, 2008 through October 1, 2009. *Newberg*, §3.3 (Where "the exact size of the class is unknown, but general knowledge and common sense indicates that it is large, the numerosity requirement is satisfied.").  Accordingly, the numerosity requirement is met.

**2.  Commonality**

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . Their claims must depend upon a common contention . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Walmart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct.

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

2541, 2551 (2011). Still, "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *In re First Alliance Mortg. Co*., 471 F.3d 977, 990-91 (9th Cir. 2006). The commonality requirement is construed "permissively." *Hanlon*, 150 F.3d at 1019; *Wiener*, 255 F.R.D. at 664. This prerequisite is readily met in this case. To quote *Wiener*: "The proposed class members clearly share common legal issues regarding [Defendant's] alleged deception and misrepresentations in its advertising and promotion of the Products." 255 F.R.D. at 664-65; *see also Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 287 (C.D. Cal. 2011) (plaintiff's claims presented common, core issues of law and fact, including "whether General Mills communicated a representation [] that YoPlus promoted digestive health" and "whether YoPlus does confer a digestive health benefit that ordinary yogurt does not").

Here, Class members' claims necessarily involve common questions of law and fact. Plaintiffs' allegations focus on a singular advertising claim appearing on all of the Product labels during the class period. Whether the claim was true or false presents a common, salient issue sufficient to satisfy the Rule 23(a) commonality requirement. *See Weiner*, 255 F.R.D. at 664-65 ("The proposed class members clearly share common legal issues regarding Dannon's alleged deception and misrepresentations in its advertising . . . ."). Thus, whether Defendants' advertising claims are true or false will be resolved in one stroke.

### 3. Typicality

Rule 23(a)(3) typicality is satisfied where the Plaintiffs' claims are "reasonably co-extensive" with absent Class members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the

00057068

BLOOD HURST & O'REARDON, LLP

named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.* For example, in *Keilholtz v. Lennox Health Prods., Inc.*, No. C08-00836CV, 268 F.R.D. 330 (N.D. Cal. 2010), in certifying UCL and CLRA claims, the court found that the typicality requirement was satisfied because: "Plaintiffs' claims are all based on Defendants' sale of allegedly dangerous fireplaces without adequate warnings." *Id.* at 338.

Plaintiffs and Class members were all exposed to the same alleged misrepresentations on the labeling. Plaintiffs and Class members also seek relief for the same alleged conduct, *i.e.*, misrepresenting that "eating a bowl of Kellogg's® Frosted Mini-Wheats cereal for breakfast is clinically shown to improve attentiveness by nearly 20%." Plaintiffs' claims are identical to those of the Class. Therefore, the typicality requirement is met.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the Class. *See, e.g.*, *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Molski*, 318 F.3d at 955 (9th Cir. 2003); *Weiner*, 255 F.R.D. at 667.

The adequacy requirement is met here. First, the proposed Class Counsel are qualified and experienced in conducting class action litigation. *See* Blood Decl., Exs. 1-5. Further, proposed Class Counsel have thoroughly and efficiently identified and investigated the claims in this lawsuit and the facts that support those claims. They also successfully mediated the proposed Settlement. *See In*

00057068

*re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (a court evaluating adequacy of Counsels' representation may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself"). Second, there is no conflict of interest between Plaintiffs' interests and the interests of the Class members.

**B.      The Settlement Class Should Be Preliminarily Approved Under Federal Rule of Civil Procedure 23(b)(3)**

Plaintiffs seek certification of a settlement Class under Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their difference in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* §1777 (2d ed. 1986)). There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668. Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citations omitted and alterations in original); *Wiener*, 255 F.R.D. at 668.

**1.      Common Questions Predominate Over Individual Issues**

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*,

521 U.S. at 623. "Predominance is a test readily met in certain cases alleging consumer . . . fraud . . . ." *Id.* at 625. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Fed. Prac. & Proc.*, §1778; *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that commonality and typicality tend to merge).

