**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| HARRY DENNIS and JON KOZ, individually and on behalf of those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> KELLOGG CO., <br><br> Defendant. | CASE:09-CV-1786-IEG (WMC) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL** <br><br> [Doc. No. 90] |
|---|---|

Before the Court is the Plaintiffs' unopposed motion for preliminary approval of class action settlement. [Doc. No. 90.] For the reasons and with the reservations below, the Court hereby **GRANTS** Plaintiffs' motion.

**BACKGROUND**

This consumer class action, which alleges Defendant Kellogg Company made false and unsubstantiated representations in its advertising and labeling of its Frosted Mini-Wheats products, originally settled with the approval of this Court on April 5, 2011. [*See* Doc. No. 49.] Under the original settlement, all claims[1] arising out of the challenged advertising were released in exchange for:

---

[1] The Amended Complaint alleges claims of unjust enrichment, and violation of California's Unfair Competition Law and Consumer Legal Remedies Act, and similar laws of other states. [*See* Doc. No. 22.]

- a $2.75 million cash fund for distribution to class members on a claims-made basis;

- Kellogg distributing, pursuant to the *cy pres* doctrine, $5.5 million of food products to charities to feed the indigent;

- Kellogg refraining from using the challenged representations in advertising for three years; and

- approximately $2 million in attorneys' fees and costs.

The original settlement's cash value thus totaled approximately $10.5 million. With attorney and claims administration fees and costs subtracted, the cash value to the class totaled approximately $8.5 million.

But on September 4, 2012, the Ninth Circuit reversed the final settlement approval order, vacated the judgment and award of attorneys' fees, and remanded for further proceedings, finding that the *cy pres* award under the terms of the original settlement failed to target the plaintiff class. *See Dennis v. Kellogg Company*, 697 F.3d 858, 869 (9th Cir. 2012). While the asserted claims concern fair competition and consumer protection, the *cy pres* award would benefit the indigent. The Ninth Circuit reasoned that "[t]his noble goal . . . has little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved." *Id*. at 866.

Thus, on remand, the parties renegotiated and, by the present motion for preliminary approval, propose a revised settlement. Under the revised settlement, all claims arising out of the challenged advertising are released in exchange for:

- a $4 million cash fund for distribution to class members on a claims-made basis, any remaining balance of which to be distributed equally, pursuant to the *cy pres* doctrine, among Consumers Union, Consumer Watchdog, and the Center for Science in the Public Interest; and

- Kellogg refraining from using the challenged representations in advertising for three years.

The revised settlement's cash value thus totals at most $4 million. Minus attorneys' fees of up to 25% plus costs as well as approximately $550,000 in claims notice and administration costs, the cash value to the class totals approximately $2-2.5 million.

///

///

## DISCUSSION

"Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation." *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *2 (S.D. Cal. Jan. 14, 2013) (citing *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). But because "[t]he class action device . . . is [] susceptible to abuse and carries with it certain inherent structural risks, . . . class actions may be settled only with the approval of the district court." *Officers for Justice*, 688 F.3d at 623; *see also* Fed. R. Civ. P. 23(e). "The primary concern . . . is the protection of those class members . . . whose rights may not have been given due regard by the negotiating parties." *Id.* at 624. "Once the named parties reach a settlement in a purported class action, they are always solidly in favor of their own proposal. There is no advocate to critique the proposal on behalf of absent class members." *Kakani v. Oracle Corp.*, 2007 WL 1793774, at *1 (N.D. Cal. June 19, 2007) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959-60 (9th Cir. 2003)). Given these risks and concerns, "[a]pproval . . . involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *National Rural Telecommunications Cooperative v. DIRECTTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

The present motion concerns the first step: preliminary approval. This "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice*, 688 F.2d at 625. And "[b]ecause class members will subsequently receive notice and have an opportunity to be heard on the settlement, th[e] Court need not review the settlement in detail at this juncture." *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, at *3 (S.D. Cal. April 13, 2009). Still, even at this preliminary stage, "a district court may not simply rubber stamp stipulated settlements." *Kakani*, 2007 WL 1793774, at *1. Moreover, "where, as here, class counsel negotiates a settlement agreement before the class is

even certified, courts must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Dennis v. Kellogg*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation omitted). Before preliminary approval may be granted, the Court must "ratify both the propriety of [] certification and the fairness of the settlement." *Staton*, 327 F.3d at 952.

