Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
Email: tfrank@gmail.com
Voice: (703) 203-3848
*Attorney for Class Member M. Todd Henderson*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY DENNIS and JON KOZ, Individually and on behalf of those similarly situated,<br><br>         Plaintiffs,<br><br>―――――――――――――――――<br><br>KELLOGG CO.,<br><br>         Defendant. | Case No. 09-CV-1786-IEG (WMC)<br><br>**OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date:        September 9, 2013<br>Time:        10:30 a.m.<br>Courtroom:  4D<br>Judge:       Hon. Irma E. Gonzalez |

M. TODD HENDERSON,

         Objector.

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. II

TABLE OF AUTHORITIES ......................................................................................... III

INTRODUCTION .......................................................................................................... 1

I.  THE OBJECTOR IS A MEMBER OF THE CLASS. ...................................... 2

II. THE COURT HAS A FIDUCIARY DUTY TO THE UNREPRESENTED
    MEMBERS OF THIS CLASS. .......................................................................... 2

III. BECAUSE THE SETTLEMENT FUND WILL BE APPLIED TO PAY
     ADMINISTRATIVE COSTS, THE FEE REQUEST IS OUTSIZED RELATIVE
     TO THE CLASS'S EXPECTED RECOVERY. ................................................ 4

IV. HISTORY AND LODESTAR DO NOT SUPPORT THE FEE AWARD. .......... 7

V.  THE FEE REQUEST UNFAIRLY FREEZES OUT OBJECTORS
    RESPONSIBLE FOR THE BULK OF THE CLASS BENEFIT. ...................... 11

VI. RULE 23(H) NOTICE MUST DESCRIBE THE FEE DIVISION AMONG CLASS
    COUNSEL. ....................................................................................................... 13

VII. ONE OF THE *CY PRES* RECIPIENTS IS OBJECTIONABLE. ...................... 16

VIII. THE COURT SHOULD NOT INFER SETTLEMENT OR FEE APPROVAL
      FROM A LOW NUMBER OF OBJECTIONS. .................................................. 16

IX. THIS OBJECTION ARGUES THAT THE CLASS'S SHARE OF THE
    SETTLEMENT IS TOO SMALL, NOT THAT THE TOTAL VALUE OF THE
    SETTLEMENT IS TOO SMALL. ..................................................................... 18

X.  THE OBJECTION IS BROUGHT IN GOOD FAITH ..................................... 19

CONCLUSION ............................................................................................................ 21

**TABLE OF AUTHORITIES**

**Cases**

*In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987). ...................................14

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*,
52 F.R.D. 373 (D. Kan. 1971) ...................................................................................18

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) ........................................................3

*In re Baby Products Antitrust Lit.*, 708 F.3d 163 (3d Cir. 2013) ....................................5, 7

*Besinga v. United States*, 923 F.2d 133 (9th Cir. 1991) ......................................................5

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...........3-4, 6, 8, 19, 21

*Brown v. Stackler*, 612 F.2d 1057 (7th Cir. 1980) ..............................................................7

*Bruno v. Quten Research Inst., LLC*, No. SACV 11-00173 DOC(Ex), 2013 U.S.
Dist. LEXIS 35066 (C.D. Cal. Mar. 13, 2013) ..................................................... 9-10

*Chalmers v. Los Angeles*, 796 F.2d 1205 (9th Cir. 1986) ..................................................10

*In re Citigroup Inc Secs. Litig.*, 07 Civ 9901, 2013 U.S. Dist. LEXIS 108115 (S.D.N.Y.
Aug. 1, 2013) ...........................................................................................................11

*In re Classmates.com Consolidated Litig.*, No. 09-cv-0045-RAJ (W.D. Wash 2011) ...............7, 20

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602
(9th Cir. 1997) ............................................................................................................8

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ........................17

*In re Critical Path, Inc., Sec. Litig.*, No. C 01-00551 WHA, 2002 WL 32627559, 2002 U.S.
Dist. LEXIS 26399 (N.D. Cal. Jun. 18, 2002) .........................................................14

*Cunningham v. County of Los Angeles,* 879 F.2d 481 (9th Cir. 1988) ................................7

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) .................................................1, 3-5, 7, 14

*Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401 (9th Cir. 1989). ...........................3

*In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143 (3d Cir. 2005) .....................................15

*Drazin v. Horizon Blue Cross Blue Shield of N.J. Inc.,* No. 06-6219, 2011 U.S. Dist.
LEXIS 148751 (D. N.J. Dec. 28, 2011) ............................................................... 10-11

*In re Dry Max Pampers Litig.* – F.3d -- (6th Cir. Aug. 2, 2013) ..........................................2-3, 19

*Duhaime v. John Hancock Mut. Life Ins. Co.,*989 F. Supp. 375 (D. Mass. 1997)..........................12

*Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439 (W.D. Pa. 2007) ................................. 17-18

*Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-cv-1992 AJB (MDD), 2013 U.S. Dist. LEXIS 14105 (S.D. Cal. Feb. 1, 2013) ......................................................... 10

*In re Gen. Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106 (7th Cir. 1979) ................. 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F. 3d 768 (3d. Cir. 1995) ............................................................................. 17-18

*Gonzalez v. S. Wine & Spirits of Am., Inc.*, No. 11-cv-5849, 2012 U.S. Dist. LEXIS 46401 (C.D. Cal. Mar. 29, 2012) ........................................................... 9

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001) ....................................... 17

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) ................................................. 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................................... 3

*Hecht v. United Collection Bureau*, 691 F.3d 218 (2d. Cir. 2012) .............................................. 5

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................................ 8, 10

*In re Heritage Bond Litig.*, 02-ML-1375 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. Jun. 10, 2011) .................................................................................... 10

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008) ............... 14-15

*In re Horizon/CMS Healthcare Corp. Secs. Litig.*, 3 F. Supp. 2d 1208 (D.N.M. 1998) ................. 12

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ............................................. 3, 6, 21

