BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ 005425)
ELAINE A. RYAN (AZ 012870)
PATRICIA N. SYVERSON
    (CA 203111; AZ 020191)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

Attorneys for Plaintiffs

[Additional Counsel Appear on Signature Page.]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY DENNIS and JON KOZ, On Behalf of Themselves and All Other Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> KELLOGG COMPANY, a Delaware Corporation, <br><br> Defendant. | Case No.: 3:09-CV-01786-IEG(WMC) <br><br> CLASS ACTION <br><br> REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT <br><br> Date: September 9, 2013 <br> Time: 10:30 a.m. <br><br> Judge: Hon. Irma E. Gonzalez <br> Courtroom: 1, 4th Floor <br> Date Filed: August 17, 2009 <br> Trial Date: TBD |

BLOOD HURST & O'REARDON, LLP

# TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION ......................................................................................... 1

II. THE OBJECTIONS SHOULD BE OVERRULED ................................... 2

    A.    The Small Amount of Objectors Indicates the Settlement's Fairness ................................................................................................ 2

    B.    The Objectors Do Not Intend on Improving the Settlement ............. 2

    C.    Jan's and Ozen's Objection Is Defective ......................................... 5

    D.    On the Merits, the Objectors Do Not Meet Their Burden ................ 5

        1.    The Notice Plan Was the Best Practicable ............................. 6

        2.    The Notice Costs Are Appropriate ......................................... 6

        3.    The *Cy Pres* Component Is Fair and Reasonable ................... 8

        4.    The Injunctive Relief Is Not Illusory ..................................... 9

        5.    The Settlement is Fair, Reasonable and Adequate ............... 10

        6.    The Attorneys' Fees Application Should be Approved ........ 11

        7.    The Requirements of Rule 23 Are Met .................................. 19

        8.    The Catch-All Objections Should Be Overruled ................... 19

III. CONCLUSION ......................................................................................... 19

BLOOD HURST & O'REARDON, LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Browning v. Yahoo! Inc.*,
No. C04-01463, 2007 U.S. Dist. LEXIS 86266
(N.D. Cal. Nov. 16, 2007) .......................................................................... 6, 7, 8

*Bruno v. Quten Research Inst., LLC*,
No. 11-00173, 2013 U.S. Dist. LEXIS 35066
(C.D. Cal. Mar. 13, 2013).................................................................................. 9

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010)............................................................... 2

*City of Greenville v. Syngenta Crop Prot., Inc.*,
No. 10-cv-188, 2012 U.S. Dist. LEXIS 130383
(S.D. Ill. Sept. 13, 2012)................................................................................... 4

*Dennis v. Kellogg*,
697 F.3d 858 (9th Cir. 2012) ......................................................... 8, 9, 14, 16

*Devlin v. Scardelletti*,
536 U.S. 1 (2002) ............................................................................................. 3

*Edmunson v. P&G*,
No. 10-CV-2256, 2011 U.S. Dist. LEXIS 102561
(S.D. Cal. Sept. 8, 2011).................................................................................. 14

*Gemelas v. Dannon Co.*,
No. 08-cv-236, 2010 U.S. Dist. LEXIS 99503
(N.D. Ohio Aug. 31, 2010)................................................................................ 3

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ........................................................................... 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)........................................................................... 2

*Heekin v. Anthem, Inc.*,
No. 05-cv-1908, 2013 U.S. Dist. LEXIS 26700
(S.D. Ind. Feb. 27, 2013) .................................................................................. 3

Case No. 3:09-CV-01786-IEG(WMC)
REPLY ISO MOTION FOR FINAL APPROVAL

BLOOD HURST & O'REARDON, LLP

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011)............................................................. 3

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Maine June 13, 2003) ..................................................... 10

*In re High Sulfer Content Gasoline Prods. Liab. Litig.*,
    517 F.3d 220 (5th Cir. 2008) ......................................................................... 12

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
    No. 09md2087, 2013 U.S. Dist. LEXIS 61674
    (S.D. Cal. April 29, 2013) ..................................................................... 2, 4, 18

*In re Law Office of Jonathan E. Fortman, LLC*,
    No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903
    (E.D. Mo. Feb. 1, 2013)..................................................................................... 2

*In re LivingSocial Mktg. and Sales Practices Litig.*,
    MDL No. 2254, 2013 U.S. Dist. LEXIS 40059
    (D.D.C. Mar. 22, 2013) ............................................................................ 15, 16

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ......................................................................... 12

*In re Oil Spill*,
    MDL 2179, 2013 U.S. Dist. LEXIS 4595
    (E.D. La. Jan. 11, 2013).................................................................................... 3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, 2011 U.S. Dist. LEXIS 154287
    (N.D. Cal. Dec. 27, 2011)............................................................................... 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, 2011 U.S. Dist. LEXIS 154288
    (N.D. Cal. Dec. 27, 2011)............................................................................... 17

*In re TFT-LCD Antitrust Litig.*,
    No. 07-1827, 2013 U.S. Dist. LEXIS 23109
    (N.D. Cal. Feb. 19, 2013) ................................................................................. 4

*In re Uponor, Inc.*,
    No. 11-MD-2247, 2012 U.S. Dist. LEXIS 130140
    (D. Minn. Sept. 11, 2012)................................................................................. 3

BLOOD HURST & O'REARDON, LLP

*In re Versata, Inc. Sec. Litig.*,
  No. 01-1439, 2003 U.S. Dist. LEXIS 26578
  (N.D. Cal. Feb. 25, 2003) ...................................................................... 8

