1
2
3
4
5
6
7           **UNITED STATES DISTRICT COURT**
8          **SOUTHERN DISTRICT OF CALIFORNIA**
9
10   HARRY DENNIS and JON KOZ,              CASE NO. 09-CV-1786- IEG (WMC)
     individually and on behalf of those
     similarly situated,                   **ORDER:**
11
                              Plaintiffs,   **1.    GRANTING MOTION FOR**
12                                                  **FINAL SETTLEMENT**
          vs.                                       **APPROVAL, ATTORNEYS'**
13                                                  **FEES, AND INCENTIVE**
                                                    **AWARDS;**
14
15   KELLOGG CO.,                           [Doc. No. 101]
16                             Defendant .   **2.    OVERRULING ALL**
                                                    **OBJECTIONS AND DENYING**
17                                                  **OBJECTOR'S FEE REQUEST**
18
19          Before the Court is Plaintiffs' motion for final settlement approval and
20   attorneys' fees and costs, as well as several objections, one of which also requests
21   attorneys' fees.  For the reasons below, the Court **GRANTS** Plaintiffs' motion in its
22   entirety, **OVERRULES** all objections, and **DENIES** objector's request for
23   attorneys' fees.
24                              **BACKGROUND**
25          This is a consumer class action alleging Defendant Kellogg Company made
26   false and unsubstantiated representations in advertising and labeling its Frosted
27   Mini-Wheats cereal products.  The action originally settled with the approval of this
28   Court on April 5, 2011.  [*See* Doc. No. 49.]  Under the original settlement, all

claims[1] were released in exchange for:

- a $2.75 million cash fund for distribution to class members on a claims-made basis;

- Kellogg distributing, pursuant to the *cy pres* doctrine, $5.5 million of food products to charities to feed the indigent;

- Kellogg refraining from using the challenged representations in advertising for three years; and

- approximately $2 million in attorneys' fees and costs.

The original settlement's value thus totaled approximately $10.5 million.  With attorney and claims administration fees and costs subtracted, the value totaled approximately $8.5 million.

But on September 4, 2012, the Ninth Circuit reversed the final settlement approval order, vacated the judgment and award of attorneys' fees, and remanded for further proceedings, finding that the *cy pres* award under the terms of the original settlement failed to target the plaintiff class.  *See Dennis v. Kellogg Company*, 697 F.3d 858, 869 (9th Cir. 2012).  While the asserted claims concern fair competition and consumer protection, the original *cy pres* award would benefit the indigent.  The Ninth Circuit reasoned that "[t]his noble goal . . . has little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved."  *Id*. at 866.

On remand, the parties negotiated a revised settlement, which the Court preliminarily approved on May 3, 2013.  [Doc. No. 95.]  Under the revised settlement, all claims arising out of the challenged advertising are released in exchange for:

- a $4 million cash fund for distribution to class members on a claims-made basis, any remaining balance of which to be distributed equally, pursuant to the *cy pres* doctrine, among recipients Consumers Union, Consumer Watchdog, and the Center for Science in the Public Interest; and

- Kellogg refraining from using the challenged representations in advertising for three years.

---

[1]    The Amended Complaint alleges claims of unjust enrichment, and violation of California's Unfair Competition Law and Consumer Legal Remedies Act, and similar laws of other states. [*See* Doc. No. 22.]

The revised settlement's value thus totals $4 million plus the value of the agreed injunctive relief.  Minus requested attorneys' fees and expenses of $1 million as well as approximately $900,000 in claims notice and administration costs, the cash value to the class totals approximately $2.1 million.  From this cash fund, class members that submit a valid claim are entitled to cash distributions of between $5 and $45.  In its preliminary approval order, the Court ordered the settling parties to address the revised settlement's diminished value yet seemingly unchanged attorneys' fees and expenses.