The predominance requirement is satisfied here. Plaintiffs allege that the Class members are entitled to the same legal remedies based on the same alleged wrongdoing – exposure to the same alleged misrepresentation. The central issues for every claimant are 1) whether Kellogg had substantiation for its claim that "eating a bowl of Kellogg's® Frosted Mini-Wheats cereal for breakfast is clinically shown to improve attentiveness by nearly 20%," and 2) whether that misrepresentation was likely to deceive a reasonable consumer. *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012). These issues predominate and are the "heart of the litigation" because they would be decided in every trial brought by individual Class members and can be proven or disproven with the same evidence.

Under these circumstances, there is sufficient basis to find that the requirements of Rule 23(b)(3) are present. *See Weiner*, 255 F.R.D. at 669; *Hanlon*, 150 F.3d at 1022.

**2.  A Class Action is the Superior Method to Settle This Controversy**

Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class

00057068

BLOOD HURST & O'REARDON, LLP

members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (citations omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the superiority requirement may be satisfied where granting class certification "will reduce litigation costs and promote greater efficiency").

Application of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure for this Settlement. The amount of damage to which an individual class member would be entitled is not large. *Zinser*, 253 F.3d at 1191; *Wiener* 255 F.R.D. at 671. It is neither economically feasible, nor judicially efficient, for the hundreds of thousands of Class members to pursue their claims against Kellogg on an individual basis. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023; *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971). Additionally, the fact of settlement eliminates any potential difficulties in managing the trial of this action as a class-action. When "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. As such, under the circumstances presented here, a class action is clearly superior to any other mechanism for adjudicating the case. The requirements of Rule 23(b)(3) are satisfied.

00057068

BLOOD HURST & O'REARDON, LLP

## VI. THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND CLASS NOTICE SHOULD BE APPROVED

The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the Class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are best left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575 (citing *Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery). The notice should also present information "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

The proposed Class Notice – collectively the long form Notice of Class Action Settlement and the Publication Notice – satisfies these content requirements. *See* Stipulation of Settlement, Exs. C (long form notice) and D (Publication Notice). The Class Notice is written in simple, straightforward language and includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class members can obtain settlement benefits; (4) an explanation of how Class members can exercise their right to opt-out or object to the settlement; (5) an explanation that any claims against Kellogg that could have been litigated in this

24

00057068

action will be released if the Class member does not opt out from the Settlement; (6) the name of Class Counsel and information regarding attorneys' fees and expenses, and Plaintiffs' incentive awards; (7) the Settlement Hearing date; (8) an explanation of eligibility for appearing at the Settlement Hearing; and (9) the Settlement Website and a toll free number where additional information can be obtained. Ex. C. The Class Notice also informs Class members that Plaintiffs' final approval brief and request for attorneys' fees will be filed prior to the objection deadline. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). Furthermore, Class Members who previously submitted a claim shall be sent a postcard notice stating the relief they will receive (without needing to take any further action) and where they can find out additional information about the settlement. Stipulation of Settlement §V.A.4.

Collectively, the Class Notice provides Class members with sufficient information to make an informed and intelligent decision about the settlement. As such, it satisfies the content requirements of Rule 23. *See In re Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation. . .entitled to participate, including the right to exclude themselves from the class"); *see also Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012) (enforcing judgment and settlement agreement in prior related action against plaintiff did not violate plaintiff's due process rights where plaintiff who was a party to the prior suit and was provided full notice of the release and covenant not to sue provisions of the settlement agreement and rejected opt out opportunity).

Additionally, the proposed dissemination of the Class Notice satisfies all due process requirements. These are small dollar, over-the-counter retail purchases, and there is no way to reasonably identify individual Class members. Because Kellogg does not sell the Products directly to consumers, Kellogg does

BLOOD HURST & O'REARDON, LLP

00057068

not have mailing addresses or other contact information for the members of the Class. Therefore, the Notice Program consists of publishing the Publication Notice in targeted sources that direct Class members to various methods of obtaining the Claim Form. Additionally, Class Notice will be available on the Settlement Website and will be provided to Class members who request it via the toll-free number established for this Settlement.

## VII. PLAINTIFFS SHOULD BE APPOINTED CLASS REPRESENTATIVES AND CLASS COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

The Parties also requests that the Court designate Plaintiffs Harry Dennis and John Koz as Class Representatives for the Settlement Class. As discussed above, Plaintiffs will fairly and adequately protect the interests of the Settlement Class.