## I. Propriety of Certification

Plaintiffs seek certification of a settlement class under Fed. R. Civ. R. 23(b)(3). "To obtain certification of a class action . . . under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s [] prerequisites of numerosity, commonality, typicality, and adequacy of representation, and must also establish that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1191 (2013) (internal citations omitted).

### A. Numerosity

To satisfy the numerosity requirement, a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "Joinder need not be impossible, as long as potential class members would suffer a strong litigation hardship or inconvenience if joinder were required." *Rannis v. Recchia*, 380 Fed. App'x. 646, 651 (9th Cir. May 27, 2010) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)). Nor is the requirement "tied to any fixed numerical threshold - it 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *Id.* (quoting *General Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). Here, although the exact class size is unknown, the putative class potentially covers hundreds of thousands of purchases of cereal nationwide. The Court finds it reasonable to infer that joinder is impracticable and thus that numerosity is preliminarily met. *See Newberg on Class*

*Actions* (2012), §3.13 ("a good-faith estimate of the class size is sufficient when the precise number of class members is not readily ascertainable.").

### B. Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (internal quotation omitted). This means "[t]heir claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Here, it appears that determination of whether the challenged cereal advertising is or is not misleading would resolve a central issue class-wide in one stroke. Thus, commonality is preliminarily met.

### C. Typicality

"The typicality prerequisite . . . is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(3)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* Here, Plaintiffs claims and defenses appear completely co-extensive with those of the putative class. Thus, typicality is preliminarily met.

### D. Adequacy

Adequacy requires "that 'the representative parties will fairly and adequately protect the interests of the class.'" *Id*. (quoting Fed. R. Civ. P. 23(a)(4)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* The Court recognizes class counsel's ample experience, and on the present record no sure conflicts of interest are readily apparent between named

plaintiffs, class counsel, and absent class members. But, as discussed below in regard to the purported fairness of the settlement, the Court is concerned that, as between the original settlement and the revised settlement proposed here, the value to absent class members decreased dramatically while the requested attorneys' fees and incentive awards appear unaffected. The Court cautions the parties that, left unresolved, these concerns could result in a finding of inadequacy. Nonetheless, at this permissive and preliminary stage, the Court finds adequacy met.

### E. Predominance

The predominance inquiry concerns whether "questions of law or fact common to the class will predominate over any questions affecting only individual members as the litigation progresses." *Amgen*, __U.S.__, 133 S. Ct. at 1195. "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, __ U.S. __, 131 S. Ct. 2179, 2184 (2011). Here, the asserted claims center on two objective questions: (1) the alleged falsity of Defendants' advertising claims; and (2) whether reasonable consumer would be deceived thereby. Because these questions are objective, they can be proven by evidence common to the class. And failure of proof on these common questions poses no risk that individual questions predominate. Accordingly, predominance is preliminarily met. *See Amgen*, __U.S.__, 133 S. Ct. at 1195.

### F. Superiority

Rule 23(b)(3) also requires that the Court consider whether "a class action [would be] 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Wolin v. Jaguar Land Rover North America, LLC*, 619 F.3d 1168, 1175 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)). "Generally, the factors relevant to assessing superiority include '(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the

litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)(A-D)). Here, individual actions do not appear to be economically feasible given the small amounts of each individual claim, and thus class treatment appears not only a superior, but perhaps the exclusive, method for adjudicating these claims. Accordingly, superiority is preliminarily met.

As all prerequisites are preliminarily met, the Court **GRANTS** preliminary certification of the proposed settlement class. This grant of certification and the Court's underlying preliminary findings may be reviewed at the final approval stage.

## II.     Fairness of the Settlement

The Court's "'role in reviewing the substance of [a] settlement is to ensure that it is 'fair, adequate, and free of collusion.'" *Lane v. Facebook*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998)). "In making this appraisal, courts have 'broad discretion' to consider a range of factors such as 'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Smith*, 2013 WL 163293, at *2. "The relative importance to be attached to any factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

But because the Court cannot fully assess many of these factors prior to notice and an opportunity for objection, the Court need not conduct a full settlement fairness appraisal before granting preliminary approval; rather, the proposed settlement need only fall within "the range of possible approval." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008). "Essentially, the court is only concerned

with whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Id.*

Here, the proposed settlement appears to fall within the range of possible approval, as it appears to be the product of arms-length negotiations by experienced counsel, was reached after considerable litigation and discovery into the asserted claims, and provides considerable cash recovery and injunctive relief.  And the Court is satisfied that the proposed *cy pres* recipients, each a well-established and well-regarded consumer protection organization, suffice under the Ninth Circuit's prescriptions.  *See Dennis*, 697 F.3d at 867 (stating that in this case, "appropriate *cy pres* recipients are not charities that feed the needy, but organizations dedicated to protecting consumers from, or redressing injuries caused by, false advertising.").

Still, several aspects of the settlement give the Court pause.  The cash value of the original settlement was over $10.5 million, of which $2 million was set aside for attorneys' fees and claims administration, thereby leaving approximately $8.5 million in value to the class.  That settlement was vacated by the Ninth Circuit and remanded for identification of a proper *cy pres* recipient.  Yet, the cash value of the revised settlement proposed is a mere $4 million, of which $1.5-2 million is still reserved for attorneys' fees and claims administration, leaving only $2-2.5 million is value to the class.  How did mere identification of proper *cy pres* recipients result in such a severe drop in the value of the class's claims?   How is it that the value to the class dropped approximately 75%, while requested attorneys' fees appear nearly constant?   These concerns are especially troubling given the Ninth Circuit previous admonishments to the parties over both illusory dollar values and excessive attorneys' fees.  *See, e.g.*, *Dennis*, 697 F.3d at 868 (finding the settlement valuation "unacceptably vague and possibly misleading" and noting that "[t]he issue of the valuation . . . must be examined with great care to eliminate the possibility that it serves only the 'self-interests' of the attorneys and the parties, and not the class.").

Notwithstanding these concerns, the Court finds that the settlement falls

within the range of possible approval, and therefore **GRANTS** preliminary approval. But the Court **ORDERS** the parties to fully address these concerns in their final approval briefing and at the final approval hearing.

## CONCLUSION

For the foregoing reasons, the **ORDERS** as follows:

**I.   THE SETTLEMENT CLASS IS PRELIMINARILY CERTIFIED**

1.   Pursuant to Federal Rules of Civil Procedure, Rule 23, and for settlement purposes only, the Court hereby preliminarily certifies this Litigation as a class action on behalf of the following Class:

> All persons or entities in the United States who purchased Frosted Mini-Wheats branded cereal from January 28, 2008, up to and including October 1, 2009.  Excluded from the Class are Kellogg's employees, officers, directors, agents, and representatives and those who purchased Frosted Mini-Wheats for the purpose of re-sale.

2.   With respect to the Class, the Court preliminarily finds the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been met, in that: (a) the Class is so numerous that joinder of all individual Class members in the Litigation is impracticable; (b) there are questions of law and fact common to the Class and those common questions of law and fact predominate over any individual questions; (c) the claims of the class representatives are typical of the claims of the Class; (d) the class representatives and Class Counsel will fairly and adequately represent the interests of the Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby appoints the Plaintiffs in the Litigation as class representatives of the Class.

4.   Having considered the factors set forth in Rule 23(g)(1) of the Federal Rules of Civil Procedure, the Court hereby appoints Class Counsel to represent the Class.

## II. THE SECOND STIPULATION IS PRELIMINARILY APPROVED AND FINAL APPROVAL SCHEDULE SET

5. The Court hereby preliminarily approves the Stipulation and the terms and conditions of settlement set forth therein, subject to further consideration at the Settlement Hearing described below.

6. The Court has conducted a preliminary assessment of the fairness, reasonableness, and adequacy of the Stipulation, and hereby finds that the settlement falls within the range of reasonableness meriting possible final approval. The Court therefore preliminarily approves the proposed settlement as set forth in the Stipulation.

7. Pursuant to of the Federal Rules of Civil Procedure, Rule 23(e) the Court will hold a final approval hearing (the "Settlement Hearing") on **Tuesday, July 30, 2013, at 10:30 a.m.**, in Courtroom 4D before the Honorable Irma E. Gonzalez, United States District Court for the Southern District of California, 221 West Broadway, San Diego, CA 92101, for the following purposes:

(a) finally determining whether the Class meets all applicable requirements of Federal Rules of Civil Procedure, Rule 23 and, thus, the Class claims should be certified for purposes of effectuating the settlement; determining whether the proposed settlement of the Litigation on the terms and conditions provided for in the Agreement is fair, reasonable and adequate and should be approved by the Court;

(b) considering the application of Class Counsel for a Fee and Expense Award as provided for under the Stipulation;

(c) considering the application of Plaintiffs for incentive awards for serving as class representatives, as provided for under the Stipulation;

(d) considering whether the Court should enter the [Proposed] Judgment, Final Order and Decree;

(e) whether the release by the Settlement Class Members of the Released Claims as set forth in the Stipulation should be provided; and

(f) ruling upon such other matters as the Court may deem just and appropriate.

8. The Court may adjourn the Settlement Hearing and later reconvene such hearing without further notice to the Settlement Class Members.

9. The Parties may further modify the Stipulation prior to the Settlement Hearing so long as such modifications do not materially change the terms of the settlement provided thereunder. The Court may approve the Stipulation with such modifications as may be agreed to by the Parties, if appropriate, without further notice to Settlement Class Members.

10. Class members must file and serve any objections to the proposed settlement **no later than thirty (30) days prior to the Settlement Hearing**, including any memorandum and/or submissions in support of said objection, which deadline will be set forth in the Class Notice.

11. Opening papers in support of the Settlement and any application for a Fee and Expense Award and/or class representative incentive awards must be filed with the Court and served **at least forty-five (45) days prior to the Settlement Hearing**.

## III. THE COURT APPROVES THE FORM AND METHOD OF CLASS NOTICE

12. The Court approves, as to form and content, the proposed Notice of Class Action Settlement and Publication Notice (collectively the "Class Notice"), which are exhibits A and B, respectively, to this Order.

13. The Court finds that the distribution of Class Notice substantially in the manner and form set forth in 15-16 of this Order and the Second Stipulation of Settlement meet the requirements of Federal Rules of Civil Procedure, Rule 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

14. The Court approves the designation of Garden City Group, Inc., to serve as the Court-appointed Class Action Settlement Administrator for the settlement. The Class Action Settlement Administrator shall disseminate Class Notice and supervise and carry out the notice procedure, the processing of claims, and other administrative functions, and shall respond to Class member inquiries, as set forth in the Stipulation and this Order under the direction and supervision of the Court.

15. The Court directs the Class Action Settlement Administrator to establish a Settlement Website, making available copies of this Order, Class Notice, Claim Forms that may be downloaded and submitted online or by mail, the Stipulation and all Exhibits thereto, frequently asked questions, a toll-free hotline, and such other information as may be of assistance to Class members or required under the Stipulation. The Claim Form shall be made available to Class members through the Settlement Website and on the websites of Class Counsel, at their options, no later than the Notice Date as defined below, and continuously thereafter through the Claim-In Period.

16. The Class Action Settlement Administrator is ordered to provide Class Notice **no later than sixty (60) days before the Settlement Hearing** (the "Notice Date").

17.     The costs of the Class Notice, processing of claims, creating and maintaining the Settlement Website, and all other Class Action Settlement Administrator and Class Notice expenses shall be paid out of the Settlement Fund in accordance with the applicable provisions of the Stipulation.

## IV.     PROCEDURE FOR CLASS MEMBERS TO PARTICIPATE IN THE SETTLEMENT

18.     All Settlement Class Members shall be bound by all determinations and judgments in the Litigation concerning the settlement, whether favorable or unfavorable to the Class.

19.     The Court approves the Parties' proposed form of the Claim Form. Any Class member who wishes to receive money from the settlement shall complete a Claim Form in accordance with the instructions contained therein and submit it to the Class Action Settlement Administrator no later than eighty (80) days after the date the Court enters the Judgment ("Claim-In Period").  Such deadline may be further extended without notice to the Class by Court order.  Settlement Class Members who previously submitted a claim for payment in response to the Notice that ran after the District Court's entry of the Order Granting Final Approval of the Stipulation of Settlement on April 5, 2011 (ECF No. 49) do not need to resubmit a Claim Form in order to be eligible for and to receive a cash payment.

20.     The Class Action Settlement Administrator shall have the authority to accept or reject claims in accordance with the Stipulation, including the Claims Administration Protocols.

21.     The Class Action Settlement Administrator shall send payment to eligible Settlement Class Members or, as applicable, a letter explaining the rejection of the claim, within 30 days of the Effective Date or 30 days from the close of the Claim-In Period, whichever is later.

22.     Any Class member may enter an appearance in the Litigation, at his or her own expense, individually or through counsel.  All Class members who do not enter an appearance will be represented by Class Counsel.

## V.   PROCEDURE FOR REQUESTING EXCLUSION FROM THE CLASS

23.     Any Person falling within the definition of the Class may, upon his or her request, be excluded from the Class.  Any such Person must submit a completed request for exclusion to the Clerk of the Court postmarked or delivered no later than 30 days before the Settlement Hearing (the "Opt-Out and Objection Deadline"), as set forth in the Class Notice.  Requests for exclusion purportedly filed on behalf of groups of persons are prohibited and will be deemed to be void.

24.     Any Class member who does not send a completed, signed request for exclusion to the Clerk of the Court postmarked or delivered on or before the Opt-Out and Objection Deadline will be deemed to be a Settlement Class Member for all purposes and will be bound by all further orders of the Court in this Litigation and by the terms of the settlement, if finally approved by the Court.  The written request for exclusion must request exclusion from the Class, must be signed by the potential Settlement Class Member and include a statement indicating that the Person is a member of the Class.  All Persons who submit valid and timely requests for exclusion in the manner set forth in the Stipulation shall have no rights under the Stipulation and shall not be bound by the Stipulation or the Final Judgment and Order.

25.     A list reflecting all requests for exclusions shall be filed with the Court by Defendant at or before the Settlement Hearing.

## VI.  PROCEDURE FOR OBJECTING TO THE SETTLEMENT

26.     Any Class member who desires to object either to the settlement, Fee and Expense Award, or class representative incentive awards must timely file with

the Clerk of this Court and timely serve on the Parties' counsel by hand or first-class mail a notice of the objection(s) and proof of membership in the Class and the grounds for such objections, together with all papers that the Class member desires to submit to the Court **no later than thirty (30) days prior to the Settlement Hearing**. The Court will consider such objection(s) and papers only if such papers are received on or before the Opt-Out and Objection Deadline provided in the Class Notice, by the Clerk of the Court and by Class Counsel and Kellogg's counsel. Such papers must be sent to each of the following persons:

> Timothy G. Blood
> Blood Hurst & O'Reardon, LLP
> 701 B Street, Suite 1700
> San Diego, CA 92101
> Telephone: 619-338-1100

> Dean N. Panos
> Jenner & Block LLP
> 353 N. Clark Street
> Chicago, IL 60654-3456
> Telephone: 312-222-9350

27. All objections must include the name, address, and telephone number of the Class Member submitting the objection, and the submitting Class Member's signature. Each person submitting an objection must state whether he or she (or his or her attorney) intends to appear at the Settlement Hearing.

28. All objections must be filed with the Clerk and served on the Parties' counsel as set forth above no later than Opt-Out and Objection Deadline. Objections received after the Opt-Out and Objection Deadline will not be considered at the Settlement Hearing.

29. All objections must include a reference to *Dennis v. The Kellogg Company*, No. 3:09-CV-01786-IEG(WMC) (S.D. Cal.); the name of the Class member on whose behalf the objection is being submitted; and the Class member's

address and telephone number.  Attendance at the Settlement Hearing is not necessary; however, any Class member wishing to be heard orally with respect to approval of the settlement, the application for the Fee and Expense Award, or the application for class representative incentive awards, is required to provide written notice of their intention to appear at the Settlement Hearing no later than the Opt-Out and Objection Deadline as set forth in the Class Notice.  Class members who do not oppose the settlement, the applications for the Fee and Expense Award, or class representative incentive awards need not take any action to indicate their approval.  A Person's failure to submit a written objection in accordance with the Opt-Out and Objection Deadline and the procedure set forth in the Class Notice waives any right the Person may have to object to the settlement, Fee and Expense Award, or class representative incentive awards, or to appeal or seek other review of the Final Judgment and Order.

**IT IS SO ORDERED.**

**DATED:**   May 3, 2013

**IRMA E. GONZALEZ**
**United States District Judge**