*Hubbard v. Donahoe*, No. 03-1062 (RJL), 2013 U.S. Dist. LEXIS 107096 (D.D.C. Jul. 31, 2013) ................................................................................. 5

*Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011) ................................................................. 7

*Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 623 (9th Cir. 1993) ........................................... 9

*Ko v. Natura Pet Prods., Inc.*, C 09-02619 SBA, 2012 WL 3945541 (N.D. Cal. Sept. 10, 2012) ........................................................................................... 10

*L.A. Gay & Lesbian Cmty. Servs. Ctr. v. IRS*, 559 F. Supp. 2d 1055 (C.D. Cal. 2008) ............................................................................................. 8

*Lane v. Wells Fargo Bank, N.A.*, No. C. 12-04026 WHA, 2013 U.S. Dist. LEXIS 87669 (N.D. Cal. Jun. 21, 2013) ................................................................... 10

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) ............................................................................. 11

*In re LivingSocial Mktg. and Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40049 (D.D.C. Mar. 22, 2013) ........................... 8

*Lobatz Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) ...................... 12

*MacDougal v. Catalyst Nightclub*, 58 F. Supp. 2d 1101 (N.D. Cal. 1999) ....................... 11

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) ....................................................................................... 18

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ....................... 2, 13

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ....................................................... 3

*Nachshin v. AOL LLC*, 663 F.3d 1034 (9th Cir. 2011) ................................................. 21

*Nguyen v. BMW of N. Am. LLC,* No. C 10-02257 SI, 2012 U.S. Dist. LEXIS 56018 (N.D. Cal. Apr. 20, 2012) ................................................................. 10

*Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 561, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986) ...................................................................... 8

*Perdue v. Kenny A*, 130 S. Ct. 1662 (2010) ........................................................... 9

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) ................................... 9

*Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292 (M.D. Pa. 1995) ...................... 17

*Planned Parenthood v. AG*, 297 F.3d 253 (3d Cir. 2002) ........................................... 8

*In re Prudential Ins. Co. of Am.*, 273 F. Supp. 2d 563 (D. N.J. 2003), *aff'd* 103 Fed. Appx. 695 (3d Cir. 2004) ................................................................... 12

*In re Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) ........... 6

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ................................................. 11

*Silber v. Mabon,* 957 F.2d 697 (9th Cir. 1992) ..................................................... 3

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ................... 14

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). ............................................ 3-4, 19

*Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998) ......................... 14

*In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418 (N.D. Cal. 2009) ....................... 6

*True v. American Honda Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ................................ 3

*Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir. 1998) .................................... 5

*Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983) ............................................ 11

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 Fed. Appx. 496 (6th Cir. 2011) ................ 9

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002) ....................................... 4

*Vought v. Bank of Am.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012) .................................. 17-18

*In re Wash. Pub. Power Supply Sys. Secs. Litig.,* 19 F.3d 1291 (9th Cir. 1994) ................. 2, 4, 11

*Weeks v. Kellogg Co.*, No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) ................................................................................................ 9

*In re Wells Fargo Loan Processor Overtime Pay Litig.,* 2011 U.S. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) ................................................................................................ 5

*Williams v. MGM Pathe Communs. Co.*, 219 F.3d 1026 (9th Cir. 1997) ........................... 7

*Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115 (D.D.C. 2012) ............................... 9

## **Rules and Statutes**

42 U.S.C. § 1988 .................................................................................................... 9

Fed. R. Civ. Proc. 23(a) ......................................................................................... 4

Fed. R. Civ. Proc. 23(e) .................................................................................... 4, 14

Fed. R. Civ. Proc. 23(h) ................................................................... 2, 9, 13-16

Notes of Advisory Committee on 2003 Amendments to Rule 23 ......................... 6, 13, 15

## **Other Authorities**

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05, comment a ......................................................................................... 18

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(c) (2010) ................................................................................................. 3

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.13 (2010) ...................................................................................................... 6

Barr, Bob, "Scientific Research Ruse," *Washington Times* (Oct. 8, 2010) ..................... 16

Brunet, Edward, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403 (2003) ............................................... 20

Eisenberg, Theodore & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529 (2004) ................. 18

Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2008) ............ 6

Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) .............................................................................................. 12, 21

Gallup News Service, *Public Balks at Obesity Lawsuits* (Jul. 21, 2003) ......................... 16

Jeffrey Jacobson, *Lessons From CCAF On Designing Class Action Settlements*, Law360 (Aug. 6, 2013) ...................................................................................... 20

Karlsgodt, Paul & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: Class Action Litig. Report (Aug. 12, 2011) ...................20

Lahav, Alexandra, *Fundamental Principles for Class Action Governance,* 37 IND. L. REV. 65 (2003)..................................................................................................................13

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71 (2007) ............................................17

Newberg, Herbert & Alba Conte, 4 Newberg on Class Actions § 13:20 (4th ed. 2009).............................................................................................................................3

Olson, Walter, "McDonald's suit over Happy Meal toys by California mom Monet Parham new low in responsible parenting," *New York Daily News* (December 15, 2010) ............................................................................................16

Report of the Third Circuit Task Force, *Court Awarded Attorneys Fees*, 108 F.R.D. 237 (1985) ...........................................................................................................

Zabcik, Brian, *Conscientious Objector*, AM. LAWYER (Spring 2013) ...............................20

# INTRODUCTION

In its Preliminary Approval Order ("PAO," Dkt. 95), the Court expressed puzzlement and concerns that "the value to absent class members decreased dramatically while the requested attorneys' fees and incentive awards appear unaffected." PAO at 8. Something is indeed awry here, but the problem is not precisely that pinpointed by the Court. Rather, it is the realization of the Ninth Circuit's fears that the initial settlement value was illusory, that it "serve[d] only the self-interests of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that [wa]s fictitious" *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012). And nevertheless, despite fighting tooth-and-nail for two long years in support of a "paper tiger"[1] settlement that would have awarded $2 million dollars to them and a mere $800,000 to their clients, class counsel now seek to be rewarded with a 32% fee award—$1 million of a net $3.1 million settlement fund—well above benchmark.

This request approaches the land of the "clearly excessive." *Id.* at 868 (38.9% attorney award would be clearly excessive). An outsized percentage might be appropriate if class counsel had taken unusual time-consuming risk, such as prosecuting a case through class-certification, summary judgment motions, and trial. But no, all they've achieved is an ordinary low-value claims-made settlement after a hit-and-run complaint that comes with an oversized hefty administrative costs bill. Yet somehow class counsel is requesting 32% of the available settlement fund even after proposing an inadequate first settlement.

The settlement shortchanges the parties and attorneys who actually achieved benefit for the class. The class would have received only $800,000 if not for the efforts of two objectors and their counsel who successfully fought the case all the way to the Ninth Circuit. A majority of the class benefit—$1.3 million of the $2.1 million the class will receive—is attributable to the objectors. Yet 100% of the attorneys' fees go to the attorneys who argued that the class should receive less, rather than more. This is inequitable; the class should not be charged twice because class counsel tried to shortchange them. Attorneys' fees for the

---

[1] *Id.* at 868.

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

objectors proportional to their success should be deducted from the class counsel's fee request.

This is not an objection that the settling parties have colluded; this is not an objection that the total value of the settlement package is too small relative to the value of the litigation. It is an objection that the class counsel has seized a disproportionate share of the recovery in violation of Rule 23(h) and Ninth Circuit law, and that the settlement impermissibly allows class counsel to divide up the fee.

## I. The Objector is a Member of the Class.

Objector M. Todd Henderson is a citizen of Illinois, and a professor of law at the University of Chicago. His address is 4941 South Kimbark Avenue, Chicago, IL 60615. His email address is Toddh@uchicago.edu and his telephone number is (773) 924-0785. During the class period, Henderson purchased at least three boxes of Kellogg's Frosted Mini-Wheats cereal. Declaration of M. Todd Henderson ¶4. He has submitted a claim form with claim number 00293762 and control number 5020516776. *Id.* at ¶5. Thus, he is a member of the class with standing to object.

In accordance with the Court's May 3 Preliminary Approval Order (Dkt. 95) ¶27, Mr. Henderson states that he intends to appear at the September 9, 2013 fairness hearing through his *pro bono* attorney Theodore H. Frank. Frank is a member of the bar of the Southern District of California. He wishes to discuss matters raised in this Objection. Henderson does not plan to call any witnesses at the fairness hearing, but reserves the right to make use of all documents entered on the docket by any settling party or objector; Henderson joins any objections not inconsistent with the objections he makes. Henderson also reserves the right to cross-examine any witnesses who testify at the hearing in support of final approval.

## II. The Court Has a Fiduciary Duty to the Unrepresented Members of This Class.

A district court must act as a "fiduciary for the class," "with a jealous regard" for the rights and interests of absent class members. *In re Mercury Interactive Corp.*, 618 F.3d 988, 994–95 (9th Cir. 2010) (internal quotation and citation omitted). *See generally In re Dry Max Pampers Litig.* – F.3d --, 2013 WL 3957060 (6th Cir. Aug. 2, 2013).

"Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon,* 957 F.2d 697, 701 (9th Cir. 1992). *Accord Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

"[W]here the court is '[c]onfronted with a request for settlement-only class certification,' the court must look to the factors 'designed to protect absentees.'" *Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir. 2003) (*quoting Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)). "[S]ettlements that take place prior to formal class certification require a higher standard of fairness." *Molski,* 318 F.3d at 953. "[P]re-certification settlement agreements require that we carefully review the entire settlement, paying special attention to 'terms of the agreement contain[ing] convincing indications that the incentives favoring pursuit of self-interest rather than the class's interest in fact influenced the outcome of the negotiations.'" *Dennis v. Kellogg Co.,* 697 F.3d 858, 867 (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003)). "These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1021 (9th Cir. 1998); *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011). "[B]ecause the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.,* 716 F.3d 1173, 1178  (9th Cir. 2013) (internal quotation omitted).

There should be no presumption in favor of settlement approval: "[t]he proponents of a settlement bear the burden of proving its fairness." *True v. Am. Honda Co.,* 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010) (citing 4 Newberg on Class Actions § 11:42 (4th ed. 2009)). *Accord* American Law Institute, Principles of the Law of Aggregate Litig. § 3.05(c) (2010) ("*ALI Principles*"); *Pampers,* 2013 WL 3957060 at *4. The settling parties ask this Court to assume the fairness of this settlement, but that is what they are obliged to prove.

While it is *necessary* that a settlement is at "arm's length" without express collusion

between the settling parties, it is not *sufficient*. "While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Bluetooth*, 654 F.3d at 948 (quoting *Staton*, 327 F.3d at 960). "Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052 (9th Cir. 2002) (quoting *In Re Wash. Pub. Power Supply Sys. Litig.,* 19 F.3d 1291 (9th Cir. 1994)). "Accordingly, fee applications must be closely scrutinized." *Vizcaino*, 290 F. 3d at 1052.

## III. Because the Settlement Fund Will Be Applied to Pay Administrative Costs, the Fee Request Is Outsized Relative to the Class's Expected Recovery.

"If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton*, 327 F.3d at 964; *accord Bluetooth*, 654 F.3d at 947. This is the case here, where 25% of the nominal settlement fund is being diverted to the defendant, but the settlement fund does not match the class's recovery. This court should not be beguiled by class counsel's attempt to conflate the *value* of the settlement to the class with the nominal size of the settlement fund. *See* Mem. in Support of Final Approval ("MFA") (Dkt. 101-1) at 44-45. The hard questions need to be asked: "[I]s [the settlement all that it appears to be? Are the assigned numbers real, or not?" *Dennis*, 697 F.3d at 868. The answer is that they are not.

The settlement creates a fund of $4 million—but immediately takes $600,000 off the table to cover prior administration costs from a settlement adjudged unfair by the Ninth Circuit, and estimates that a further $300,000 in cost will be taken out of the fund. MFA at

17; *accord* Declaration of Jennifer M. Keough (Dkt. 101-3) at ¶¶ 23-24.[2] As the Third Circuit recently noted, class members are "not indifferent" whether settlement funds go to class members or to *cy pres* recipients. *In re Baby Products Antitrust Lit.*, 708 F.3d 163, 178 (3d Cir. 2013). If class members prefer cash in their pockets to cash to charity, they surely prefer cash in their pockets to cash provided to a highly profitable settlement administrator. *See, e.g., In re Wells Fargo Sec. Litig.*, 157 F.R.D. 467, 470-72 (N.D. Cal. 1994) (class cares about minimizing expenses). Any other conclusion would imply that class members would be just as happy with a gold-plated settlement administration that extracted $3 million from the $4 million settlement fund as one that efficiently cost only $200,000; any other conclusion awards class counsel a commission on moneys paid to the settlement administrator and gives class counsel no incentive to ensure that the class is maximizing its recovery.[3]

---

[2] It's worth noting the administrative costs of a single settlement administration only amounted to $391,500. *Dennis*, 697 F.3d at 863. The decision to negotiate for and fight for an unfair settlement cost the class two years' delay and $500,000. It is also worth noting that $391,500 isn't very efficient in its own right. *E.g., Hubbard v. Donahoe*, No. 03-1062 (RJL), 2013 U.S. Dist. LEXIS 107096, *15 (D.D.C. Jul. 31, 2013) (discussing how class counsel was able to negotiate for "an absolute cap on administration costs of $110,000"). Class counsel should foot their share of the bill for this needless added expenses of premium rates and delays rather than charging the whole amount to the class.

[3] The cost of notice cannot be considered a class benefit. Notice benefits the *defendant*, because constitutionally adequate notice is a prerequisite for the defendant to receive the only consideration offered by the settlement: the waiver and release of class members' claims. *See e.g., Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) (reversing dismissal of plaintiff's case because no notice was given in prior class action) (citing cases); *Hecht v. United Collection Bureau*, 691 F.3d 218 (2d. Cir. 2012) (permitting relitigation of class action because of inadequacy of class notice in previous settlement); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226-29 (11th Cir. 1998) (same).

Notice enables class members to make claims, but those amounts claimed are already included in the final tabulation of settlement value, there is no need for double-counting by including the costs of the notice in addition to its yield. As such, the expense of class notice should not be counted as a benefit on the class's side of the ledger. Refusing to count notice costs is just one instantiation of this Circuit's general principle that costs imposed on the

The percentage-of-recovery approach is supposed to be percentage of *recovery*, not the percentage of a *fund*. The proper evaluation of the settlement is what the class *actually receives*. *See* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("it may be appropriate to defer some portion of the fee award until *actual payouts* to class members are known" (emphasis added)); *id.* ("fundamental focus is the result *actually achieved* for class members" (emphasis added); *id.* (*citing* 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6) (fee award should not exceed a "reasonable percentage of the amount of any damages and prejudgment interest *actually paid* to the class" (emphasis added))). *See also ALI Principles* § 3.13; Federal Judicial Center, *Manual for Complex Litigation (Fourth)* §21.71(2004) ("the fee awards should be based only on the benefits actually delivered."). "[N]umerous courts have concluded that the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed." *In re Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283, 338 (3d Cir. 1998). The "key consideration in determining a fee award is reasonableness in light of the benefit *actually achieved*." *HP Inkjet*, 716 F.3d at 1177 (9th Cir. 2013) (emphasis added) (internal citation and quotation omitted). If the court applies the 25% benchmark,[4] attorney's fees would be in the neighborhood of $750,000, rather than $1,000,000.

This Court should not be deceived by class counsel's attempt to conflate the *value* of the settlement with the nominal size of the settlement fund. *See* Mem. in Support of Final Approval at 44-45.

---

defendant—divorced from class benefits—are not the measure of compensable class value. *See Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class.") (quoting *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)).

[4] To be sure, the circumstances of this case and settlement counsel deviating downward from the 25% benchmark. *See infra* §§ IV, V, VI.

# IV. History and Lodestar Do Not Support the Fee Award.

> "[I]f the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful."
> [*Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).]

It is appropriate to reduce the fee award in light of the wholly inadequate first proposed settlement, and the audacity to propose a still inadequate second settlement. *See In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *20 (W.D. Wash. Jun. 15, 2012) ("[C]lass counsel cannot satisfy its duty to the class by ignoring the weaknesses in the settlements it negotiated."); *id.* at *23 (reducing fee to less than 20% of the common fund to "reflect[] that counsel should not benefit from its efforts to win approval of an inadequate settlement."). Such a reduction is in line with the instruction of *Baby Products* to reduce compensation where "counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class." 708 F.3d at 178-79 (citing, *inter alia Dennis*, 697 F.3d at 867-68; *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)). It would serve the public policy purpose of incentivizing future class counsel to not wait for objections and appellate decisions before negotiating a settlement that benefits the class.

Both the skill and efficiency of class counsel are relevant considerations in adjusting counsel's fee award. *E.g. Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *Cunningham v. County of Los Angeles,* 879 F.2d 481, 485 (9th Cir. 1988) (denoting "skill and efficiency" as a "factor[] that may justify a gap between the hours actually spent and the number of hours deemed reasonable."); *see also Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) (collecting cases from around the country holding that "settlement negotiations may be considered by the district court as a factor in determining a fee award."). Neither consideration favors an upward deviation when class counsel precipitated a two year delay by

promoting—and then defending on appeal—an untenable settlement.[5] For half of the four years that this case has been pending, it has been in a holding pattern where no beneficial work toward resolution was done by either of the settling parties. Far from receiving 7% more than the Ninth Circuit's 25% benchmark, class counsel should receive less. *See In re LivingSocial Mktg. and Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40049, at *51, *65-*66 (D.D.C. Mar. 22, 2013) (reducing fee award to 18% where class counsel "attempt[ed] to disguise the size of their fee request" by "dubious" inflated valuation of the settlement value.).

Relatedly, when the court conducts its recommended lodestar crosscheck, *see Bluetooth*, 654 F.3d at 944-45, it should exclude all hours related to the defense of the original settlement—from first joint motion for settlement in September 2010 through the Ninth Circuit's decision in September 2012—because they did not benefit the class. *Planned Parenthood v. AG,* 297 F.3d 253, 266 (3d Cir. 2002) ("For work to be included in the calculation of reasonable attorneys' fees, the work must be 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'") (quoting *Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 561, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986)); *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) (hours spent on non-beneficial pursuits should be excluded). "It is well-established that an award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefitted the fund - whether they tended to create, increase, protect or preserve the fund." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997) (internal quotation omitted) (affirming disallowance of hours that did not benefit the class). Thus, much of the alleged 1,940 hours and corresponding $975,526.25 lodestar accrued from the inception of this suit through July 24, 2013 (MFA at 47) are chimera, because many of those hours were spent

---

[5] The higher the hourly rate, the more skill and efficiency should be demanded. *See L.A. Gay & Lesbian Cmty. Servs. Ctr. v. IRS*, 559 F. Supp. 2d 1055, 1062 (C.D. Cal. 2008).

litigating against the class's interest in the Ninth Circuit and defending a bad settlement in this court.

Unfortunately, the wholesale lack of any specificity in the fee declaration submissions (Dkt. 101-2, 101-4, 101-5, 101-6, 101-7) prevents proper scrutiny into how high of a multiplier[6] class counsel are actually seeking. Although detailed timesheets are not required when the lodestar is used as a crosscheck, the submissions provided don't even contain a breakdown of task categories. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 623 (9th Cir. 1993) (records should demonstrate "whether the time devoted to particular tasks was reasonable and whether there was improper overlapping of hours"). Instead, all that is provided is a three column Name x Hours x Rate table.[7] Blood Decl. (Dkt. 101-2) at 9. Where billing

---

[6] The cases plaintiffs cite (MFA at 47) awarding large multipliers are obsolete, having been superseded by *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010). "[T]here is a strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Id.* at 1669. A lodestar enhancement is only justified in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 1674. *Kenny A*'s limitation on enhancements was made in the context of interpreting 42 U.S.C. § 1988's language of "reasonable" fee awards, but there's little justification for claiming that "reasonable" in § 1988 means something different than "reasonable" in class action fee awards made under Fed. R. Civ. P. 23(h). *See e.g.*, *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496, 500 (6th Cir. 2011); *Gonzalez v. S. Wine & Spirits of Am., Inc.*, No. 11-cv-5849,2012 U.S. Dist. LEXIS 46401, at *12-*16 (C.D. Cal. Mar. 29, 2012) (citing *Kenny A* and denying enhancement multiplier of 1.5); *Weeks v. Kellogg Co.*, No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472, at *129-*135 & n.157 (C.D. Cal. Nov. 23, 2011) (citing *Kenny A* and finding "little basis for an application of a multiplier" when calculating lodestar cross-check); *Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115, 130 (D.D.C. 2012) (rejecting argument attempting to confine *Kenny A* to federal statutory fee shifting awards); *cf. also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 361 (3d Cir. 2010) (Weis, J. concurring/dissenting) (referring to *Perdue* as an "analogous statutory fee-shifting case."). Each and every case cited by the plaintiffs that awarded a significant multiplier predates *Kenny A*.

[7] From this bare-bones table we can, however, deduce that BHO's blended rate ($540/hour) is well above average in this circuit. *See e.g, Bruno v. Quten Research Inst., LLC*, No. SACV 11-00173 DOC(Ex), 2013 U.S. Dist. LEXIS 35066, at *9 (C.D. Cal. Mar. 13, 2013)

records lack "sufficient detail to enable the Court to determine whether the hours billed were justified" reductions are in order. *Ko v. Natura Pet Prods., Inc.*, C 09-02619 SBA, 2012 WL 3945541, at *12-*13 (N.D. Cal. Sept. 10, 2012) (reducing by 28 percent); *see also Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("[H]ours may be reduced by the court where documentation of the hours is inadequate.") (citing *Hensley*).

Reductions are warranted to account for at least the following unanswered questions:

- How much of the lodestar time was spent defending on inadequate first settlement? This includes briefing on the initial motions for approval, seeking an appeal bond to squelch a meritorious appeal, and then defending the settlement in the Ninth Circuit.

- How much non-compensable duplication is there between tasks in the *Koz* and *Dennis* actions, between all five plaintiffs firms who submitted their lodestar? *See Hensley*, 461 U.S. at 434 (fees should exclude "hours that are excessive, redundant, or otherwise unnecessary"); *In re Heritage Bond Litig.*, 02-ML-1375 DT, 2005 WL 1594403, 2005 U.S. Dist. LEXIS 13555, at *82-*85 (C.D. Cal. Jun. 10, 2005) (denying fees to auxiliary state court counsel because "the result of the State Court Action was less funds available to compensate the class."); *Lane v. Wells Fargo Bank, N.A.*, No. C. 12-04026 WHA, 2013 U.S. Dist. LEXIS 87669, at *43 (N.D. Cal. Jun. 21, 2013) (finding use of four law firms "disturbing" and likely to beget a duplication of effort. "One firm is usually best for the class because it eliminates the inefficiency in keeping a multiplicity of law firms up to speed."). It does not "confer a benefit on the class" to incur

---

(class counsel's blended rate was $366.87/hr); *Nguyen v. BMW of N. Am. LLC*, No. C 10-02257 SI, 2012 U.S. Dist. LEXIS 56018 , at *9 (N.D. Cal. Apr. 20, 2012) (finding reasonable blended rate to be $470/hr); *see also Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-cv-1992 AJB (MDD), 2013 U.S. Dist. LEXIS 14105, at *33-*34 (S.D. Cal. Feb. 1, 2013) (finding Cooley LLP's blended rate of $447/hr to be "in line with that of the community" when compared to peers in Los Angeles, Silicon Valley, San Francisco, and San Diego).

litigation costs from two duplicative parallel cases. *Drazin v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 832 F. Supp. 2d 432, 443 (D.N.J. 2011), *aff'd* 2013 U.S. App. LEXIS 11830 (3d Cir. Jun. 11, 2013).

- Are any firms impermissibly seeking time spent on obtaining their fee award? *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1294, 1999 (hours spent on the fee award are non-compensable).

- How many hours were unreasonably expended after settlement was reached? *See In re Citigroup Inc Secs. Litig.*, 07 Civ. 9901, 2013 U.S. Dist. LEXIS 108115, at *59-*64 (S.D.N.Y. Aug. 1, 2013).

- How many hours were expended by expensive partners performing administrative or other lesser skill tasks? *See Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."). *Accord MacDougal v. Catalyst Nightclub*, 58 F. Supp. 2d 1101, 1106-07 (N.D. Cal. 1999) (holding that it was inappropriate for a senior attorney to bill $325 per hour for routine and clerical tasks.

"[T]he lodestar serves little purpose as a cross-check if it is accepted at face value." *Citigroup*, 2013 U.S. Dist. LEXIS 108115, at *52-*53. But here, class members and the Court have only the bald assertions of class counsel to rely upon. "[W]ithout some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates, the court cannot know the nature of the services for which compensation is sought." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166 (3d Cir. 1973). Ultimately, the lack of detail signals that something is amiss and that a fair lodestar calculation would not support the fee request.

## V. The Fee Request Unfairly Freezes Out Objectors Responsible for the Bulk of the Class Benefit.

The settlement shortchanges the parties and attorneys who actually achieved benefit for the class. The class would have received only $800,000 if not for the efforts of two

objectors and their counsel who successfully fought the case all the way to the Ninth Circuit. A majority of the class benefit—$1.3 million of the $2.1 million the class will receive—is attributable to the objectors. This entitles the objectors to attorneys' fees as a matter of law. *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012). Yet 100% of the attorneys' fees go to the attorneys who argued that the class should receive less, rather than more.

Moreover, this is inequitable; the class should not be charged twice because class counsel tried to shortchange them. Attorneys' fees for the objectors proportional to their success for the class should be deducted from the class counsel's fee request. *See, e.g., In re Prudential Ins. Co. of Am.*, 273 F. Supp. 2d 563, 573 (D. N.J. 2003), *aff'd* 103 Fed. Appx. 695, 697 (3d Cir. 2004) (awarding objector's attorneys' fees out of class counsel's fee award); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-817 (N.D. Ohio 2010) (same); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175, 176 (D. Mass. 1998) (same); *In re Horizon/CMS Healthcare Corp. Secs. Litig.*, 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998) (same).

Henderson proposes the following: of the $3.1 million in actual class benefit, a 25% benchmark of $775,000 be set aside for attorneys' fees, leaving $2,325,000 for the class. Class counsel gets full credit for the $800,000 they negotiated in the first settlement, and a $266,666.67 payment. For the remaining $1,525,000 attributable to the Ninth Circuit victory, the 25% fee should be split between class counsel and the objectors: $254,166.67 for the objectors, $254,166.66 for class counsel. The appropriate fee award then is at most $520,833.33 for class counsel (divided as discussed in Section VI below) and at least $254,166.67 for the objectors, who have improved the settlement between $1.4 and $1.525 million for the class compared to what class counsel told the Ninth Circuit it should affirm.

Scholars and class counsel often complain that "professional objectors" receive unfair payment for holding up settlements and negotiating *quid pro quo* withdrawal of objections. *E.g.*, Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) Had the objectors accepted $100,000 to dismiss their appeals (without having to go through the expense of briefing and argument), class counsel would have walked away with $1.9 million in excessive fees at the expense of the class, and no one would have ever known that there

was an unfair settlement. (It would've been rational for class counsel to pay that amount, because they had much more than a 10% chance of losing at the Ninth Circuit.) Instead, objectors nobly sacrificed a sure payday to achieve fairness for the class. Public policy demands that objectors earn more from taking the risk of a successful objection than from an unsuccessful objection if objectors are to be properly incentivized to work in the best interests of the class, and if class counsel is to be incentivized to negotiate fair settlements before objections occur.

## VI. Rule 23(h) Notice Must Describe the Fee Division Among Class Counsel.

Newly appended as part of the 2003 amendments to Fed. R. Civ. P. 23, subsection 23(h) recognizes that "[f]ee awards are a powerful influence on the way attorneys initiate, develop, and conclude" actions, and that "[b]ecause members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances." Advisory Committee Notes on 2003 Amendments to Rule 23.

The principle of disclosure through notice has been referred to as the "first and perhaps most important principle for class action governance." Alexandra Lahav, *Fundamental Principles for Class Action Governance*, 37 Ind. L. Rev. 65, 118 (2003). In its anticipation of settlement vetting by class members, the Ninth Circuit has adopted a rigorous standard for 23(h) notice. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010). It is not sufficient that class members are able to make "generalized arguments about the size of the total fee"; the notice must enable them to determine which attorneys seek what fees for what work. *Id.* at 991. The fee request in this case lacks basic information; it fails to provide even the bare bones of who seeks what. The Settlement Agreement, at § VIII.B, announces that "Class Counsel shall allocate and distribute the Court's Fee and Expense Award among Plaintiffs' Counsel." This extra-judicial award undermines Rule 23(h)'s policy of "ensur[ing] that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee." *Mercury Interactive*, 618 F.3d at 994. Just as 23(e) notice requirements would not be satisfied by breezily

informing the class that the allocation settlement proceeds would be discretionarily determined later, 23(h) notice does not permit class counsel to conduct an unreviewable partition of the fee award between lead counsel and non-lead counsel. *See Dennis*, 697 F.3d at 869 ("Just trust us…we'll tell you what it is later" is not an acceptable principle that comports with Rule 23(e) notice and review).

Before the adoption of Rule 23(h) in 2003, court oversight of the fee division was a best practice, even though it was not required. *Contrast In re Critical Path, Inc., Sec. Litig.*, No. C 01-00551 WHA, 2002 WL 32627559, 2002 U.S. Dist. LEXIS 26399, at *25 (N.D. Cal. Jun. 18, 2002) ("The attorneys have provided no indication as to how the overall fee would be divided between them. Given the respective work performed by the Berman and Bernstein firms, certain allocations could lead to an unreasonable fee for one firm or the other. The Court believes that the better practice, for future cases, is to disclose the exact allocation proposed between the firms. As this has not been done, given the risk of a disparate award this order will determine a reasonable allocation on its own") *with Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (not necessary for trial court to individuate the award).[8]

After Rule 23(h), however, court oversight is mandatory. As the Fifth Circuit recently noted: "In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008). The district court "must not … delegate that duty to the parties." *Id.* at 228 (quoting *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998)). The appellants in *High Sulfur* complained that the district court had

---

[8] Before 23(h), at least one circuit had rejected unfettered discretion to privately allocate the award, concluding that "[s]uch a division overlooks the district court's role as protector of class interests under Fed. R. Civ. P. 23(e) and its role of assuring reasonableness in awarding of fees in equitable under cases." *In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987).

sealed the fee allocation list, such that they could not compare their fee awards to those of other attorneys. The Fifth Circuit agreed: "One cannot compare apples to oranges without knowing what the oranges are." *High Sulfur*, 517 F.3d at 232.

That court also held that it was impermissible for the district court to defer to the allocation proposed by the attorneys themselves. "It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because 'counsel have inherent conflicts.' As Judge Ambro noted, 'They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?'" *Id.* at 234-35 (quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005). Furthermore, given the case at hand, the *High Sulfur* fee agreement is comparatively inoffensive: in *High Sulfur,* at least the district court judge had the fee committee's recommendation available. Here, not only is there no recommendation for the both the Court and class,[9] there isn't even an assurance that class counsel will determine a "fair and reasonable" allocation at some time in the future.

For example, perhaps one of the plaintiffs' law firms negotiated a side-deal with lead class counsel to accept less than its proportionate share of lodestar in exchange for being assured to participate in the fee award without a fight. If so, that benefit should redound to the class, rather than as a windfall to class counsel. This is especially true because the class

---

[9] The parties can certainly present a suggested allocation to the class and the Court. But what is not permissible is for the parties to divide up the spoils *ex post,* outside the view of the class and the public, purely according to the whim of lead counsel. This way, if an objecting class member thinks X attorney or X firm did a bad job and Y attorney did a particularly good job—maybe they had contacted the attorneys at some point during the proceeding—then they receive notice and can register their objection with the court. That is the proper procedure. Rule 23(h) is the product of the desire for greater oversight, transparency, and "active judicial involvement" in the awarding of fees and subsequent case law reflects that. Advisory Committee Notes on 2003 Amendments to Rule 23.

would have benefited from competition amongst class counsel to prove to the court that they would provide the best deal to the class; instead, they agreed to cut a deal amongst themselves. In any other context besides class-counsel selection, an agreement to stop competition would violate the antitrust laws because of the injury to consumers; the secret side deal here has also potentially injured consumers.

The violation of Rule 23(h) can and should be ameliorated by awarding each of the firms individual sums rather than allocating a lump sum to class counsel, and then enjoining them from redistribution.

## VII.   One of the *Cy Pres* Recipients Is Objectionable.

It appears from the existing claims that there will be no *cy pres* distribution. Henderson reserves the right to object to the Center for Science in the Public Interest as a *cy pres* recipient. CSPI is an activist group that takes positions offensive to a substantial portion (and likely even a substantial majority) of class members and to Henderson; they frequently bring meritless litigation against consumer choice.[10] A *cy pres* recipient should work in the interest of all class members, rather than an activist minority aligned with class counsel. The issue appears moot here because the settlement fund is small enough that it should be exhausted. But if this is not the case, Henderson requests the opportunity to supplement the record if the parties request to distribute any of the settlement fund to *cy pres* recipients.

## VIII.  The Court Should Not Infer Settlement or Fee Approval From a Low Number of Objections.

The plaintiffs have already argued (MFA at 30-31) that if only a small fraction of the class objects to the settlement, the silence of the rest of the class as such demonstrates the

---

[10] *E.g.,* Walter Olson, "McDonald's suit over Happy Meal toys by California mom Monet Parham new low in responsible parenting," *New York Daily News* (December 15, 2010); Bob Barr, "Scientific Research Ruse," *Washington Times* (Oct. 8, 2010). "[N]early 9 in 10 Americans (89%) oppose holding the fast-food industry legally responsible for the diet-related health problems of people who eat" fast food. Gallup News Service, *Public Balks at Obesity Lawsuits* (Jul. 21, 2003).

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

settlement is fair, reasonable, and adequate. This is an impoverished argument that has been refuted by several authorities.

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy, because objectors—unless they can obtain *pro bono* counsel—must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 Federal Judicial Center survey that found between 42% and 64% of settlements engendered no filings by objectors). Another common response from non-lawyers will be the affirmative avoidance, whenever possible, of anything involving a courtroom. Class counsel may argue that this understandable tendency to ignore notices or free-ride on the work of other objectors is best understood as acquiescence in or evidence of support for the settlement. This is wrong. Silence is simply *not* consent. *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001) (*citing GMC Pick-Up,* 55 F.3d at 789.). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

Without *pro bono* counsel to look out for the interests of the class, and without the incentive of a fee award proportionate to success, filing an objection is economically irrational for any individual. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *GMC Pick-Up*, 55 F.3d at 812 (*citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217–18 (5th Cir. 1981)); *accord Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 297 (M.D. Pa. 1995) ("'[T]he silence of the overwhelming majority does not necessarily indicate that the class as a

whole supports the proposed settlement . . . . "). "[A] low number of objectors is almost guaranteed by an opt-out regime, especially one in which the putative class members receive notice of the action and notice of the settlement offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680–681 (7th Cir. 1987). "Acquiescence to a bad deal is something quite different than affirmative support." *In re GMC Engine Interchange Litig.*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

When class members have little at stake, the rate of response will be predictably low. As such, the response from class members cannot be seen as something akin to an election or a public opinion poll. *See GMC Pick-Up*, 55 F.3d at 813 (finding that "class reaction factor" does not weigh in favor of approval, even when low number of objectors in large class, when "those who did object did so quite vociferously"); Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1561 (2004) ("Common sense dictates that apathy, not decision, is the basis for inaction."). It is typically not worth the average citizen's time or money to object: the slight likelihood that one additional objection will be decisive, when multiplied by the slight increase in an individual class member's payout that such an objection would produce, makes individually-funded objections a losing proposition.

The Court must act as a guardian for *all* class members—whether or not they have formally entered the case by registering an objection. "[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *GMC Pick-Up,* 55 F.3d at 812–13; *ALI Principles* § 3.05, *comment a* at 206; *Vought*, 901 F. Supp. 2d at 1093.

## IX. This Objection Argues That the Class's Share of the Settlement Is Too Small, Not That the Total Value of the Settlement Is Too Small.

It is worthwhile to distinguish this objection's arguments from the arguments it is *not* making.

This objection does not argue that the parties have undervalued the chances of recovery in litigation. The argument here is not that the total fund should be of greater magnitude; rather, the argument is that the parties are overstating the size of the total fund, and that a larger share of the settlement should have gone to the class, as opposed to the lawyers who are charged to represent them. If the class attorneys have permitted too much money to be directed to themselves and too few resources to go the class, then the settlement is unfair on the grounds of self-dealing. "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton,* 327 F. 3d at 964; *accord Bluetooth,* 654 F.3d at 947. The nature of class counsel's fees is an inherent and inseparable part of the settlement, and any evaluation of the settlement's fairness must include it: "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness … The settlement must stand or fall in its entirety." *Bluetooth,* 654 F. 3d at 948 (emphasis, quotations, and citations omitted). *See generally Pampers, supra.*

This objection also does not argue that the settlement is a product of collusion. However, demonstrating that a settlement lacks collusion does not thereby demonstrate that the settlement is flawless. Lack of collusion is *necessary* for settlement approval, but it is not *sufficient*. Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth,* 654 F.3d at 947. An objector need not demonstrate collusion to demonstrate an unfair settlement; all it takes to make a settlement unfair is a defendant's indifference to class counsel's self-dealing. *Staton,* 327 F.3d at 964. *Bluetooth's* distinction between collusion and impermissible self-dealing is at the heart

of this objection: when attorneys' fees are too large, this is evidence of self-dealing whether collusion is established or not.

## X.  The Objection Is Brought in Good Faith

Theodore Frank, founder of the non-profit Center for Class Action Fairness is representing Henderson *pro bono*. The Center's mission is to litigate on behalf of class members against unfair class-action procedures and settlements, and it has won millions of dollars for class members. *See, e.g.,* Jeffrey Jacobson, *Lessons From CCAF On Designing Class Action Settlements*, Law360 (Aug. 6, 2013) (calling Center's track record "impressive"); Brian Zabcik*, Conscientious Objector*, AM. LAWYER (Spring 2013), *available at* http://is.gd/alm_frank2013 (redirect); *Classmates.com Consol. Litig.*, 2012 U.S. Dist. LEXIS 83480, at *29 (noting that the Center's client "was relentless in his identification of the numerous ways in which the proposed settlements would have rewarded class counsel (and a *cy pres* charity) at the expense of class members" and "significantly influenced the court's decision to reject the first settlement and to insist on improvements to the second").

Because it has been the Center's experience that class action attorneys often employ *ad hominem* attacks in attempt to discredit objections, it is perhaps relevant to distinguish this objector's intentions from the agenda of those who are often styled "professional objectors." A "professional objector" is a specific legal term referring to for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not the Center's business model. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: Class Action Litig. Report (Aug. 12, 2011) (distinguishing the Center from professional objectors). While Frank has brought several objections to unfair class action settlements on behalf of himself and other clients, the majority of which have been

successful[11] he refuses to engage in *quid pro quo* settlements and does not extort attorneys; he has never withdrawn an objection in exchange for payment.

Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, Henderson is willing to stipulate to an injunction prohibiting himself and his attorneys from accepting compensation in exchange for the settlement of this objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem).

## CONCLUSION

As proposed, this second iteration settlement remains a settlement of the lawyers, by the lawyers and for the lawyers. But because of its common fund structure, it can be fixed if the Court embraces its supervisory role. The court should reduce the lump sum fee request so as to be commensurate with the class's recovery, counsel's true lodestar, the history of this case and this circuit's 25% benchmark; and then award each of the each co-counsel the share that the Court determines they deserve. Objectors' Ninth Circuit counsel are entitled to a fair share of this amount, and should be awarded a fair share of $254,166.67, deducted from class counsel's fee request.

Dated: August 9, 2013             Respectfully submitted,


                                  */s/ Theodore H. Frank*
                                  Theodore H. Frank (SBN 196332)
                                  1718 M Street NW, No. 236
                                  Washington, DC 20036
                                  tfrank@gmail.com
                                  (703) 203-3848

                                  *Attorney for Class Member M. Todd Henderson*

---

[11] The Center has won every appeal it has argued at the Ninth Circuit. *See HP Inkjet,* 716 F.3d 1173; *Bluetooth,* 654 F.3d 935; *Nachshin v. AOL LLC,* 663 F.3d 1034 (9th Cir. 2011).

OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system thus effectuating service of such filing all ECF registered attorneys in this case. I further certify that I caused the foregoing document to be sent via FedEx overnight delivery to the following participants at the addresses listed below:

Timothy G. Blood
Blood Hurst & O'Reardon, LLP
701 B Street, Suite 1700
San Diego, CA 92101

Dean N. Panos
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456

DATED this 9th day of August, 2013.

_(s) Theodore H. Frank_
Theodore H. Frank