*Ingram v. Oroudjian*,
  647 F.3d 925 (9th Cir. 2011) ............................................................... 15

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) .................................................................. 7

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ............................................................... 10

*Lonardo v. Travelers Indem. Co.*,
  706 F. Supp. 2d 766 (N.D. Ohio 2010) ........................................... 5, 13

*Malta v. Fed. Home Loan Mortg. Corp.*,
  No. 10-CV-1290, 2013 U.S. Dist. LEXIS 15731
  (S.D. Cal. Feb. 5, 2013)......................................................................... 8

*Moore v. Verizon Communs., Inc.*,
  No. 09-1823, 2013 U.S. Dist. LEXIS 15609
  (N.D. Cal. Feb. 5, 2013) ................................................................. 5, 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 2

*Nobles v. MBNA Corp.*,
  No. 06-3723, 2009 U.S. Dist. LEXIS 59435
  (N.D. Cal. June 29, 2009)................................................................. 7, 8

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ............................................................. 16

*Richardson v. L'Oreal USA, Inc.*,
  No. 13-508, 2013 U.S. Dist. LEXIS 90378
  (D.D.C. June 27, 2013)......................................................................... 10

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) ............................................................... 18

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................... 14

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ......................................................................... 15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ....................................................................... 7, 12

*United States v. Oregon*,
    913 F.2d 576 (9th Cir. 1990) ............................................................................. 5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................................... 18

**Rules**

Fed. R. Civ. P. Rule 11 .......................................................................................... 4

Fed. R. Civ. P. Rule 23 ............................................................................. 6, 12, 19

**Other Authorities**

5 Newberg on Class Actions, §15:37 (4th ed. 2002)............................................. 3

**Secondary Authorities**

Bob Barr, "Scientific Research Ruse," *Washington Times* (Oct. 8, 2010) ............ 9

Bruce D. Greenberg, *Keeping the Flies out of the Ointment:*
    *Restricting Objectors to Class Action Settlements*,
    84 St. John's L. Rev. 949 (2010)................................................................. 3, 17

Federal Judicial Center, Barbara J. Rothstein & Thomas E. Willging,
    *Managing Class Action Litigation: A Pocket Guide for Judges*
    (3d ed. 2010)...................................................................................................... 3

Plaintiffs and Class representatives, Harry Dennis and Jon Koz, respectfully submit this reply brief in support of their motion for final approval of the class action settlement ("Settlement") and request for entry of the Judgment, Final Order and Decree.

I. **INTRODUCTION**

This Settlement is a typical common fund settlement that provides monetary relief of up $15 (or more) to each Class member who submits a claim to the Settlement Fund – far more than an individual would likely receive after a class trial. Class Counsel achieved this Settlement in the face of significant litigation obstacles that have multiplied with the passage of time, including rulings by this Court in other false advertising cases that highlight the challenges here.

In total, only six potential Class members submitted objections to the Settlement. Three of them are submitted for improper motives. Objectors Kendal Jan and Toni Ozen, are represented by Darryl Palmer. As Judge Moskowitz and numerous others have found, Palmer is a "serial" objector and repeatedly has been sanctioned for engaging in bad faith conduct in objecting to settlements and representing questionable objectors. Jan and Ozen have not bothered to so much as establish Class member status. Palmer's original client seems to have disappeared or is satisfied with the current settlement.

Similarly, objector M. Todd Henderson is represented by Ted Frank, the president of an organization whose goal is to achieve tort reform for the benefit of big business by objecting to class settlements, not to obtain benefits for consumers. Mr. Frank is funded by a Koch brothers' entity.

The remaining objections seem to be from actual Class members who simply misunderstand the purpose of settlement and the terms of this Settlement. The objections should be overruled.

## II.    THE OBJECTIONS SHOULD BE OVERRULED

### A.    The Small Amount of Objectors Indicates the Settlement's Fairness

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."). The reaction of the Class has been exceedingly positive. After a thorough notice program (*see* Dkt. 101-3) with extensive additional news coverage, only six people objected, including three serial objectors. That the vast majority of the Class willingly approved of the Settlement indicates that it should be approved.

### B.    The Objectors Do Not Intend on Improving the Settlement

Courts are to "consider the background and intent of objectors and their counsel, particularly when indicative of motive other than putting the interest of the class members first." *In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903, at *3-4 (E.D. Mo. Feb. 1, 2013); *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087, 2013 U.S. Dist. LEXIS 61674, at *68-69 (S.D. Cal. April 29, 2013); *Manual for Complex Litig.* (Fourth) §21.643, at p. 326.

Darryl Palmer, counsel for Jan and Ozen, has been deemed a serial objector by several courts, including most recently by Judge Moskowitz. *See In*

*re Hydroxycut*, 2013 U.S. Dist. LEXIS 61674 at *68 (finding that "Mr. Palmer is what some courts call a 'serial' or 'professional' objector"); *see also, e.g., In re Oil Spill*, MDL 2179, 2013 U.S. Dist. LEXIS 4595, at *154 n.40 (E.D. La. Jan. 11, 2013); *Heekin v. Anthem, Inc.*, No. 05-cv-1908, 2013 U.S. Dist. LEXIS 26700, at *9 (S.D. Ind. Feb. 27, 2013); *Gemelas v. Dannon Co.*, No. 08-cv-236, 2010 U.S. Dist. LEXIS 99503, at *5 (N.D. Ohio Aug. 31, 2010); *In re Uponor, Inc.*, No. 11-MD-2247, 2012 U.S. Dist. LEXIS 130140, at *8-9 (D. Minn. Sept. 11, 2012) ("the Palmer objectors appear to be represented by an attorney who has not entered an appearance in this case and who is believed to be a serial objector to other class-action settlement[s]").

Serial objectors like Palmer are motived by the extortion of fees and not improvements to settlements. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 n.30 (S.D. Fla. 2011) (objectors motivated by side payments after appeal); *Devlin v. Scardelletti*, 536 U.S. 1, 23 n.5 (2002) (Scalia, J., dissenting) (observing professional objectors' penchant for filing "canned" briefs and baseless objections often leads to baseless appeals in the quest for a fee); Bruce D. Greenberg, *Keeping the Flies out of the Ointment: Restricting Objectors to Class Action Settlements*, 84 St. John's L. Rev. 949, 950 (2010) (describing how objections are used for improper purposes); Federal Judicial Center, Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 17 (3d ed. 2010) ("be wary of self-interested professional objectors"); Alba Conte & Herbert B. Newberg, 5 *Newberg on Class Actions* §15:37 (4th ed. 2002).

Palmer and objectors he represents repeatedly have been found to engage in bad faith conduct in objecting to settlements. *See In re Uponor, Inc.*, 2012 U.S. Dist. LEXIS 130140, at *8 (imposing $170,000 appeal bond upon finding "that the Palmer Objectors have evidenced bad faith and vexatious conduct."); *Heekin*, 2013 U.S. Dist. LEXIS 26700, at *9-10 (bad faith and vexatious

BLOOD HURST & O'REARDON, LLP

conduct); *In re TFT-LCD Antitrust Litig.*, No. 07-1827, 2013 U.S. Dist. LEXIS 23109, at *59-60 (N.D. Cal. Feb. 19, 2013) (finding Palmer and his objector clients (his wife and aunt) in civil contempt and awarding monetary sanctions for violating order compelling objectors to appear for deposition); *City of Greenville v. Syngenta Crop Prot., Inc.*, No. 10-cv-188, 2012 U.S. Dist. LEXIS 130383, at *9 (S.D. Ill. Sept. 13, 2012) (finding Palmer's objection untimely, but stating court would have "addressed any frivolous objections using Rule 11 sanctions.").

Even in this case, Palmer's office misled the Ninth Circuit about the manner in which Palmer gets paid for his objections. *See* Ex. 5 (audio of portions of oral argument before the Ninth Circuit). Not surprisingly, the objectors that Palmer represents here are questionable at best. Jan provides an address outside the United States (although only people who purchased inside the United States are members of the Class) and Ozen does not provide any identifying information. *See* Dkt. 103 at 1. Palmer has used several members of the Jan family as objectors, and a Jan family member even substituted in as counsel for Palmer's objectors in another case when Palmer was forced to withdraw. *See* Exs. 1 and 2 (*Hydroxycut*, Dkt. 1663 and *Dremak*, Dkt. 227).

Ted Frank, counsel for Henderson, has different but equally improper motivations. Frank is the founder and president of the Center for Class Action Fairness, an organization funded by Donors Trust.[1] Donors Trust is a non-profit that funnels the money of extremely wealthy and politically charged business contributors like the Koch brothers into other organizations like the Center for Class Action Fairness.[2] Frank's motivation in objecting to class settlements is

---

[1] *See* http://centerforclassactionfairness.blogspot.com/2012/10/september-doings.html where Ted Frank personally thanks Donors' Trust "for all that they did to incubate [the Center for Class Action Fairness]" (last visited August 15, 2013).

[2] *See* http://www.sourcewatch.org/index.php/Donors_Trust (last visited August 15, 2013); http://crooksandliars.com/karoli/donors-trust-anonymous-tax-deductible-polic (last visited August 15, 2013).

BLOOD HURST & O'REARDON, LLP

not to bring greater relief to consumers, but to discourage class actions altogether to the benefit of big-business. *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 773, 785 (N.D. Ohio 2010) (describing Frank's objection as "'long on ideology and short on law'"). Although Frank attempts to distinguish himself from serial objectors like Palmer (*see* Dkt. 102 at 20-1), the vast majority of his objection here is a request for fees for Palmer, a serial objector who has engaged bad faith conduct in connection with class settlements, but who nonetheless serves Frank's political agenda.

### C.    Jan's and Ozen's Objection Is Defective

The Notice provides that any Class member who wishes to object must submit the objection "in writing" and "must include: 1. Your name, address, and telephone number; 2. Your signature…." Dkt. 101-3 at 46. Jan's and Ozen's objection is defective because it does not include Jan's or Ozen's signatures or telephone numbers, or Ozen's address. *See* Dkt. 103. The objection simply provides Jan's address in Australia and states that Ozen may be contacted through counsel. *Id.* There objection also does not establish that either has standing to object. *See Moore v. Verizon Communs., Inc.*, No. 09-1823, 2013 U.S. Dist. LEXIS 15609, at *12 (N.D. Cal. Feb. 5, 2013) ("non-class members have no standing to object to the settlement of a class action"). The parties are entitled to enough basic information to determine whether the objectors are real people with actual concerns relevant to the class. Jan's and Ozen's objection should be overruled.

### D.    On the Merits, the Objectors Do Not Meet Their Burden

Objectors bear the burden of proving any challenges to the reasonableness of a class action settlement. *See United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990). The objectors do not meet their burden.

BLOOD HURST & O'REARDON, LLP

### 1. The Notice Plan Was the Best Practicable

Kutchka's only objection is that the approved notice program failed to comply with due process because he has eaten the cereal for years and did not know this litigation was on-going. Ex. 3 (Kutchka Objection), ¶1. He suggests the notice be placed on the cereal boxes. *Id.* at ¶2.

First, notice of the on-going litigation is not required. Instead, notice of the Settlement is required and Kutchka obviously received such notice. Second, as is thoroughly discussed in Plaintiffs' motions for preliminary approval and final approval, the Notice Program that was approved by the Court fully complies with Rule 23. *See* Dkt. 89 at 24-26; Dkt. 101-1 at 39-42. Rule 23 requires that the notice be the "best practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). It does not have to be perfect. *Browning v. Yahoo! Inc.*, No. C04-01463, 2007 U.S. Dist. LEXIS 86266, at *21 (N.D. Cal. Nov. 16, 2007) ("For approval, the notice need not have been perfect.").

The parties implemented a Notice program with the assistance of an experienced administrator that included print advertising, online banner advertising, press releases to print, broadcast, television, and online media, and a settlement website because individual notice was not possible. As is evident by the expected exhaustion of the cash fund (*see* Keough Supp. Decl. in Support of Final Approval ("Keough Supp. Decl."), ¶5), the Notice was effective. Further, the Settlement also received extensive news coverage, providing additional notice. *Id.* at ¶3.

### 2. The Notice Costs Are Appropriate

Without any citation to the Settlement or supporting documents, Henderson objects that the fee request is unfair because $600,000 are spent on past settlement administration costs, the costs of notice should not be included in the overall Settlement value, and the costs of notice are not reasonable. Dkt. 102

BLOOD HURST & O'REARDON, LLP

at 4.  These objections should be overruled because they are either factually incorrect, legally incorrect or both.

First, this settlement does not cover any past notice or administration costs related to the previous settlement.  The Settlement states that the Settlement Fund will cover costs associated with **this** Settlement, not the previous settlement – and that is precisely what has been done.  The Class Action Administrator, Garden City Group ("GCG"), submitted a declaration stating that both the Notice Program and claims administration for this Settlement has cost approximately $608,665.  Dkt. 101-3, ¶23.  These expenses "primarily include[] fees and expenses associated with implementing the Notice Plan, but also include fees and expenses associated with updating and maintaining the toll-free telephone number and Settlement Website, as well as handling returned mail and processing claims."  *Id.*  GCG estimates that an additional $300,000 will be spent on processing claims, sending checks, and responding to Class member inquiries.  *See id.*, ¶24.  All costs of notice and administration from the previous settlement were paid separately by Kellogg.  *See* Dkt. 101-1 at 7; *see also* Dkt. 34 at 12 (requiring Kellogg to pay costs of notice and administration).  Although notice of the previous settlement generated a significant number of claims that will be honored here, that cost is not included in this Settlement.

Additionally, notice costs are deemed a benefit to the class and are properly included in the overall value of a fund.  *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ("The post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class."); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (notice is benefit to class).  For the same reasons, notice costs (and attorneys' fees) are properly reimbursed from a common fund.  *See Nobles v. MBNA Corp.*, No. 06-3723, 2009 U.S. Dist. LEXIS 59435, at *13-14 (N.D. Cal. June 29, 2009) (approving settlement and ordering payment from common fund to claims administrator for

00063003

BLOOD HURST & O'REARDON, LLP

cost of notice and administration and attorneys' fees); *In re Versata, Inc. Sec. Litig.*, No. 01-1439, 2003 U.S. Dist. LEXIS 26578, at *3 (N.D. Cal. Feb. 25, 2003); *Manual for Complex Litig.* (Fourth) §14.11, at p. 185 (attorneys' fees paid for by fund) and §21.312, at p. 296 (costs of notice paid for by fund). Here, the notice directly benefited the Class because it informed Class members of the settlement and on how to receive monetary relief. Accordingly, it is properly included in the Settlement Fund.

Further, the estimated $908,665 in costs of both noticing millions of Class members through a comprehensive publication plan *and* administration of the claims is reasonable. Courts routinely approve similar amounts. *See Browning*, 2007 U.S. Dist. LEXIS 86266, at *12 n.5 (noting that $1 million to notify 6.6 million class members is reasonable); *Nobles*, 2009 U.S. Dist. LEXIS 59435 at *13-14 (approving $500,000 in notice costs); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290, 2013 U.S. Dist. LEXIS 15731, at *24 (S.D. Cal. Feb. 5, 2013) (approving notice and administration costs of over $2.9 million).

### 3. The *Cy Pres* Component Is Fair and Reasonable

Jan and Ozen object that "the class is unable to make any determination regarding the intended parties because they are not disclosed in the notice or on the settlement website." Dkt. 103 at 3. They are wrong. The settlement website contains the Settlement Agreement, which expressly names the intended *cy pres* recipients (Dkt. 89 at 10) for anyone who cares, and the Notice refers Class members to the settlement website. Certainly Palmer, Jan and Ozen's counsel, had direct knowledge of the *cy pres* recipients as he receives notice of all filings via ECF in this case, including the Settlement Agreement.

Henderson's objection that the Center for Science in the Public Interest ("CSPI") is not an appropriate *cy pres* recipient is similarly without merit. The Ninth Circuit in *Dennis v. Kellogg*, 697 F.3d 858 (9th Cir. 2012) merely affirmed that "[a] *cy pres* award must be 'guided by (1) the objectives of the underlying

BLOOD HURST & O'REARDON, LLP

1  statute(s) and (2) the interests of the silent class members….'" *Id.* at 865. CSPI

2  does just that. CSPI "has served as the organized voice of the American public

3  on nutrition, food safety, health and other issues since the early 1970s", and any

4  *cy pres* money would be used "to pursue its goal of preventing false and

5  deceptive food advertising and insuring that consumers receive sufficient true

6  and honest information…." Dkt. 90-5 at ¶¶ 2, 4. Henderson's baseless claim

7  that CSPI "is an activist group" that "frequently bring[s] meritless litigation

8  against consumer choice" reveals Henderson's own political motivations in filing

9  his objection. *See* Dkt. 102 at 16. The fact that Henderson's masters do not like

10  CSPI does not make it improper. Henderson cites two slanted editorial pieces

11  about one of CSPI's actions, including one author who describes CSPI as a

12  "holier-than-thou nutritional nann[y]."[3] Henderson's counsel, given Frank's

13  extreme political views (and those of the Koch brothers who support him), may

14  not like this type of organization, but that is irrelevant to whether CSPI is an

15  appropriate *cy pres* recipient.

16  Nonetheless, Palmer's and Henderson's objections are moot because there

17  will likely be no *cy pres* award. *See* Keough Supp. Decl., ¶5.

18  **4.    The Injunctive Relief Is Not Illusory**

19  Santiago objects that the injunctive relief portion of the Settlement is

20  "illusory" because it is just "a short-term ban from making what has already been

21  determined to be an unsupportable, false advertising claim." Dkt. 105 at 2-3.

22  Santiago is incorrect. There were no findings of this Court that the alleged

23  statements were false or misleading. Accordingly, requiring Kellogg to refrain

24  from using particular advertising statements for a certain period of years is

25  appropriate and such relief is routinely approved. *See, e.g.*, *Bruno v. Quten*

26  *Research Inst., LLC*, No. 11-00173, 2013 U.S. Dist. LEXIS 35066, *4, *7 (C.D.

27

28  [3]  Bob Barr, "Scientific Research Ruse," *Washington Times* (Oct. 8, 2010).

00063003

BLOOD HURST & O'REARDON, LLP

1   Cal. Mar. 13, 2013) (approving settlement where defendant was required to

2   refrain from using alleged statements for a period of 10 years); *Richardson v.*

3   *L'Oreal USA, Inc.*, No. 13-508, 2013 U.S. Dist. LEXIS 90378, at *3 (D.D.C.

4   June 27, 2013) (settlement included injunction prohibiting use of alleged false

5   statement for period of five years); *In re Compact Disc Minimum Advertised*

6   *Price Antitrust Litig.*, 216 F.R.D. 197, 208 (D. Maine June 13, 2003) (settlement

7   required defendant to refrain from illegal conduct for five years).

8   Of course, nothing in the settlement will stop Santiago or anyone else from

9   suing Kellogg if they engage in false advertising in the future.

10  **5.     The Settlement is Fair, Reasonable and Adequate**

11  Sagaribay objects that the Settlement is not fair because Kellogg is

12  "innocent until proven guilty by the law." Ex. 4 (Sagaribay Objection). He

13  simply misunderstands the purpose of settlement. The Settlement reflects the

14  respective positions of the parties in continuing to pursue and defend the

15  litigation. Kellogg expressly denies any wrongdoing but has decided to end the

16  litigation through this Settlement. Sagaribay's objection should be overruled.

17  Similarly, Cicero's objection that the settlement is insufficient because it

18  caps relief at three boxes (or $15, and up to $45) per Class member

19  misunderstands the point of settlement and the actual relief to which an

20  individual class member would be entitled. *See* Dkt. 107. Settlement is the

21  "'offspring of compromise'" and "will necessarily reflect the interests of both

22  parties to the settlement, including those of the defendant." *Lane v. Facebook,*

23  *Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150

24  F.3d 1011, 1027 (9th Cir. 1998)). The Settlement is an outstanding recovery for

25  the Class by providing for up to $15 (or more) per Class member in a case that

26  faced substantial obstacles, including class certification. In fact, Cicero's own

27  objection in which she states that she continues to buy the Kellogg cereal

28  because "I love them and my family as well" (*see* Dkt. 107 at 2), points to a very

real problem Plaintiffs faced in certifying the case – Class members purchase the cereal for reasons other than the subject advertising claim. It appears Cicero would have purchased the cereal regardless of the subject advertising.

Additionally, an award of $15 exceeds the likely measure of damages (the difference between the purchase price for the product as represented and the value of the product received) if Plaintiffs were successful at class certification and through trial. While full restitution may be possible, the likely remedy would have been pennies a box, since Frosted Mini-Wheats is not a premium priced product and its price did not go up as a result of the advertising campaign. Thus, $15 would represent a recovery for a Class member who purchased 150 boxes of cereal assuming a 10 cent difference between the purchase price paid and the value of the cereal received. Cicero's estimates she purchased 54 boxes during the Class Period.

### 6. The Attorneys' Fees Application Should be Approved

As is standard practice for objectors to attack class counsel's fee request, regardless of the requested fee or work performed, the objections filed by attorneys (Santiago, Jan, Ozen, and Henderson) all attack Class Counsel's fee request. Their arguments are without merit and should be overruled.

### a. The Class Received Notice of the Fee Application

Jan's and Ozen's only objection to the attorneys' fee request is that Class members did not have notice of the fee application because it was not posted on the settlement website. Dkt. 103 at 4. Jan and Olsen are factually wrong. The publication notice states that either the motion for final approval of the Settlement will be posted on the settlement website "or" will be available "by calling 1-888-561-9184," the toll free number Class members may call for questions about the Settlement. The notice does not commit to any one method. Further, no Class members called seeking a copy of the publically filed motion, which also was readily available through PACER. Keough Supp. Decl, ¶4.

Jan and Ozen also misstate the law.  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), cited by Jan and Ozen, does not require that an attorneys' fees motion be posted on-line or anything of the sort.  It merely requires that class members be given "an adequate opportunity to oppose class counsel's fee motion."  *Id.* at 995.  Jan and Ozen had sufficient opportunity to object to the fee request because their counsel, Palmer, receives ECF service in this case and was served with the final approval papers and attorneys' fees application at the same time as the Court.

Nor is there any requirement that the notice describe the division of fees among counsel.  *See Staton*, 327 F.3d at 963 n.15 ("Notice of the amount of fees serves as 'adequate notice of class counsel's interest in the settlement.'"); *see also* Federal Judicial Center "Illustrative" Forms of Class Action Notices (stating only the total amount of fees requested) available at www.fjc.gov (last visited Aug. 26, 2013).  The only requirement set forth in *Mercury Interactive*, relied on by Henderson, is that class counsel file their application for attorneys' fees, costs, and incentive awards before the deadline for filing objections.[4]  *See Mercury Interactive*, 618 F.3d at 995 ("We do not adopt a bright-line rule of a time period that would meet Rule 23(h)'s requirement that the class have an adequate opportunity to oppose class counsel's fee motion.").  Class Counsel did just that by submitting declarations detailing their work in the case and the hours spent by each attorney and staff member.  *See* Dkts. 101-2, 101-4, 101-5, 101-6, and 101-7.  In fact, that Henderson was able to review the detailed fee applications of each firm but made no actual objections to any of the work performed by these firms and their contributions to the Settlement, demonstrates that he has no real objection to any of the applying firms receiving attorneys' fees for their work in

---

[4]  Nor does *In re High Sulfer Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 224 (5th Cir. 2008), cited by Henderson, require any oversight by the Court.  There, the requests were confidential.  *Id.* at 225.  Here, all requests are public.

Case No. 3:09-CV-01786-IEG(WMC)
REPLY ISO MOTION FOR FINAL APPROVAL

BLOOD HURST & O'REARDON, LLP

1  this case. Just like Henderson's counsel's objection in *Lonardo*, this objection

2  too is "'long on ideology and short on law'" and should be overruled. *See*

3  *Lonardo*, 706 F. Supp. 2d at 785.

4  So long as the requested attorneys' fee amount is approved, nothing more

5  is required and Class Counsel is permitted to allocate fees. *See In re TFT-LCD*

6  *(Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2011 U.S. Dist. LEXIS 154287, at

7  *5 (N.D. Cal. Dec. 27, 2011) (approving settlement and ordering that "[t]he

8  attorneys' fees and expenses shall be allocated amongst Plaintiffs' Counsel by

9  Co-Lead Class Counsel…in a manner which, in Co-Lead Class Counsel's good-

10  faith judgment, accurately reflects each of such Plaintiff's Counsel's

11  contributions to the establishment, prosecution, and resolution of this litigation").

### b. The Requested Fee is Reasonable

12

13  Most of Henderson's objection is to the requested attorneys' fee award.

14  *See* Dkt. 102 at 7-16. Henderson first objects that Class Counsel's work does not

15  warrant an award of fees greater than 25% (Mr. Henderson's math is off) because

16  pending the previous appeal, this case "has been in a holding pattern where no

17  beneficial work toward resolution was done by either of the settling parties." *Id.*

18  at 8. After several pages of rambling argument, Henderson summarizes his

19  objection in a section titled "This Objection Argues That the Class's Share of the

20  Settlement Is Too Small, Not That the Total Value of the Settlement Is Too

21  Small," which states that the amount of money going to the Class is too small

22  compared the amount of money requested by Class Counsel. *Id.* at 19.

23  Similarly, and without any basis, Santiago objects that the attorneys' fee request

24  is excessive because the Settlement amount is less than the amount previously

25  agreed to in the first settlement, but the attorneys' fees request has not changed.

26  *See* Dkt. 105 at 2. These objections are based on a misunderstanding of the

27  Settlement.

28

1    For the original settlement, Class Counsel negotiated a cash component of

2  $2.75 million (in addition to the *cy pres* component of $5 million in product

3  distribution) and Class Counsel requested $2 million in fees. Dkt. 34 at 7, 14.

4  The Ninth Circuit struck down that settlement based on the organization named

5  in the *cy pres* component only and did not take issue with the remaining terms of

6  the settlement. *See Dennis*, 697 F.3d at 868 (noting that the court did "not have

7  the authority to strike down only the *cy pres* portions of the settlement" and so

8  reversing the entire settlement on that basis). This Settlement eliminates the *cy*

9  *pres* component, and instead is structured as a traditional "common fund" of $4

10  million, of which notice and administration fees (estimated at $908,665) and

11  attorneys' fees of up to 25% will be paid. Dkt. 89 at 10; Dkt. 101-1 at 44-45.

12  After notice and attorneys' fees are paid, Class members' claims will be paid

13  with the remaining minimum of $2,091,335.

14    Objectors generally agree the Settlement fund is large enough, but ignore

15  another key factor in determining whether a settlement is fair, reasonable and

16  adequate – the likelihood of success on the merits. *See Rodriguez v. W. Publ'g*

17  *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), *overruled on other grounds by Dukes*

18  *v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 617 (9th Cir. 2010). As mentioned

19  above and is evidenced by Cicero's objection, Plaintiffs faced significant

20  obstacles in certifying the Class and ultimately proving liability. *See supra*

21  §II.D.5; *see also Edmunson v. P&G*, No. 10-CV-2256, 2011 U.S. Dist. LEXIS

22  102561 (S.D. Cal. Sept. 8, 2011) (Opinion by Judge Gonzalez). That Class

23  Counsel was able to negotiate a second settlement with virtually the same

24  monetary relief for claimants (although less for the Class overall) despite

25  significant litigation obstacles justifies their fee request of 25% of the Settlement

26  Fund, which is the benchmark in common fund cases. *See* Dkt. 101-1 at 43

27  (listing cases where courts in this Circuit have awarded between 20% and 33

28  1/3%). However, the amount of fees requested is, contrary to Henderson's

BLOOD HURST & O'REARDON, LLP

1   understanding, considerably less, reflecting the smaller settlement. The first time

2   around, this Court awarded fees of $2 million. With this Settlement, Plaintiffs'

3   counsel seek fees of $1 million.

4       None of the cases Henderson cites supports a reduction in the fee request

5   based on the initial settlement. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d

6   190, 195 n.1 (3d Cir. 2000) simply acknowledges that a court may consider

7   counsel's skill and efficiency, and *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th

8   Cir. 2011), holds that a court may consider counsel's rejection of prior larger

9   settlement offers in awarding fees based on a judgment received at trial. Here,

10  Class Counsel did not reject any larger settlement offers and in fact achieved the

11  same monetary settlement for claimants achieved three years prior. This

12  warrants the fee award requested. And, in *In re LivingSocial Mktg. and Sales*

13  *Practices Litig.*, MDL No. 2254, 2013 U.S. Dist. LEXIS 40059, at *51 (D.D.C.

14  Mar. 22, 2013) the court reduced the requested fee to 18% because it found that

15  the injunctive relief was overvalued. Here, Class Counsel's fee request is not

16  based on the value of the injunctive relief because Plaintiffs do not include the

17  value of the injunctive relief in the overall value of the Settlement Fund. Had

18  they done so, they could have requested more in fees. The injunctive relief (on

19  top of the Settlement Fund) provides further justification for the requested fee.

20      These objections should be overruled.

21          **c.     Class Counsel Provided Sufficient Information to**
                     **Justify Their Fee Request**
22

23      Henderson also objects that any fee award should exclude all hours related

24  to the initial settlement under a lodestar crosscheck but that Class Counsel have

25  not provided sufficient detail of their time to determine the amount to be reduced.

26  Dkt. 102 at 8-10. Henderson applies the wrong test for fees.

27      First, the preferred measure of attorneys' fees in a common fund

28  settlement is the percentage of the fund method. *See Six (6) Mexican Workers v.*

*Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). In the Ninth Circuit, the "benchmark" award is 25%. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). No objector offers a relevant reason for a downward adjustment to the benchmark. In fact, Henderson states in his objection that the size of the settlement fund is sufficient. Dkt. 102 at 19. Therefore, the 25% benchmark should apply.

Additionally, Henderson provides no justification for eliminating all time spent on the initial settlement or how Class Counsel's work in defending the initial settlement was "litigating against the class's interest." *See id.* at 9. The Ninth Circuit only rejected the *cy pres* component of the initial settlement (which was not found to be offensive, but represented a "noble goal," *see Dennis*, 697 F.3d at 866) and not the monetary or notice components of the settlement. Thus, much of the time spent negotiating that initial settlement was used in the negotiations for this Settlement and the ultimate relief to the Class. Additionally, objectors to the first settlement objected on grounds other than just the *cy pres* component, which the Ninth Circuit implicitly rejected. *See* Dkts. 43 and 44. Thus, Class Counsel's time responding to these objections and defending the initial settlement is not solely related to the *cy pres* provision.

Second, Class Counsel has provided sufficient information to conduct a lodestar crosscheck analysis. Counsel has described their work in the case and the time spent conducting that work. *See* Dkts. 101-2 at ¶¶3-23, 101-4 at ¶¶3-4, 101-5 at ¶¶3-6, 101-6 at ¶¶3-7, and 101-7 at ¶¶3-5. Despite the information provided, Henderson makes no actual objection to the tasks performed by each firm and the hours claimed. Tellingly, Henderson requests fees of $256,166.67 for the objector to the previous settlement based on no record of any time spent or even a fee request (Dkt. 102 at 12), but objects to Class Counsel's fee request on that basis. Henderson and his counsel's personal motivations do not provide a sufficient basis to disrupt the Settlement.

BLOOD HURST & O'REARDON, LLP

00063003

### d. Objections to the Quick Pay Provision Should be Overruled

Santiago, Jan and Ozen object that the provision that requires Kellogg to pay Class Counsel the requested fee within ten days after the Effective Date creates a conflict of interest. Dkt. 103 at 4; Dkt. 105 at 1. Once again, Santiago, Jan and Ozen misrepresent the facts. They act as if this provision is a "Quick pay" provision where attorneys' fees are paid soon after the court issues an order granting final approval to the settlement. There is nothing wrong with these provisions, and they are routinely approved in class settlements. *See In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 3:07-md-1827, 2011 U.S. Dist. LEXIS 154288, at *2-3 (N.D. Cal. Dec. 27, 2011) (approving quick pay provision and listing other courts that have done the same). They are often included because they can be effective tools in dealing with serial objectors like Mr. Palmer. *See* Bruce D. Greenberg, 84 St. John's L. Rev. 949, 976 (2010).

This Settlement, however, does not contain a "quick pay" provision. Instead, payment of fees is not made until 10 days after the judgment becomes final. The date the judgment becomes final is the "Effective Date", which after the time to appeal has passed and no appeals have been filed, or if appeals are filed, the Final Judgment is affirmed. Dkt. 89 at 19. Accordingly, Class Counsel will not get paid until after all objections including all appeals by objectors, are final. No conflict exists.

### e. Henderson's Suggested Allocation of Fees is Improper

Despite lacking standing to raise the issue, Henderson objects that the requested fee award somehow "freezes out" counsel for objector's to the first settlement. Dkt. 102 at 11-12. This objection is improper and should be overruled.

First, only objectors who have conferred a "material benefit on the class" may apply for an award of attorneys' fees. *See Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012) (district court did not abuse discretion in denying attorneys' fees to objectors that "did not confer any material benefits on the class"); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (objector must "increase the fund or otherwise substantially benefit the class members"). Here, the original objectors did not make any application for attorneys' fees and have not objected to the current Settlement. Because no objector has made an appropriate fee request, Henderson's suggestion on how fees should be split with objectors is not at issue.

Second, Henderson lacks standing to make this objection. *See In re Hydroxycut*, 2013 U.S. Dist. LEXIS 61674 at *68; *Moore*, 2013 U.S. Dist. LEXIS 15609 at *12. Henderson (nor his counsel) neither objected to the last settlement nor were involved in the appeal.

Third, Palmer, who was counsel for the original objector who does not object to the current settlement, has submitted a new set of objections to this Settlement. He cannot claim that this Settlement is objectionable and also claim that he is entitled to fees for improving the settlement. Nor has he tried to do so.

Third, Henderson's suggested calculation of fees is based on bad math. *See* Dkt. 102 at 12. Henderson discounts the value of the Settlement by $900,000 based on notice and settlement administration costs. As discussed above, the law is that these costs are class benefits and properly considered a part of the overall fund. *See supra* §II.D.2. Additionally, Class Counsel achieved a cash fund of $2.75 million in the initial settlement (plus other settlement consideration), not $800,000 as claimed by Henderson. *See* Dkt. 34 at 7 (establishing a $2.75 million fund for cash payments); *Cf.* Dkt. 102 at 12 (Henderson wrongly claiming only $800,000 "negotiated" for the class). Further, the only effect the objectors to the initial settlement had on the relief to

BLOOD HURST & O'REARDON, LLP

the Class, if any, was that the product distribution component of the settlement was completely eliminated. Essentially, slightly less cash that was available to the Class in the first settlement ($2.75 million) is available to Class members in this Settlement ($2.1 million), and Class Counsel seek 50% less in fees.

## 7. The Requirements of Rule 23 Are Met

Against his own interests and without analysis, Santiago objects that the requirements of Rule 23 were not met. Plaintiff has analyzed each element of Rule 23 and has demonstrated why it is satisfied. *See* Dkt. 101-1 at 36-39. Even so, if this case did not meet the requirements of Rule 23 outside the settlement context, this is even more reason why the Settlement should be approved.

## 8. The Catch-All Objections Should Be Overruled

Finally, several Objectors seek to assert the same objections made by any other objectors. These objections must be overruled as there is no basis asserted.

## III. CONCLUSION

For the foregoing reasons and those stated in Plaintiffs' memorandum in support of their motion for final approval, Plaintiffs' motion for final approval of the class action settlement should be granted.

Dated: August 30, 2013

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
LESLIE E. HURST

By:     *s/ Timothy G. Blood*
              TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN

PATRICIA N. SYVERSON
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85012-3311
Telephone: 602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

PISCITELLI LAW FIRM
FRANK E. PISCITELLI, JR.
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/931-7000
frank@piscitellilaw.com

CLIMACO, WILCOX, PECA, TARANTINO
 & GAROFOLI CO., L.P.A.
JOHN R. CLIMACO
PATRICK G. WARNER
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/621-8484
216/771-1632 (fax)
jrclim@climacolaw.com
pwarn@climacolaw.com

WHATLEY, DRAKE & KALLAS, LLC
PATRICK J. SHEEHAN
380 Madison Avenue, 23rd Floor
New York, NY 10017
Telephone: 212/447-7070
212/447-7077 (fax)
psheehan@whatleykallas.com

*Attorneys for Plaintiffs*

BLOOD HURST & O'REARDON, LLP

00063003

BLOOD HURST & O'REARDON, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 30, 2013.

*s/ Timothy G. Blood*

TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

Case No. 3:09-CV-01786-IEG(WMC)

REPLY ISO MOTION FOR FINAL APPROVAL

00063003