Notice issued and out of a putative class of hundreds of thousands only 6 objections were submitted.  [*See* Doc. Nos. 102 (filing by Obj. Henderson, 103 (joint filing by Objs. Jan and Onzen), 105 (filing by Obj. Santiago), 107 and 109 (filings by Obj. Cicero), 113-1, Ex. 3 (Obj. by Kutchka), 113-1, Ex. 4 (Obj. by Sagaribay)]  The settling parties filed reply briefs addressing the objections as well as the Court's concerns.  [Doc. Nos. 112, 113.]  As to the Court's concerns, Plaintiffs explain that although the combined, total fees and costs appear unchanged, the cost of notice has increased due to expanded notice to the class while the requested fees have decreased by 50%.  On September 9, 2013, the Court heard oral argument on behalf of the settling parties and objectors.

For the reasons below, the Court:

- **GRANTS** final settlement approval;

- **GRANTS** certification of the settlement class;

- **GRANTS** class counsel's request for attorneys' fees and costs;

- **GRANTS** the requested incentive awards to the class representatives;

- **OVERRULES** all objections; and

- **DENIES** objector's request for attorneys' fees.

///

///

///

**DISCUSSION**

## I.      Final Approval of the Settlement

"Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation." *Smith v. CRST Van Expedited, Inc*., 2013 WL 163293, at \*2 (S.D. Cal. Jan. 14, 2013) (citing *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). "And though, unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited." *Id.* (internal quotation omitted); *see also* Fed. R. Civ. P. 23(e). "Courts are not to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, nor is the proposed settlement to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* "Rather, 'a district court's only role in reviewing the substance of [a] settlement is to ensure that it is fair, adequate, and free of collusion." *Id.* (quoting *Lane v. Facebook,* 696 F.3d 811, 819 (9th Cir. 2012)).

"In making this appraisal, courts have 'broad discretion' to consider a range of factors such as 'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Id.* "The relative importance to be attached to any factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

Here, after careful review, the proposed settlement appears fair, adequate, and

free of collusion.  As discussed more fully below, the settlement is the product of arms-length negotiations by experienced counsel before a respected mediator, reached after and in light of years of hard fought litigation and ample discovery into the asserted claims.  As a result of counsel's efforts, the settlement provides the class with both a substantial cash recovery as well as significant injunctive relief, which together amount to over $4,000,000 in value achieved for the class. Moreover, the reaction of the class has been largely positive and the few objections are without merit.

### A.    Strengths and Risks of the Case and Value of the Settlement

This case was initiated in 2009 and has progressed through considerable litigation and discovery into the asserted claims, an initial approved settlement, a lengthy appeal, as well as further discovery and mediation on remand.  Plaintiffs maintain they have developed a strong case.  [*See* Doc. No. 101-1 at 4-11, 24-25, 28-29.]  Defendant disagrees and, should the case not settle, has committed to vigorously contesting the asserted claims.  [*Id*. at 25.]  But both parties acknowledge the significant risks and costs presented by further litigation and which are avoided by this reasonable compromise.  Settlement was reached with much of the case still to be litigated.  This prevents the likely expense, complexity, and duration of, *inter alia*, full discovery, summary judgment, expert reports, trial, and any subsequent appeals.  Numerous issues remain in dispute, including, *e.g*., whether the contested advertising constitutes puffery, whether the claims are amenable to class wide proof, whether common issues predominate, and the measure and extent of damages.  In addition to being expensive, going forward risks further exposure and uncertainty for Defendant as well as impairment or delay of relief to the class.

Against these considerations, the parties have agreed to a settlement fund of $4,000,000, which results in individual payouts to claimants of at least $5 and up to $45.  [*See* Doc. No. 101-1 at 12.]  These amounts reflect the retail cost of between 1 and 9 boxes of cereal, the advertising of which forms the basis of this dispute.  This

1    is a favorable result given the considerable challenges Plaintiffs face should

2    litigation continue.  Moreover, the settlement avoids the risks of extreme results on

3    either end, *i.e.*, complete or no recovery.  Thus, it is plainly reasonable for the parties

4    at this stage to agree that the actual recovery realized and risks avoided here

5    outweigh the opportunity to pursue potentially more favorable results through full

6    adjudication.  These factors support approval.  *See Officers for Justice*, 688 F.2d at

7    625 (settlement is necessarily "an amalgam of delicate balancing, gross

8    approximations and rough justice."); *Facebook,* 696 F.3d at 819 ("the question

9    whether a settlement is fundamentally fair . . . is different from the question whether

10   the settlement is perfect in the estimation of the reviewing court.").

11            **B.      Endorsement of Experienced Counsel**

12            Class counsel attest to decades of experience litigating class actions, including

13   similar litigation on behalf of consumers and a range of other complex matters.

14   [*See*, *e.g.*, Doc. No. 90-3 (firm resumes).]  "Given their extensive experience and

15   understanding of the strengths and weaknesses of cases such as this, class counsel's

16   endorsement weighs in favor of final approval."  *Smith*, 2013 WL 163293, at *4; *see*

17   *also Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011) ("The

18   recommendations of counsel are given great weight since they are most familiar with

19   the facts of the underlying litigation."); *Singer v. Becton Dickinson and Co.*, 2010

20   WL 2196104, at *6 (S.D. Cal. June 1, 2010) (same).

21            **C.      Reaction of the Class**

22            The reaction of the class has been almost entirely positive.  Of a putative class

23   covering hundreds of thousands of purchases of cereal nationwide, [*see* Doc. No. 95

24   (recognizing numerosity of the putative class)], only 6 objections have been

25   submitted.  "The small percentage of . . . objectors strongly supports the fairness of

26   the settlement."  *Smith*, 2013 WL 163293, at *4; *see also Hartless,* 273 F.R.D. at

27   641 ("The absence of a large number of objections to a proposed class action

28   settlement raises a strong presumption that the terms of the settlement are favorable

to the class members.").

Moreover, the few objections submitted are without merit.[2]

### 1.   Objection of Kendal Mark Jan and Toni Ozen

Jan and Ozen object to class counsel's purported failure to identify the intended *cy pres* recipients and purported failure to file a request for attorneys' fees. [Doc. No. 103.]  But the settlement itself, Plaintiffs' briefing, as well as the Court's preliminary approval order, all identified the three intended *cy pres* recipients, [Doc. Nos. 90, 95], and class counsel did in fact file a request for fees along with its motion for final approval, [101-1 at 42-51].  Thus, Jan and Ozen's objection appears baseless.

Moreover, Jan and Ozen's objection fails to provide their signatures, telephone numbers, or addresses, all of which are required per the terms of the settlement notice.  [*See* Doc. No. 103.]  With these omissions, Jan or Ozen fail to establish that they are members of the class with the right to object.  *See In re Apple Sec. Litig.*, 2011 WL 1877988, at *2 n.4 (N.D. Cal. May 17, 2011) (finding objector

---

[2]     Many jurists and commentators bemoan that "too much of the controversy in many class action litigations seems to center on the issue of attorneys' fees" and that, as a result, "a cottage industry has developed of professional objectors, where again the emphasis or at least the primary motivation is attorneys' fees." *In re Countrywide Financial Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3328249, at *4 (W.D. Ky. Aug. 24, 2010).  As a corollary, "when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *In re Law Office of Jonathan E. Fortman, LLC*, 2013 WL 414476, at *5 (E.D Mo. Feb. 1, 2013).  In this light, the Court notes that present objectors' counsel, Darrell Palmer and Theodore Frank of the Center for Class Action Fairness, have both been widely and repeatedly criticized as serial, professional, or otherwise vexatious objectors.  As to attorney Darrell Palmer, *see, e.g., In re Oil Spill by Oil Rig Deepwater Horizon*, _F.R.D._, 2013 WL 144042, at *48 n.40 (E.D. La. Jan. 11, 2013) (noting that "Mr. Palmer has been deemed a 'serial objector'" with a history of "admitt[ed] . . . 'bad faith and vexatious conduct'"); *Heekin v. Anthem, Inc.*, 2013 WL 752637, at *3 (S.D. Ind. Feb. 27, 2013) (finding "bad faith and vexatious conduct on the part of . . . attorney Darrell Palmer" and noting his reputation as "a serial objector").  As to attorney Theodore Frank, *see, e.g., Dewey v. Volkswagen of America*, 728 F.Supp.2d 546, 575 (D. N.J. 2010) (describing attorney Theodore Frank as a "professional objector" of which "federal courts are increasingly weary"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, (N.D. Ohio 2010) (criticizing the Center for Class Action Fairness as a serial objector "long on ideology and short on law").

"lacks standing to object [because] he did not provide evidence to show that he is a class member."). As Jan and Ozen appear to lack standing to object, their objection is defective. *See Moore v. Verizon Communs., Inc.*, 2013 WL 450365, at *4 (N.D. Cal. Feb. 5, 2013) ("non-class members have no standing to object to the settlement of a class action").

For these reasons, the Court **OVERRULES** Jan and Ozen's objection.

## 2.      Objections of M. Todd Henderson

Objector Henderson does not object to the fairness of the settlement amount;[3] rather, he seeks attorneys' fees for objectors' prior success on appeal. But neither Henderson nor his counsel, Theodore Frank of the Center for Class Action Fairness, participated in the appeal. The objectors that in fact prevailed on appeal, class members Stephanie Berg and Omar Rivero, [*see Dennis*, 697 F.3d at 863], are no longer participating in this case. They have apparently terminated their association with objector's counsel Darrell Palmer, and neither objects to the present settlement or moves for fees. Accordingly, the propriety of a fee award on behalf of their efforts on appeal is not properly before the Court.

Henderson also objects that the class notice and administration costs are excessive as a percentage of recovery and for including the notice costs of the original settlement, and further that no such costs should be considered for purposes of determining attorneys' fees. [Doc. No. 102.] But the costs of noticing the original settlement are not in fact included in the present request. [*See* Doc. No. 113 at 7.] And the Court finds the approximately $900,000 in requested notice costs reasonable given the challenges of adequately noticing the disparate, nationwide

---

[3]      Henderson concedes that claims made will likely exhaust the fund and thus that a *cy pres* distribution will be unnecessary. [Doc. No. 102 at 16.]   Nonetheless, Henderson reserves the right to object to the Center for Science in the Public Interest as an "activist" organization inappropriate as a *cy pres* recipient. [*Id.*]  As Henderson concedes, this objection is unripe and likely to prove moot. [*See* Doc. No. 113-2 at 2.] Moreover, it echoes the pot calling the kettle black; Henderson's own counsel, Theodore Frank, works for and represents an ostensibly "activist" organization, the Center for Class Action Fairness, widely criticized as "long on ideology and short on law." *Lonardo*, 706 F. Supp. 2d at 785.

1  class governed by the present settlement. [*See infra* §III.A.]  Finally, contrary to

2  Henderson's objection, "post-settlement cost of providing notice to the class can

3  reasonably be considered a benefit to the class," and thus such costs are properly and

4  routinely paid from the common settlement fund.  *Staton v. Boeing Co.*, 327 F.3d

5  938, 975 (9th Cir. 2003); *accord Smith*, 2013 WL 163293, at *5.

6       For these reasons and in light of all briefing and oral argument on his behalf,

7  the Court **OVERRULES** all of Henderson's objections and **DENIES** as

8  unwarranted his request for a fee award to objectors' counsel.

### 3.   Objections of Stephen Santiago

10      Objector Santiago objects that the injunctive relief provided under the

11  settlement is illusory because the advertising Kellogg agrees to refrain from has

12  already been debunked.  [Doc. No. 105.]  But the purported falsity of the challenged

13  advertising has not been determined.  Indeed, Kellogg maintains Plaintiffs' claims

14  would ultimately fail on the merits.  Because the merits of the challenged advertising

15  remains unsettled, injunctive relief preventing such advertising constitutes a

16  substantial concession by Defendant.  As such, Santiago's objection is baseless and

17  does not undermine the fairness of the settlement.  *Cf. Smith v. CRST Van Expedited,*

18  *Inc.*, 2012 WL 5873701, at *6 (S.D. Cal. Nov. 20, 2012) (in objecting to a proposed

19  settlement "empty assertion does not suffice").

20      Santiago also objects that class counsel's attorneys' fee request is

21  insufficiently detailed and includes a "Quick Pay provision."  [Doc. No. 105 at 1.]

22  But the settlement does not in fact include a "Quick Pay provision," as fees are not

23  paid to counsel until 10 days after final judgment is entered. [*See* Doc. Nos. 89 at 19;

24  113 at 17.]  And the declarations of counsel detailing rates and hours worked suffice

25  even without a corresponding allocation of fees among counsel.  *See Staton*, 327

26  F.3d at 963 n.15.  Thus, the Court **OVERRULES** Santiago's objections.

### 4.   Objection of Dorothy Cicero

28      Objector Cicero claims that her family eats more that 3 boxes of cereal a

month and thus that she should be compensated for 54 boxes. But any settlement is necessarily "an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625. And "the question whether a settlement is fundamentally fair . . . is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Facebook,* 696 F.3d at 819. Cicero's dissatisfaction based on circumstances unique to her and her family cannot undermine the overall fairness of the settlement to the class as a whole in light of the significant risks posed by further litigation. *See Smith*, 2013 WL 163293, at *4 ("the proposed settlement [is not] to be judged against a hypothetical or speculative measure."). Thus, the Court **OVERRULES** Cicero's objection.

### 5.     Objection by Jeremy Sagaribay

Objector Sagaribay does not object on behalf of the class, but rather objects to Defendant Kellogg Co. paying anything at all without Plaintiffs' claims being first proven at trial. [Doc. No. 113-1 at 25.] But in reviewing the proposed settlement, the Court is a fiduciary to absent class members, not Defendant. *See, e.g., Wiesmueller v. Kosobucki*, 2009 WL 4667576, at *4 (W.D. Wisc. Dec. 2, 2009) (notwithstanding "the judicial duty under Rule 23 to insure that class counsel can adequately represent the interests of the class," courts owe "no such duty to defendants, who may protect their own interests."). Accordingly, objections on behalf of Defendant are irrelevant and cannot undermine final approval. Thus, the Court **OVERRULES** Sagaribay's objections.

### 6.     Objection by Jay Kutchka

Objector Kutchka objects that the approved notice program is insufficient because he has eaten Kellogg cereal for years and did not know of this litigation until recently. [Doc. No. 113-1 at 19-21.] No notice of pending litigation is required; only notice of pending settlement is required. *See* Fed. R. Civ. P. 23. Kutchka plainly received notice of the settlement. Moreover, Rule 23 only requires that the notice be the "best practicable under the circumstances." Fed. R. Civ. P.

23(c)(2)(B).  It need not be perfect.  *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *7 (N.D. Cal. Nov. 16, 2007) ("For approval, the notice need not have been perfect.").  Here, the parties implemented a notice program with the assistance of an experienced administrator that included print advertising, online banner advertising, press releases to print, broadcast, television, and online media, and a settlement website because individual notice was not possible.  [*See* Doc. Nos. 90; 101.]  This extensive notice program appears sufficient and warranted under the circumstances.  Thus, the Court **OVERRULES** Kutchka's objections.

### D.    No Suggestion Of Collusion

Although the Court expressed skepticism in its preliminary approval order regarding the revised settlement value as compared to the corresponding fee request, that skepticism has been allayed.  The Court was concerned that the combined attorneys' fee request and claims administration costs appeared unchanged from the last settlement, notwithstanding a significant drop in total value to the class.  But Plaintiffs' final approval briefing and supporting declarations make clear that the seemingly unchanged total amount reflects the increased cost of expanded claims notice administration rather than static fees.  In fact, the requested attorneys' fees are 50% less than provided under the initial settlement. [*See, e.g.*, Doc. No. 101-1 at 10-11 ($1 million present fee request versus $2 million dollar fee provision under the initial settlement).]   With the Court's concerns allayed, no aspect of the settlement suggests collusion.  Rather the present settlement was reached through mediation before the Honorable Richard Haden, [*see* Doc. No. 101-2 at 6], and neither the requested attorneys' fees nor the requested incentive awards appear unreasonable, [*see infra*].  Nor have even the few objectors suggested collusion.  [*Cf.* Doc. No. 102 (Henderson Obj. ("This objection does not argue that the settlement is a product of collusion.").]  At bottom, "the circumstances and extent of the parties' negotiations suggest fundamental fairness and thus weigh in favor of approval."  *Smith*, 2013 WL 163293, at *4.

1   Thus, the Court **OVERRULES** all objections and **GRANTS** final approval of

2   the settlement.

3   **II.      Class Certification**

4   With its preliminary settlement approval order, the Court preliminarily

5   certified the following settlement class:

6   All persons or entities in the United States who purchased Frosted
    Mini-Wheats branded cereal from January 28, 2008, up to and including

7   October 1, 2009.  Excluded from the Class are Kellogg's employees, officers,
    directors, agents, and representatives and those who purchased Frosted Mini-

8   Wheats for the purpose of re-sale.

9   [Doc. No. at .]  Only one objector, Santiago, contests the propriety of class

10  certification, and he does so in utterly conclusory fashion.  [*See* Doc. No. 105 (one

11  sentence objection to class certification providing no specifics or reasoning).]

12  Nothing in any of the objections or final approval briefing undermines the Court's

13  preliminary findings in regard to class certification.  Accordingly, the Court

14  **GRANTS** final certification of this settlement class.

15  **III.     Class Counsel's Requests for Fees, Expenses, and Incentive Awards**

16  Out of the $4 million settlement fund, class counsel seeks an award of $1

17  million in attorneys' fees and expenses, approximately $900,000 in class claims

18  notice and administration costs, and $5,000 incentive awards to class representatives

19  Koz and Dennis.  [*See* Doc. No. 101 at 11.]

20  **A.      Class Counsel's Fees and Expenses**

21  Because "[t]his action asserts California claims premised on diversity

22  jurisdiction," "the Court applies California law to determine both the right to and

23  method for calculating fees."  *Smith*, 2013 WL 163293, at *5.  "Under California

24  law, . . . in cases such as this, where the class benefit can be monetized with a

25  reasonable degree of certainty, a percentage of the benefit approach may be used."

26  *Id*. (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557-58 (2009)).

27  "Under the percentage method, California has recognized that most fee awards based

28  on either a lodestar or percentage calculation are 33 percent and has endorsed the

1   federal benchmark of 25 percent." *Id.*; *see also In re Consumer Privacy Cases*, 175

2   Cal. App. 4th at 556 n. 13.  "As to the settlement fund amount: '[t]he total fund c[an]

3   be used to measure whether the portion allocated to the class and to attorney fees is

4   reasonable.'"  *Id.* (citing Manual for Complex Litigation (4th ed. 2008) § 21.71, p.

5   525).  "Always, the ultimate goal is to award a reasonable fee."  *Id.* (internal citation

6   omitted); *see also Hartless*, 273 F.R.D. at 645.

7        Here, the settlement confers a total financial benefit to the class in excess of

8   $4,000,000, including both a non-reversionary cash fund of $4,000,000 and

9   injunctive relief that will benefit both class members and non-class consumers going

10  forward.  In light of the results achieved, the requested fees appear reasonable.  The

11  settlement provides for, and class counsel here seeks, an award of $1,000,000 in fees

12  which constitutes 25% of the cash fund.  This percentages compares favorably with

13  both California (33%) and federal (25%) benchmarks and the requested fee

14  compares well with a lodestar cross-check as well.  Applying class counsel's hourly

15  rates ranging from $145 (for law clerks) to $950 (for name partners), which fall

16  within typical rates for attorneys of comparable experience, the total lodestar totals

17  $975,526.25.  [*See, e.g.*, Doc. No. 101-2 at 10 (summary class counsel hourly rates

18  and hours expended).]  The $1 million requested fee is essentially at cost without

19  any multiplier and thus appears reasonable, perhaps even a discount, given the risks

20  borne by counsel proceeding on contingency, the duration and complexity of the

21  case, and the substantial benefit realized for the class.  *Cf. Sproul v. Astrue*, 2013

22  WL 394056, at *2 (S.D. Cal. Jan. 30, 2013) ("Courts are loathe to penalize

23  experienced counsel for efficient representation under contingency agreements.");

24  *see also Singer*, 2010 WL 2196104, at *8 (awarding 33 1/3% fee in class action);

25  *Ingalls v. Hallmark Mktg. Corp.*, Case No. 08cv4342, Doc. No. 77 (C.D. Cal. Oct.

26  16, 2009) (awarding 33.33% fee on a $5.6 million class action); *Birch v. Office*

27  *Depot, Inc.*, Case No. 06cv1690, Doc. No. 48 (S.D. Cal. Sept. 28, 2007) (awarding a

28  40% fee on a $16 million class action); *Rippee v. Boston Mkt. Corp.*, Case No.

1   05cv1359, Doc. No. 70 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75

2   million class action).

3          The requested claims notice and administration costs also appear reasonable.

4   Class counsel seeks $908,665 in claims notice and administration costs.  [*See* Doc.

5   No. 101-1 at 11.]  These amounts are within that contemplated by the settlement,

6   have been endorsed by experienced counsel and claims administration consultants

7   involved in this case, and are thus presumed reasonable.  *See Smith*, 2013 WL

8   163293, at *4 ("costs and expenses incurred by experienced counsel in creating or

9   preserving a common fund [are] presumed reasonable").  Moreover, the widely

10  disparate, nationwide class of potential claimants in this case both necessitates, and

11  justifies the increased cost of, the broad and diverse notice campaign contemplated

12  and executed under the present settlement.  *Cf. Malta v. Fed. Home Loans Mortg.*

13  *Corp.*, 2013 WL 444619, at *7 (S.D. Cal. Feb. 5, 2013) (approving nearly $3 million

14  is claims notice and administration costs); *In re Immune Response Sec. Litig.*, 497 F.

15  Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding similar costs and expenses

16  "necessary" to class action litigation).

17         Accordingly, the Court **GRANTS** class counsel's fee and expense request.

18         **B.      Incentive Awards to Class Representatives**

19         The two class representatives, Koz and Dennis, each seek an incentive

20  payment of $5,000 for their service in prosecuting this action on behalf of the class.

21  [*See* Doc. No. 101-1 at 51-52.]  "Incentive awards are fairly typical in class action

22  cases."  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).

23  "Such awards are discretionary . . . and are intended to compensate class

24  representatives for work done on behalf of the class, to make up for financial or

25  reputational risk undertaken in bringing the action."  *Id.*  "The criteria courts may

26  consider in determining whether to make an incentive award include: 1) the risk to

27  the class representative in commencing suit, both financial and otherwise; 2) the

28  notoriety and personal difficulties encountered by the class representative; 3) the

amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

Here, all factors weigh in favor of the awards sought. This consumer class action risked the class representatives' reputations and their exposure to joint and several liability for counterclaims. *See Martin v. AmeriPride Services, Inc.*, 2011 WL 2313604, at *4 (S.D. Cal. 2011) (acknowledging professional and legal risks posed to class representatives in class actions). Further, both class representatives were active in assisting class counsel in a wide variety of respects, from initiating the case, reviewing pleadings, making themselves available for deposition and possible trial testimony, to providing factual background and support, and communicating with class counsel in regard to the case. [*See*, *e.g.*, Doc. No. 101-1 at 51-52; 101-4.] Class representatives' efforts and involvement have thus protected and benefitted the class as a whole. *See Hartless*, 273 F.R.D. at 647 (class representative involvement "protect[s] the interests of the class" and thus warrants incentive awards). Given Koz and Dennis's record of involvement despite the risks posed, the requested incentive awards are warranted. *Van Vranken*, 901 F.Supp. at 300.

Moreover, the amount of the incentive payments requested, $5,000, is well within if not below the range awarded in similar cases. *See Smith*, 2013 WL 163293, at *5 ($15,000 award); *Singer*, 2010 WL 2196104, at *9 ($25,000 award); *Cicero v. DirectTV*, 2010 WL 2991486, at *5 (C.D. Cal. July 27, 2010) ($5,000 award); *Van Vranken*, 901 F. Supp. at 300 ($50,000 incentive award). Thus, the Court **GRANTS** the requested class representative incentive awards.

///

///

///

## CONCLUSION

For the foregoing reasons, the Court hereby:

- • **GRANTS** final settlement approval;

- • **GRANTS** certification of the settlement class;

- • **GRANTS** class counsel's request for attorneys' fees and costs;

- • **GRANTS** the requested incentive awards to the class representatives;

- • **OVERRULES** all objections; and

- • **DENIES** objector's request for attorneys' fees.

**IT IS SO ORDERED.**

**DATED:**   September 10, 2013

**IRMA E. GONZALEZ**
**United States District Judge**