Additionally, Rule 23(g)(1) requires the Court to appoint class counsel to represent the interests of the Class. *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 355 (N.D. Cal. 2005). The Parties respectfully request that Blood Hurst & O'Reardon, LLP ("BHO") be appointed Class Counsel for the Settlement Class. As set forth above, BHO is experienced and well equipped to vigorously, competently and efficiently represent the proposed Settlement Class. Accordingly, the Court should accordingly appoint Timothy G. Blood of BHO as Class Counsel.

## VIII. THE PROPOSED SCHEDULE OF EVENTS

Dates, such as the time to complete publication of the Class Notice or to opt-out or object, are based on when preliminary approval of the settlement is granted and when the final approval Settlement Hearing is set. The settlement-related dates calculated in accordance with the Stipulation of Settlement are as follows:

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

| Event | Date |
|---|---|
| Notice dissemination to the Class begins | Not later than 15 calendar days after entry of the Preliminary Approval Order |
| Notice dissemination substantially completed and to activate the Settlement Website | Not later than 60 days before the Final Approval Hearing |
| Last day for exclusions or objections to the Settlement | Postmarked no later than 30 days before the Final Approval Hearing |
| Parties to file briefs in support of final approval and in response to objections | Not later than 45 days before the Final Approval Hearing |
| Parties to file supplemental briefs in support of final approval and in response to objections. | Not later than 7 days prior to the Final Approval Hearing |
| First day Final Approval Hearing can be set | No earlier than 120 days after entry of Preliminary Approval Order |
| Last Day to Submit a Claim Form | 80 days after the date of the Settlement Hearing |

Accordingly, the Parties request that the Court schedule a Final Approval Hearing 120 days after granting preliminary approval, or as soon thereafter as the Court's schedule permits.

///

///

///

///

///

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

00057068

## IX. CONCLUSION

For the reasons set forth above, the Parties respectfully request the Court enter the [Proposed] Preliminary Approval Order: (1) certifying the Class; (2) designating Plaintiffs Dennis and Koz as representatives of the Class; (3) appointing Blood Hurst & O'Reardon as Class Counsel; (4) granting preliminary approval of the Settlement; (5) approving the proposed Class Notice plan; and (6) scheduling a final Settlement Hearing.

Respectfully submitted,

Dated: March 15, 2013

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD

By:      *s/ Timothy G. Blood*
          TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

PISCITELLI LAW FIRM
FRANK E. PISCITELLI, JR.
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/931-7000
frank@piscitellilaw.com

CLIMACO, WILCOX, PECA,
TARANTINO
  & GAROFOLI CO., L.P.A.
JOHN R. CLIMACO

PATRICK G. WARNER
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/621-8484
216/771-1632 (fax)
jrclim@climacolaw.com
pwarn@climacolaw.com

WHATLEY, DRAKE & KALLAS, LLC
PATRICK J. SHEEHAN
1540 Broadway, 37th Floor
New York, NY 10036
Telephone: 212/447-7070
212/447-7077 (fax)
psheehan@wdklaw.com

*Attorneys for Plaintiffs*

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

00057068

1      **CERTIFICATE OF SERVICE**

2      I hereby certify that on March 15, 2013, I electronically filed the foregoing

3 with the Clerk of the Court using the CM/ECF system which will send

4 notification of such filing to the e-mail addresses denoted on the Electronic Mail

5 Notice List, and I hereby certify that I have mailed the foregoing document or

6 paper via the United States Postal Service to the non-CF/ECF participants

7 indicated on the Electronic Mail Notice List.

8      I certify under penalty of perjury under the laws of the United States of

9 America that the foregoing is true and correct. Executed on March 15, 2013.

10

11                          *s/ Timothy G. Blood*
                          TIMOTHY G. BLOOD

12                           BLOOD HURST & O'REARDON, LLP
                          701 B Street, Suite 1700

13                           San Diego, CA 92101
                          Telephone: 619/338-1100

14                           619/338-1101 (fax)
                          tblood@bholaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      Case No. 3:09-CV-01786-IEG(WMC)

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT